Ann Marie Mortimer (State Bar No. 169077)
amortimer@HuntonAK.com
Jason J. Kim (State Bar No. 221476)
kimj@HuntonAK.com
**HUNTON ANDREWS KURTH LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone:  (213) 532-2000
Facsimile:  (213) 532-2020

*[Additional counsel listed on next page]*

Attorneys for Plaintiff
Spotlight Ticket Management, Inc.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SPOTLIGHT TICKET MANAGEMENT, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> STUBHUB, INC., a Delaware corporation; AWIN, INC. d/b/a AWIN GLOBAL AFFILIATE NETWORK, a Delaware corporation <br><br> Defendants. | CASE NO.:  2:19-cv-10791 <br><br> **COMPLAINT FOR:** <br> (1) Common Law Fraud <br> (2) Tortious Interference <br> (3) Unfair Competition under Cal. Bus. & Prof. Code § 17200 *et. seq*. <br> (4) Violation of 18 U.S.C. §§ 1962(a)-(d) (Federal RICO) <br> (5) Breach of Contract <br> (6) Breach of the Implied Covenant of Good Faith and Fair Dealing <br> (7) Unjust Enrichment <br> (8) Quantum Meruit <br> (9) Promissory Estoppel <br><br> **JURY TRIAL DEMANDED** |

Christopher M. Pardo
(*Pro Hac Vice* application forthcoming)
cpardo@HuntonAK.com
Anna L. Rothschild
(*Pro Hac Vice* application forthcoming)
arothschild@HuntonAK.com
**HUNTON ANDREWS KURTH LLP**
60 State Street, Suite 2400
Boston, Massachusetts 02109
Telephone:  (617) 648-2800
Facsimile:  (617) 433-5022

Ryan P. Phair
(*Pro Hac Vice* application forthcoming)
rphair@HuntonAK.com
Torsten M. Kracht
(*Pro Hac Vice* application forthcoming)
tkracht@HuntonAK.com
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue NW, Suite 900
Washington, DC 20037-1701
Telephone:  (202) 955-1500
Facsimile:  (202) 778-2201

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

COMPLAINT: DEMAND FOR JURY TRIAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Plaintiff Spotlight Ticket Management, Inc. ("Spotlight"), by its attorneys, brings this action against StubHub, Inc. ("StubHub") and Awin, Inc., d/b/a Awin Global Affiliate Network ("Awin"), for fraud, tortious interference, violation of the California Business and Professions Code §§ 17200 *et seq.*, violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"), breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, quantum meruit, and promissory estoppel and alleges the following upon information and belief, except as to those paragraphs pertaining to Spotlight's own actions, which are alleged upon personal knowledge:

1.     StubHub, together with Awin, has knowingly and willfully (i) engaged in a years-long campaign designed to underreport and misrepresent commissionable transactions owed to the members of StubHub's affiliate network, resulting in millions of dollars in damages owed, (ii) worked to hide relevant information from Spotlight and StubHub's other affiliates, including after being notified of the underreporting of transactions and underpayment of commissions, (iii) interfered with Spotlight's contract with Amex in order to perpetuate this scheme and punish Spotlight, and (iv) together with Awin, defrauded Spotlight and violated Federal and California law, including Federal RICO and the California Business and Professions Code Section 17200.

2.     To date, Spotlight has directed over $84 million in sales to StubHub, which accounts for the business of tens of thousands of consumers that, without Spotlight's involvement, would have been directed to sales channels other than StubHub.  However, through a pattern of conduct, first involving its internal team and later through its external business partner Awin, StubHub defrauded Spotlight and other members of its affiliate program in order to drive StubHub's sales while underreporting sales and underpaying commissions, and then engaging in retaliatory conduct towards Spotlight when Spotlight sought to correct this wrong.

3.     StubHub and Awin are both well aware of the misrepresentations made to the members of StubHub's affiliate network, as StubHub previously engaged in an

accounting driven by Spotlight which revealed the extensive underreporting, and *paid over a half a million dollars to Spotlight* in 2017 to partially account for past underpayments, and assured Spotlight that StubHub would remedy the situation.

4. Instead of remedying the situation, StubHub engaged Awin in an effort to insulate itself from liability, creating a multi-layered enterprise scheme resulting in even greater harm to Spotlight and the other members of the affiliate program, contemporaneously engaging in retaliatory and tortious acts designed to silence Spotlight and harm it in the marketplace.

5. Accordingly, as is set forth more fully below, StubHub and Awin, and their agents and employees, have knowingly and willfully caused millions of dollars of damages to Spotlight, which damages and harms are compounding daily.

## I.   **INTRODUCTION**

6. Spotlight licenses software to and hosts the online ticketing platform utilized by American Express ("Amex") to offer certain Amex credit card holders ("Amex card holders") access to ticketed events and experience packages.

7. Such eligible Amex credit card holders contact the Amex Concierge Call Center to purchase tickets and experience packages, whereby an Amex concierge and/or Amex-designated third party ("Concierge" or "Concierges") is logged into the Spotlight platform created specifically for Amex and tailored to enable Concierges to search for and purchase tickets ("Ticketing System") for the card holders.

8. As is discussed below, certain ticket transactions purchased through use of the Ticketing System are completed on another company's website, such as StubHub.

9. In such instances, the Concierge searches for tickets on the Ticketing System and is then directed from the Ticketing System to the website of the entity that the tickets are ultimately purchased from, which includes StubHub.

10. In 2011, Spotlight became a member of StubHub's US Affiliate Program ("Affiliate Program").

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

11.     Pursuant to the Affiliate Program's terms and conditions, affiliates receive a commission on eligible sales that they direct to StubHub.

12.     In order to pay commissions to the affiliates, StubHub set up an internal team to determine how to track affiliate sales data and to collect that transactional data ("Internal Team").

13.     When Spotlight became a StubHub affiliate, Spotlight caused StubHub tickets to become available to Concierges to purchase for card holders.

14.     StubHub for years had unsuccessfully tried to make its tickets available to Concierges.   Because of this, Spotlight ensured that StubHub was aware of its contractual arrangement with Amex, whereby all Concierges used the Ticketing System in order to assist card holders in entering into transactions.

15.     In or around March 2016, Spotlight discovered that StubHub was not paying Spotlight all of the commissions that were due to it under the Affiliate Program, with a large portion of improperly denied transactions and unpaid commissions related to Amex purchases.

16.     StubHub admitted to Spotlight that it was not the only affiliate being affected by the Internal Team's improper accouting and stated that the problem would be fixed.

17.     Spotlight then engaged in an accounting which revealed the extensive underreporting of transactions and underpayment of commissions.

18.     Caught red handed and with little ability to explain itself, StubHub begrudgingly paid Spotlight a total of $518,673 to partially account for this underpayment, and assured Spotlight that StubHub would remedy the situation on a going forward basis.

19.     In or around November 2016, StubHub publicized to the affiliates that it had contracted with Awin, a global affiliate network.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

20.     StubHub purportedly did so for the purpose of correctly tracking transactions under the Affiliate Program and to resolve existing problems with the underpayment of commissions.

21.     The Internal Team oversees and directs Awin.

22.     However, in or about May 2017, Spotlight discovered that Awin was perpetuating the Internal Team's misrepresentations to the members of the Affiliate Program.

23.     Upon this realization, Spotlight informed StubHub of the problem, but was told to resolve the issue with Awin.

24.     Spotlight contacted Awin at StubHub's direction, but Awin told Spotlight to resolve the issue with StubHub.

25.     After learning that Spotlight discovered that Awin was perpetuating the Internal Team's misrepresentations, StubHub contacted Amex and directed Amex to stop providing Spotlight with StubHub's transaction tracking data, which had to that time always been provided to Spotlight in order to assist in the vetting and reconciliation of commission payments.

26.     Amex complied with StubHub's request and Spotlight ceased receiving this previously provided transaction tracking data as of February 20, 2019.

27.     As a result, StubHub affirmatively and knowingly engaged in conduct intended to prevent Spotlight from being able to assess and evaluate how StubHub accounted for and paid affiliate commissions.

28.     Nearly two years has passed since Spotlight informed StubHub that Awin was perpetuating the Internal Team's misrepresentations.  However, StubHub has not endeavored to change its practices or corrected commission payments.  Instead, it has undertaken measures to silence Spotlight by harming its business interests to discourage Spotlight from seeking payment of the money it has earned through its work on behalf of StubHub.

COMPLAINT: DEMAND FOR JURY TRIAL

29.   In addition, since Spotlight notified StubHub that it was aware of StubHub's continued and purposeful underreporting of transactions and commissions, StubHub has also interfered with Spotlight's relationship with Amex, attempting to divert all Amex business away from Spotlight, despite Spotlight introducing StubHub as a vendor into Amex's Ticket Inventory.

30.   StubHub engaged in such conduct in order to prevent the discovery of its fraud on Spotlight and other affiliates, and it has caused extensive harm to Spotlight.

31.   Throughout this time, StubHub (and its parent company, eBay, Inc.) have been fully aware of the underreporting and misrepresentations, and that Awin actually perpetuated the issues attributable to StubHub's Internal Team.

32.   To date, Spotlight has been improperly denied millions of dollars in improperly withheld commissions.

33.   In addition, Spotlight has incurred millions of dollars in additional damages caused by StubHub's and Awin's misrepresentations and other actions intended to defraud and harm StubHub.

34.   Accordingly, Spotlight brings this action for damages and seeking to stop StubHub and Awin's fraudulent enterprise to improperly retain affiliate commissions and capture market share for StubHub.

## II.   <u>THE PARTIES</u>

35.   Plaintiff Spotlight is a Delaware corporation with its principal place of business at 256635 West Agoura Road, Calabasas, California 91302.

36.   Amex's Ticketing System is able to sell StubHub tickets to its card holders because   Spotlight is a member of StubHub's US Affiliate Program ("Affiliate Program"), discussed below.

37.   As a member of StubHub's Affiliate Program, Spotlight directs and drives its clients, including Amex, that contract with Spotlight for use of its online ticket management platform, to StubHub to purchase tickets.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

38.    Tickets sales made on StubHub's website as a result of traffic from its Affiliate Program are currently tracked by Awin.

39.    Awin is a corporation organized and existing under the laws of Delaware. Its principal place of business is 8 Market Place, Baltimore, Maryland, 21202.

40.    StubHub is a corporation organized and existing under the laws of Delaware.   Its principal place of business is 199 Fremont Street, San Francisco, California 94105.  StubHub is a wholly-owned subsidiary of eBay, Inc. ("eBay"), and is presently the subject of a potential transaction in which eBay would sell StubHub for approximately $4.05 billion to Viagogo.

41.    StubHub is partnered, and does substantial business, with the Staples Center, LA Live, Los Angeles Dodgers, USC Trojans, and other entities requiring ticketing services in the Central District of California.

42.    Amex, through TicketManger's Ticketing System and Awin's tracking of all sales made as part of the Affiliate Program, can purchase StubHub's partners' tickets on behalf of Amex card holders via the Ticketing System.

## III.    <u>JURISDICTION AND VENUE</u>

43.    This Court has subject matter jurisdiction over these claims pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. §§ 1331 and 1367.

44.    The Court has personal jurisdiction over StubHub because StubHub's principle place of business is in California and does substantial business in California, including selling and marketing tickets to residents of California.

45.    The Court has personal jurisdiction over Awin because Awin does substantial business in California, including managing working with StubHub and other California businesses, and managing StubHub's Affiliate Program, which benefits from StubHub's California partnerships and StubHub's substantial business within California.

46.    Venue is proper in this District under 28 U.S.C. § 1391 because both StubHub and Awin are engaged in interstate commerce, their activities, including those

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

COMPLAINT: DEMAND FOR JURY TRIAL

1   that form the basis of this Complaint, substantially impact interstate commerce, and a

2   substantial part of the events giving rise to the claims raised in this lawsuit occurred in

3   this District.

## IV.   FACTUAL ALLEGATIONS

### A.   StubHub's Business and US Affiliate Program

47.   StubHub is a fully owned subsidiary of eBay, Inc., which states that it follows "strong ethical values . . . as a business."

48.   To that effect, eBay published a Code of Business Conduct & Ethics that encompasses all business "dealings with eBay business partners."

49.   Specifically, the Code of Business Conduct & Ethics commands that all business partner dealings "must be open and honest . . . , [and] must never mislead or deceive anyone."

50.   Also prohibited is "any other form of unfair business practice."

51.   StubHub operates one of the world's largest online ticket marketplaces (*www.stubhub.com*), with tickets available for "over 10 million" live events, including sports, music and theater.

52.   StubHub represents on its website that it "enable[s] experience-seekers to buy and sell tickets whenever and wherever they are through [StubHub's] desktop and mobile experiences."

53.   StubHub has numerous dealings with business partners through its Affiliate Program.

54.   StubHub entices business to become partners in the Affiliate Program (*i.e.*, become an affiliate) by stating, *inter alia*, "Why Join Us? . . . StubHub is fully owned by eBay[;] A cookie length of 30 days[;] Affiliate Friendly."

55.   To become StubHub's business partner through the Affiliate Program, online vendors submit an application to StubHub.

56.   Upon StubHub's review and acceptance of the application, online vendors become affiliated business partners of StubHub – a fully owned subsidiary of eBay with

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

a publicly expressed commitment to strong ethical values and explicit directive to be "open and honest" and to "never mislead or deceive anyone" in business partner dealings.

57.    The Affiliate Program operates to drive consumer traffic to StubHub's online marketplace.

58.    For this to happen, affiliates direct consumers to StubHub to encourage ticket purchases and, in return, members of the Affiliate Program receive a commission on StubHub purchases made as a result of traffic such Affiliate Program members have driven to StubHub.

59.    Essentially, vendors that are members of the Affiliate Program promote StubHub, and in return, they are able to offer StubHub's various features, assurances and inventory of tickets to their customers.

60.    StubHub's Internal Team was responsible for and dedicated to overseeing all aspects of transactions made on StubHub per the Affiliate Program.

61.    The Internal Team created the accounting methods used to track affiliate sales  in order to calculate affiliate commissions.

62.    Prior to April 2017, the Internal Team was also directly responsible for collecting the tracked sales resulting from approved affiliates directing consumers to StubHub.

63.    In or before March 2016, StubHub became aware that the Internal Team was not providing accurate accountings of affiliate sales.

64.    In other words, the Internal Team was not properly accounting for the number of transactions occurring through the Affiliate Program.

65.    The Internal Team, accordingly, was issuing the incorrect amount of commissions owed and Affiliate Program members were being undercompensated.

66.    As is explained more fully below, StubHub represented that it would resolve these issues, including by making additional payments to Spotlight to account for past underpayments, and resolving the issues going forward.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

67. To resolve the Internal Team's improper accounting, StubHub contracted with Awin, a global affiliate marketing company, to manage the Affiliate Program and supposedly ensure that Affiliate Program transactions were correctly tracked and that commissions were properly and fully paid to Affiliate Program members.

68. The Internal Team oversees and/or directs Awin relative to Awin's work in managing the Affiliate Program.

69. Awin claims that in order to track commissions, Awin provides affiliates participating in the Affiliate Program with a unique URL link that allegedly allows Awin to track a purchase originating from that affiliate.

70. When the affiliate's platform is used to purchase a ticket, the tracking system is triggered by a push of the button, which results in the purchaser being taken to StubHub's website to complete a purchase.

71. Awin claims that it is then able to track that the purchase made on StubHub was originated from an affiliate so that the affiliate receives a commission.

72. In May 2017, Spotlight informed StubHub that the use of Awin had not remedied the previously known and acknowledged unreliable tracking data that resulted in unpaid, but owed, commissions to members of the Affiliate Program.

73. In other words, participation in StubHub's Affiliate Program was still resulting in the same or similar extensive underpayments to those made when the Internal Team was privately tracking affiliate commissions prior to the supposed remedy of using Awin for tracking purposes.

74. Despite this notification from Spotlight, the Affiliate Program continued without StubHub taking any actual remedial action to correct the tracking affiliate sales data.

75. Instead, as noted above, StubHub directed Amex to cease providing transaction-level reporting to Spotlight in order to make it impossible Spotlight to reconcile its records against Affiliate Program transactions completed via StubHub.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

76.     StubHub was aware throughout this time that Awin was perpetuating StubHub's earlier failure to accurately track transactions, underreporting of Affiliate Program transactions and underpayment of commissions to Affiliate Program participants.

**B.     Spotlight's Business**

77.     Spotlight was founded in 2007 as a software startup to connect corporations and their customers with ticket and event management solutions.

78.     Since then, Spotlight has grown to managing and automating over 30 million invitations, registrations and tickets annually.

79.     Spotlight serves its clients by managing ticket inventories and events, providing the systems for ticket delivery and fulfillment as well as the technology for mobile entry into events.

80.     Spotlight also partners directly with professional and college sport teams, venues, and well-known third-party ticketing and event management applications to give Spotlight's customers and partners both a platform and the resources necessary to manage, analyze and resell tickets.

81.     In addition to managing ticket inventories for companies, venues and teams, Spotlight creates and manages loyalty programs that enable Spotlight's users to reward their own clients, prospects and employees with live events.

82.     Spotlight also manages analytical technology that provides its users with data reporting on factors such as who used the tickets and why, which allows Spotlight customers to reduce waste and drive greater and new return on investment ("ROI").

83.     Spotlight has been partnered with StubHub since 2010, initially through a revenue share/business development deal and later, through its participation as a member of the Affiliate Program, in which it drove tens of millions of dollars in new business to StubHub.

84.     In 2011, Spotlight joined the Affiliate Program relying on StubHub's extensive representations about the quality of its business practices.

85. For example, Spotlight relied upon StubHub's representations about the Affiliate Program, including StubHub statements such as: "Why Join Us? . . . StubHub is fully owned by eBay[;] A cookie length of 30 days[;] Affiliate Friendly."

86. By joining the Affiliate Program, Spotlight enabled Concierges, through the Ticketing System, to make StubHub purchases.

87. StubHub had unsuccessfully tried to provide Amex and the Concierges with the ability to make StubHub purchases prior to Spotlight's involvement.

88. Spotlight made sure that StubHub was aware of and knew the Spotlight/Amex contractual terms and obligations, set forth below.

89. Through its relationship with StubHub, both as part of the revenue share deal and then as a member of the Affiliate Program, Spotlight has converted approximately $20 million in annual sales to StubHub.

90. From the time that Spotlight brought Amex's business to StubHub to the present, StubHub has received approximately $82 million in sales by virtue of Spotlight's involvement in the Affiliate Program.

91. This revenue had previously gone to, and would have continued to go to, StubHub's competitors.

### 1. Spotlight's Partnership with American Express ("Amex")

92. Through its concierge program, Amex provides its card holders with benefits that include assistance with obtaining access to tickets and/or packages for various events and experiences ("Amex Ticket Inventory").

93. The tickets and/or packages making up the Amex Ticket Inventory are either owned and sold directly by Amex to its card holders ("direct"), cosigned by Amex to card holders ("cosign"), or purchased through the secondary market ("secondary"). The secondary market allows Amex card holders to obtain tickets and/or packages offered by third parties.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

94. Amex card holders purchase Amex Ticket Inventory by calling the Amex Concierge Call Center and a Concierge or third party designated by Amex assists the card holder in purchasing tickets and/or packages to a desired event.

95. These calls are recorded.

96. Spotlight has served as a fulfillment agency for Amex and, since 2014, contracted with Amex to provide and manage the Ticketing System ("Ticketing System Contract").

97. The Ticketing System is the exclusive ticketing platform used by Concierges to fill requests from Amex card members for tickets to events and experience packages.

98. In addition to a direct fee paid by Amex to Spotlight for the creation, license, and management of the Ticketing System, Spotlight is entitled to receive commissions from all sales made through Amex Concierges using the Ticketing System.

99. The commissions owed to Spotlight include commissions on tickets that are ultimately purchased following the direction of card holders through the Ticketing System to StubHub's platform.

100. Spotlight made sure that StubHub was aware of its rights regarding fulfillment and commissions.

101. When Spotlight became a StubHub affiliate in 2011, Spotlight processed Concierge ticket purchase requests through its inventory of StubHub tickets, directing the traffic to StubHub's platform.

102. Subject to a small number of exclusions (such as Major League Baseball tickets sold below a certain dollar value), when a transaction occurred, Spotlight was to receive a commission.

103. Prior to Spotlight providing the avenue for StubHub to participate in a secondary market ticket seller in the Amex Ticket Inventory, StubHub had pursued Amex as a customer but was unsuccessful in securing a relationship with Amex for the

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

purpose of adding StubHub tickets to Amex's Ticket Inventory and enabling Concierges to purchase StubHub tickets for card holders.

104.   At all times relevant to this case, StubHub has been aware of Amex's contractual obligation to ensure that Spotlight receives the commission money that it is due.

105.   Spotlight collects and maintains data from the Ticketing System to ensure that all transactions – including ones that do not result in the ultimate purchase of tickets – initiated in the Ticketing System are properly tracked.

106.   <u>Amex data tracking</u>. Per Amex policy, when a card holder calls a Concierge to inquire about ticket sales, the call is recorded.

107.   The Concierge then (i) logs into the Ticketing System, (ii) selects the event that the card holder wants to buy a ticket to, (iii) views all of the inventory available from various vendors for the particular event, which is displayed in the Ticketing System, and (iv) assists the card holder with selecting a desired set of tickets.

108.   Once the card holder has selected the tickets for purchase, the Concierge records the card holder information for tracking and reporting purposes.

109.   This information includes card holder name, card holder email address, caller name and a caller code.

110.   After the information is processed and stored for audit, the Concierge is directed to a "Buy Ticket" link embedded with the applicable tracking data.

111.   For StubHub tickets in particular, the Concierge is then directed outside of the Ticketing System to StubHub's website.

112.   The Concierge completes the purchase on StubHub using an email address tied to the Concierge.

113.   If a card member decides not to complete the purchase after information is stored for audit, then the order is cancelled in the Ticketing System, as required by Amex policy and procedure, resulting in a closed feedback loop.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

114.   Until April 2017, Amex provided Spotlight with this closed feedback loop information.

115.   Amex would also provide Spotlight with a monthly data report containing StubHub's commission account files that StubHub electronically transmitted to Amex. Likewise, at StubHub's insistence, Amex stopped providing these reports on February 20, 2019.

116.   Spotlight has logs for each Ticketing System transaction that contains detailed click-through data, consisting of: (i) a Spotlight transaction ID, (ii) event date and time, (iii) event name, (iv) event venue, city and state, (v) number of tickets and ticket price, (vi) section and row of tickets selected, (vii) Concierge information, and (viii) purchaser information.

117.   Because of all the information retained by StubHub and collected by Spotlight, Spotlight has the capability to review StubHub's internally collected data at an individual transaction level and reconcile data with commissions paid to ensure that Spotlight was receiving commissions that it was owed for driving traffic to the StubHub platform.

118.   Through Spotlight's own reconciliation process in 2016, the results of which it shared with StubHub, Spotlight learned and informed StubHub that it had learned that StubHub was not accounting affiliate sales correctly and, as a result was grossly underpaying commissions owed to Spotlight.

## C.   StubHub's Failure to Properly Track Transactions and Pay Commissions Owed Under the Affiliate Program

119.   In or around March 2016, Spotlight discovered that StubHub was not properly tracking all of the sales originating from the Ticketing System.

120.   This is indisputable given StubHub's paying over $500,000 to Spotlight as a result of Spotlight's reconciliation process.

121.   Spotlight discovered this by comparing its own data with StubHub's transaction-level data that StubHub collected and electronically transmitted to Amex.

122.  StubHub never initiated any inquiries about the underreporting of transactions or the underpayment of commissions to Spotlight.

123.  As a result of StubHub's decision to improperly track ticket sales in connection with the operations of its Affiliate Program, Spotlight has been significantly underpaid commissions that it is owed.

124.  In order for Spotlight to receive the commissions that it is owed, Spotlight presented StubHub with the data that it compiled and the deviations in StubHub's determination of commission payments pursuant to the terms of the Affiliate Program.

125.  StubHub's improper conduct included a failure to properly attribute transactions relating to card members directed to StubHub by Spotlight.

126.  StubHub's improper conduct also included "declining" transactions from being commissionable transactions without reason, incorrectly reporting the transaction as cancelled, and simply failing to track transactions altogether in Awin that resulted in a purchase on StubHub.

127.  StubHub knows that its methods of collecting and tracking data are inaccurate.

128.  Despite this actual knowledge, StubHub does not affirmatively inform affiliates of the Affiliate Program of these underreporting and underpayment issues.

129.  StubHub is also aware that Spotlight is not the only affiliate business that was being impacted by StubHub's failure to properly track commission-related data relating to the Affiliate Program.

130.  In early 2017, at Spotlight's behest, StubHub engaged in a transaction review process with Spotlight.

131.  Upon information being shared among Spotlight and StubHub, StubHub paid Spotlight an additional $518,673.00 for unrecorded or untracked sales that occurred over just a thriteen month period, from January 2016 through March 2017 ("Reconciliation Payment").

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

132.   The Reconciliation Payment did not compensate Spotlight for all of the improperly tracked or unrecorded sales, and was only a portion of the amount owed to Spotlight for business that it directed to StubHub from January 2016 through March 2017.

133.   At no time did StubHub or Spotlight execute a "settlement" or "release" of the legal claims being pursued in the instant Complaint in exchange for making the Reconciliation Payment.

134.   In or around May 2017, Spotlight again raised concerns with StubHub that this tracking issue may not have been resolved.

135.   No action was taken by StubHub at that time, or thereafter, to resolve the ongoing issue.

**D.   StubHub Continues To Operate in the Same Manner Despite Admitting Its Failure to Properly Track Commissionable Transactions, Knowingly Depriving Spotlight and Other Affiliates of Commissions Owed under the Affiliate Program**

136.   In or around May 2018, Spotlight discovered that StubHub had the same problems with commission tracking that the engagement of Awin was supposedly intended to correct.

137.   Spotlight analyzed the tracking data that it collected as well as the data provided to it by Amex tracking Concierge transactions from the Ticketing System, along with transaction data that StubHub collected and electronically transmitted to Amex on a monthly basis.

138.   Spotlight provided StubHub with the same supporting tracking data as it had previously during the process that led to the Reconciliation Payment, but this time, StubHub refused to reconcile.

139.   Just as before, the use of improper accouting included the failure to properly attribute transactions completed in StubHub to Spotlight, "declining" the transactions as commissionable transactions without reason, incorrectly reporting the

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

transactions as cancelled, and/or simply failing to track transactions altogether in the Awin system that had actually resulted in a purchase on the StubHub platform.

140. Likewise, upon information and belief, StubHub was aware that the continuing data tracking issues were impacting other businesses.

141. On or about November 1, 2018, Spotlight again informed StubHub of the tracking and commission payment issues.

142. StubHub did not endeavor to remedy its overt and known failure to track commissions properly and, instead, StubHub was evasive and instructed Spotlight to address the issue with Awin.

143. Specifically, StubHub's representative responsible for the Affiliate Program and with whom Spotlight communicated with about its ongoing commission issues, promised that "Awin is a great system and advocate for all publishers as they help make sure you get paid accurately and on time. That is why [StubHub] use[s] their system as a third party for verification."

144. As instructed, Spotlight contacted Awin in an attempted to resolve the transaction tracking issues with Awin that had been going on for years. In response, Awin directed Spotlight to communicate with StubHub to resolve commission-related problems.

145. On or about July 2018, Spotlight escalated this ongoing issue to StubHub's executive leadership team.

146. Throughout the course of two years, Spotlight continued to operate under the terms of the Affiliate Program in good faith and enabled its clients, including Amex, to facilitate the purchase of tickets on StubHub.

147. StubHub, despite being expressly aware of the ongoing failures of its tracking data necessary to accurately effectuate payment of commission under its Affiliate Program, continued to operate in the same manner, without resolving any of the known issues that Spotlight notified StubHub about on multiple occasions.

148. Moreover, Awin perpetuated the tracking failures harming Spotlight.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

17

149.   Nevertheless, StubHub has taken the position that Spotlight is not entitled to a payment for commissions owed while also acknowledging the depth of misrepresentations in data tracking.

150.   In addition, StubHub has taken such a position despite its knowledge, upon information and belief, that Spotlight is not the only entity impacted by Awin's and StubHub's misconduct and misrepresentations.

151.   As a direct result of Spotlight questioning StubHub's data tracking and payment of commissions pursuant to the terms of its Affiliate Program, StubHub egregiously attempted to, and successfully did, stop Spotlight from receiving data from Amex as to transactions completed on StubHub's website that should also have been tracked by Awin.

**E.     StubHub's Scheme to Eliminate Spotlight from its Arrangement with Amex**

152.   After Spotlight notified StubHub that Awin was continuing the underreporting that StubHub promised would be resolved, StubHub convinced Amex to change its business practices with respect to Spotlight.

153.   In or around February 2019, StubHub instructed Amex that it must stop sending Spotlight tracking data that had historically been shared with Spotlight.

154.   This included Amex's internal data and the data that StubHub sent to Amex on a monthly basis.

155.   As a result of StubHub's directive to Amex to stop providing tracking data to Spotlight, Spotlight was prevented from being able to reconcile its data with StubHub's and verify that it was receiving all of its earned commissions.

156.   In other words, StubHub took affirmative action to prevent Spotlight from discovering any further misconduct or misrepresentations by StubHub and Awin.

157.   Because Spotlight no longer received tracking data from Amex or StubHub, Spotlight relied upon data that it was able to collect from its own platform

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

and the Ticketing System in order to further analyze the ongoing fraud perpetuated against it.

158.   Only by comparing this data against commissions paid, Spotlight discovered that its historical conversion rate of "clicks to sales" had quickly and drastically diminished.

159.   Not coincidentally, Spotlight's historical conversion rate plummeted after StubHub contacted Amex.

160.   Similarly, the information available through the Awin system was inaccurate, and entirely missing transactions that StubHub acknowledged were commissionable and had paid upon.

161.   On or around September 10, 2019, Spotlight was in the process of renegotiating the terms of its contractual relationship with Amex.

162.   When it had almost completed that process, which remains unresolved, Spotlight learned that StubHub informed Amex that StubHub claimed it was no longer able to work with Spotlight, leaving Amex the option to either end its long-time relationship with Spotlight or no longer have access to StubHub's inventory of tickets to fulfill its secondary market card member requests.

## **FIRST CAUSE OF ACTION**

### (Common Law Fraud)

163.   All of the above allegations are hereby incorporated as if fully set forth herein.

164.   StubHub defrauded Spotlight when it issued commission checks based on the Internal Team's improper accouting methods.

165.   StubHub promised to pay affiliates certain commissions on sales directed to it by affiliates.

166.   To assure affiliates that their sales were being accounted for correctly, StubHub provided affiliates with a link that purportedly tracked all affiliate sales.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

167.   After providing that link, the Internal Team would implement its accounting methods to "decline" transactions from being commissionable transactions without reason, incorrectly report transactions as cancelled, willfully fail to attribute affiliate sales, and fail to track or otherwise lose transactions altogether.

168.   StubHub defrauded Spotlight when it stated that it would properly track, and later rectify the supposed problems with, the manner in which it tracked and collected Affiliate Program sales data to award commissions.

169.   Thereafter, StubHub and Awin defrauded Spotlight every time they issued tracking data based on improper accouting methods that it knew or reasonably should have known were not corrected and payed commissions pursuant to those reports.

170.   Additionally, after Spotlight discovered the continued unreliability of the tracking data and brought it to StubHub's attention, StubHub defrauded Spotlight by repeatedly telling Spotlight that its data was correct, continuing business as usual, and not awarding Spotlight the proper amount of commissions.

171.   Moreover, StubHub, with Awin, misdirected Spotlight, telling Spotlight to talk to the other to resolve these issues.

172.   StubHub was aware that Awin was perpetuating the improper accouting methods developed by the Internal Team.

173.   Throughout this time, StubHub benefitted greatly from the benefits provided to it by Spotlight directing traffic resulting in transactions to StubHub through its platform.

174.   StubHub knew that its representations to affiliates that affiliate sales tracking data would be resolved were false because after Spotlight notified StubHub that the imporper accounting had continued, StubHub directly reached out to Amex to convince Amex to stop providing Spotlight with the monthly reports that StubHub sent Amex.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

175. Not only did Amex stop sending StubHub's reports to Spotlight, but Amex stopped sending Spotlight any of the data that Amex collected.  This is exactly what StubHub wanted when it contacted Amex.

176. StubHub intended to defraud Spotlight because it had unsuccessfully tried to obtain Amex as a client for years.

177. Now that it had a line into Amex's business, it wanted to cut Spotlight out of the picture.

178. In addition to convincing Amex to stop sending StubHub's reports to Spotlight, after StubHub learned that Spotlight knew that Awin was perpetuating the tracking errors, StubHub interjected itself into Spotlight's contract renegotations with Amex to ensure, in part, that Spotlight could never reobtain StubHub tracking reports. StubHub told Amex that it was no longer able to work with Spotlight, so Amex could either keep its relationship with Spotlight or Amex could retain access to StubHub's inventory of tickets.  To present, StubHub's plan was successful because the renegotiatins remain unresolved.

179. StubHub knew its representation that the improper accouting would be fixed was false and intended to defraud Spotlight because StubHub was aware that Awin was merely perpetuating the improper accouting techniques used by its own Internal Team.

180. Spotlight relied on StubHub's statement that the improper methods of tracking affiliate sales would be resolved and remained a member of the Affiliate Program.

181. That reliance was justified because StubHub promised that a third party would be brought in to correct its internal shortcomings.

182. Additionally, Spotlight was justified in its reliance because StubHub, *inter alia*, represented that it is a wholly owned subsidiary of eBay and eBay requires that all business partner dealings "be open and honest . . . , [which] must never mislead or deceive anyone."

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

183.   Spotlight suffered damages to be fully determined at trial, which include, but not limited to, denial of commissions and expenses incurred in discovering StubHub's fraud.

## SECOND CAUSE OF ACTION

### (Tortious Interference)

184.   Spotlight incorporates all other paragraphs as if fully set forth herein.

185.   Due to StubHub's interference with Spotlight's contract with Amex, Spotlight has not received the full value of its contract with Amex.

186.   On March 19, 2014, Spotlight and Amex entered into the Ticketing System Contract for the Amex Concierge Call Center to use Spotlight's Ticketing System for all transactions.

187.   As a result, Spotlight created and operated the Ticketing System to service Amex's needs.

188.   In addition to a direct fee paid by Amex to Spotlight for the creation, license, and management of the Ticketing System, Spotlight is entitled to receive the affiliate commissions from sales made through Amex Concierges using the Ticketing System.

189.   The commissions owed to Spotlight include commissions on tickets that are ultimately purchased through the Ticketing System on StubHub.

190.   When Amex became Spotlight's client, Spotlight made sure StubHub was aware of it contract with Amex for the purpose of collaborating with StubHub to benefit all parties.

191.   Spotlight made StubHub aware of the terms of its relationship with Amex because StubHub had unsuccessfully pursued Amex as a client for years but Spotlight believed that Amex could benefit from Spotlight's inclusion of StubHub.

192.   Once Spotlight was an affiliate, StubHub withheld commissions owed to Spotlight for Amex sales claiming that these sales were not directed to StubHub by Spotlight.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

COMPLAINT: DEMAND FOR JURY TRIAL

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

193.   StubHub engaged in a fraudulent scheme to justify why it did not owe Spotlight the claimed commissions.

194.   However, to ensure the scheme continued, StubHub told Spotlight it would resolve the improper accouting methods by contracting with Awin.

195.   After Awin began tracking affiliate sales data for the Affiliate Program under the supervision of the Internal Team, Spotlight discovered the improper accounting methods were being perpetuated and notified StubHub.

196.   StubHub told Spotlight to resolve this issue with Awin.

197.   Awin told Spotlight to resolve this issue with StubHub.

198.   StubHub also contacted Amex to convince Amex to stop providing Spotlight with sales data that Amex collected or that StubHub provided to Amex.

199.   At StubHub's request or direction, Amex agreed.

200.   Because Spotlight no longer received sales data from Amex, it could not verify that it was being paid the correct amount in commissions.

201.   However, Spotlight was clearly not being paid correctly based upon historical data it possessed.

202.   Likewise, Spotlight suspected that it was not being paid correctly, and that StubHub was interfering with its Amex business, because of the click-through data that it collected.

203.   By comparing the data that it received with the data that it collected, Spotlight discovered that its historical conversion rate had plummeted.

204.   When Spotlight discovered that Awin perpetuated StubHub's tracking errors, Spotlight also noticed that its historical conversion rate plummeted in or around the time that Awin began its Affiliate Program work.

205.   StubHub's persistent and improper contact with Amex, and its other interference, also has adversely impacted Spotlight's contract renegotations with Amex.

206.   Additionally, because of when StubHub contacted Amex, its intention was to disrupt an economic relationship that would likely benefit Spotlight.

207.   As a result of StubHub's interference with Spotlight's contract with Amex, Spotlight has suffered ascertainable damages to be determined at trial.

## THIRD CAUSE OF ACTION

(Cal. Bus. & Prof. Code § 17200)

208.   Spotlight incorporates all other paragraphs as if fully set forth herein.

209.   StubHub's actions described above, constitute unlawful, unfair, or fraudulent acts or practices in the conduct of a business, in violation of California's Business and Professions Code Section 17200 *et seq.*, including actions that are forbidden by other laws.

210.   StubHub's practices are fraudulent.

211.   In November 2016, StubHub misrepresented to its affiliates, including Spotlight, that it was going to resolve the problems in data tracking and reporting made by the Internal Team that resulted in erroneous affiliate sales data and inaccurate payment of commissions.

212.   In order to resolve the issues with tracking transactions under the Affiliate Program, StubHub contracted with Awin and told affiliates, including Spotlight, that the tracking data problem was resolved and commission payments would be accurate.

213.   Because of StubHub's representations that it had engaged Awin to resolve the inaccurate tracking of transactions and commissions, and in reliance thereupon, Spotlight continued its participation in the Affiliate Program.

214.   Spotlight discovered that instead of fixing the tracking problem as StubHub promised, Awin perpetuated the improper accouting methods used by the Internal Team.

215.   The monthly tracking data reports continued to omit affiliate sales altogether and/or mislabeled affiliate sales as sales attributable to StubHub and/or other third parties, thereby denying affiliates their commissions.

216.   Upon this discovery, Spotlight notified StubHub of the continued problem with the tracking data.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

COMPLAINT: DEMAND FOR JURY TRIAL

217.   In response, StubHub told Spotlight to resolve the problem with Awin. Spotlight did so, but Awin directed Spotlight to resolve the problem with StubHub.

218.   Moreover, after Spotlight informed StubHub of the continued tracking data issues, StubHub convinced Amex to stop providing Spotlight with the monthly reports that StubHub sends Amex.

219.   In other words, StubHub responded to Spotlight's notification by making sure that Spotlight could no longer verify or reconcile the accuracy of the StubHub tracking data.

220.   Despite StubHub's claims that Awin perpetuated the improper accouting methods originally used by the Internal Team, StubHub has done nothing to remedy the ongoing, known failure to properly track data imperative to ensuring that commissions are properly paid as promised by StubHub pursuant to the Affiliate Program.

221.   StubHub's practices are unfair because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to its affiliates' business by denying and/or retaining commissions that are owed.

222.   More specifically, StubHub's practices are unfair because they significantly threaten and/or harm competition by denying online vendors, like Spotlight, the commissions that are owned.

223.   Without receiving its owed commissions, Spotlight makes less money and cannot compete in the market place as effectively.

224.   Likewise, by retaining commissions that are owed to Spotlight, or directing them to inappropriate sources, StubHub stymies competition.

225.   StubHub further acts unfairly and harms competition after retaining commissions attributable to affiliates by interfering with affiliate business relationships.

226.   After Spotlight notified StubHub of the continued tracking problems, StubHub contacted Amex and convinced Amex to stop providing Spotlight with StubHub's monthly reports.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

227.  This caused Spotlight to no longer be able to verify that StubHub was issuing proper commission payments.

228.  Effectively, StubHub retained or re-directed market share that belonged to Spotlight and worked to prevent Spotlight from regaining what Spotlight should have realized by preventing Spotlight from receiving a benefit it was contractually owed through its relationship with Amex.

229.  With the data that is available to it, Spotlight has determined that a significant number of the Ticketing System searches resulted in corresponding sales that StubHub says were originated on its website or elsewhere to deny Spotlight its rightful commissions.

230.  Likewise, StubHub's business practices are unfair because before notifying StubHub of its improper accounting, Spotlight was in the midst of renegotiating its contract with Amex, but these negotiations stalled after StubHub told Amex that it could no longer work with Spotlight.  Amex was left with an ultimatum, continue to work with its long-standing partner or allegedly lose access to StubHub's ticket inventory.

231.  StubHub's practices are unlawful because they are in violation of the federal RICO statute, discussed below.

232.  As a result of StubHub's acts and omissions, Spotlight was injured in fact and lost money and property in the form of, among other things, costs to investigate, remediate, and prevent StubHub's wrongdoings, as well as being denied commissions and having its business relationships impeded.

## FOURTH CAUSE OF ACTION

### (RICO)

233.  All of the above allegations are hereby incorporated as if fully set forth herein.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

234.   StubHub and Awin violated the Federal RICO statute, 18 U.S.C. § 1961 *et seq.*, which makes it unlawful for any person associated with an enterprise to conduct or participate in the conduct of an enterprise through a pattern of racketeering activity.

235.   StubHub, and its Internal Team, was associated with an enterprise, which Awin later joined.

236.   The enterprise is the Affiliate Program made up of StubHub, the Internal Team and Awin in an effort to defraud affiliates, including Spotlight, from receiving their full commissions and to gain market share for StubHub ("Affiliate Program Enterprise").

237.   While StubHub and Awin participated in the Affiliate Program Enterprise, each also has an existence separate and distinct from the enterprise.

238.   Also, the Affiliate Program Enterprise has an ascertainable structure.

239.   The Affiliate Program Enterprise began with the Internal Team acting within the scope of its authority and on behalf of StubHub though its management of the Affiliate Program to defraud affiliates of their commissions, enabling StubHub to gain market share.

240.   After the Affiliate Program Enterprise's fraud was detected—i.e., the Internal Team causing affiliate commissions to be unlawfully retained by StubHub— the Affiliate Program Enterprise became StubHub and Awin's association-in-fact through Awin's contract to manage the Affiliate Program that is overseen by the Internal Team, their intention for that contract to serve as reason to believe the improper accouting methods were fixed, the perpetuation of those improper accounting methods in order for StubHub to continue to retain a portion of affiliates' commissions and gain market share, including by devaluing and compromising Spotlight's relationship with Amex, their submission of monthly tracking reports, and their interference with Spotlight's business relationships.

241.   The enterprise was a continuing unit that associated together and acted with a common purpose: specifically, to retain commissions owed to StubHub affiliates

through fraudulent acts and omissions for the benefit of the enterprise and the individual Defendants.

242.   There were relationships among the associates in the enterprise.

243.   StubHub and Awin contracted for Awin to administer the Affiliate Program.

244.   Awin administered the Affiliate Program in line with the Internal Team's guidance to further the Affiliate Program Enterprise, and to give it credibility and multiple layers, confusing responsibility for, and perpetuating, the underreporting of transactions and underpayments.

245.   StubHub and Awin have controlled and operated the Affiliate Program Enterprise by, among other things: (i) dictating how affiliate sales tracking data is collected; (ii) dictating the amount of affiliate commissions retained by StubHub; (iii) entering into agreements with the Affiliate Program Enterprise pursuant to which the amounts of tracked affiliate sales are under reported; (iv) interfering with affiliate business relationships to gain market share, including by devaluing and compromising Spotlight's relationship with Amex; and (v) concealing the reporting of information which would have shone light on the underreporting and underpayment of commissions, and the true nature of the relationship between StubHub and Awin and the Affiliate Program Enterprise.

246.   The Affiliate Program Enterprise had longevity that was sufficient to permit the associates to pursue its purpose.

247.   From at least May 2011 to present, StubHub has been associated with the Affiliate Program Enterprise.  At first, StubHub and the Internal Team decided how to track affiliate sales and collected that data to further the enterprise.

248.   Then, since Awin became involved, the Internal Team has overseen Awin's administration of the program and association with the enterprise to ensure that the purpose is continued.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

249.   That continuity allowed the StubHub and Awin to execute the Affiliate Program Enterprise's scheme to defraud affiliates of their commissions and to capture market share for StubHub.

250.   The scheme by StubHub has lasted since at least 2011 and been perpetuated by both StubHub and Awin since at least 2017.

251.   The Affiliate Program Enterprise is an ongoing organization which engages in, and whose activities effect, interstate commerce.

252.   StubHub and Awin's conducted and participated in the conduct of enterprise through a pattern of racketeering activity as defined by federal law.

253.   In particular, and as is explained below, both defendants conducted and participated in the conduct of enterprise though conduct that falls within the scope of 18 U.S.C. §§ 1341, 1343 (federal mail fraud and wire fraud) (incorporated through 18 U.S.C. § 1961), including by committing wire fraud and mail fraud.

254.   StubHub and Awin's racketeering activity falls into three categories of conduct: fraudulent submissions, fraudulent representations, and fraudulent omissions.

255.   <u>Fraudulent submissions</u>.  From at least January 2016 to the present day, StubHub fraudulently submitted affiliate tracking report data each month and fraudulently paid Spotlight an inadequate amount of commissions using wires.

256.   Once this fraudulent scheme was discovered, StubHub contracted with Awin to assert that the use of improper accouting methods was accidental and would be corrected going forward.

257.   In other words, StubHub took action to cover up the Affiliate Program Enterprise's fraudulent scheme.

258.   Once covered up, Awin perpetuated the scheme, submitting tracking report data that under attributed sales to affiliates to allow StubHub to keep a portion of Spotlight's commissions and take market share away from Spotlight.

259.   Meanwhile, the underreporting of transactions and the underpayment of commissions continued.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

260.   Fraudulent representations.  As noted, StubHub fraudulently represented that it was going to fix its affiliate sales accounting methods and pay the correct amount of commissions to affiliates.  Supposedly, to do so, it contracted with Awin.

261.   However, when Spotlight discovered that the fraud was continuing by comparing its own data to the data provided by Amex and StubHub, and insisted that StubHub resolve the ongoing issues, StubHub convinced Amex to stop supplying Spotlight with tracking data.

262.   In other words, once StubHub learned that the fraudulent scheme of the Affiliate Program Enterprise had been uncovered again, it took action to prevent Spotlight from further substantiating its findings.

263.   Indeed, StubHub was keenly aware that Awin was perpetuating its own earlier fraud.

264.   Upon information and belief, StubHub's parent company, eBay, was similarly aware that Awin was perpetuating StubHub's earlier underreporting of transactions.

265.   In addition, upon information and belief, StubHub's parent company, eBay, was also aware that Awin was perpetuating StubHub's earlier underpayment of commissions.

266.   Fraudulent omissions.   StubHub and Awin also fraudulently failed to disclose information to Spotlight.

267.   The facts that StubHub and Awin failed to disclose to Spotlight were basic to their transactions with Spotlight.

268.   For example, StubHub failed to disclose to Spotlight during Spotlight's application process to become an affiliate that StubHub was knowingly submitting inaccurate affiliate sales tracking data.

269.   Likewise, StubHub and Awin failed to disclose to Spotlight that they were continuing that pattern of inaccurate submissions once Awin was involved.

COMPLAINT: DEMAND FOR JURY TRIAL

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

270.    Both StubHub and Awin each had actual knowledge of the falsity of their data tracking, submissions, and commission payments or acted with reckless disregard for their falsity, because they knew the data and payments lacked integrity and were lower than the actual affiliate sales absent manipulation.

271.    StubHub and Awin's duty to speak arose from their superior knowledge and secretive aspect of the manipulation and from StubHub's representation that Awin had fixed the imporper accouting methods.

272.    As noted, StubHub took multiple actions to ensure the Affiliate Program Enterprise's fraudulent scheme would not be discovered, including reactive measures to quiet Spotlight's concerns or ability to further investigate StubHub.

273.    StubHub and Awin also both participated in giving Spotlight the proverbial run around after Spotlight discovered Awin was perpetuating the Affiliate Program Enterprise's scheme.

274.    StubHub told Spotlight to go resolve the issue with Awin, and Awin told Spotlight to go resolve the issue with StubHub.

275.    StubHub and Awin's fraudulent acts were furthered by the use of the mail system and interstate wires in violation of 18 U.S.C. § 1341, 1343 (federal mail fraud and wire fraud) (incorporated through 18 U.S.C. § 1961).

276.    The fraudulent conduct discussed above was part of the Affiliate Program Enterprise's scheme to defraud affiliates, including Spotlight.

277.    StubHub and Awin committed wire fraud and mail fraud and both the wire fraud and mail fraud was how it participated in the conduct of the affairs of the association-in-fact enterprise.

278.    Both StubHub and Awin used multiple interstate wires in furtherance of the fraudulent scheme.  The interstate wires included: (1) StubHub and/or Awin's false submissions of affiliate sales; (2) StubHub's and/or Awin's false payment of Spotlight commissions; (3) StubHub's representations that the tracking data was corrected and/or accurate; (4) StubHub's communications to convince Amex to no longer provide

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Spotlight with StubHub's tracking data; and (5) StubHub's communications to Amex discouraging its continued relationship with Spotlight and/or disparaging Spotlight and its key personnel.

279.  StubHub repeatedly used the mail to further the fraudulent scheme.  Using the false tracking data, StubHub fraudulently and knowingly mailed inaccurate paper checks to Spotlight.

280.  StubHub's use of the mail and interstate wires to issue Spotlight purposely low commission payments continued after it convinced Amex to stop providing Spotlight with Amex and StubHub data.  Effectively, StubHub continued to issue checks through the mail and interstate wires that it knew to be incorrect and that those incorrect amounts were unverifiable.

281.  StubHub and Awin's fraudulent conduct was intended to induce the reliance of Spotlight to stay in the Affiliate Program and accept the commission payments as remitted.

282.  StubHub made the fraudulent statement that Awin would fix the improper accounting methods with the intent and understanding that its false statement would be used by Spotlight to remain in the Affiliate Program, enabling StubHub to gain more market share.

283.  StubHub and/or Awin provided incorrect tracking data with the intent and understanding that their false statements would be used to justify the lesser commissions owed to affiliates.

284.  StubHub and Awin therefore acted for the intended, unlawful purpose of inducing Spotlight to remain in the Affiliate Program and accept lesser commissions in reliance on these material misrepresentations and omissions.

285.  Spotlight remained in the Affiliate Program and unknowingly accepted the lesser commissions from StubHub.  In doing so, Spotlight relied on the fact that StubHub and Awin were not making false statements.  Had Spotlight known of these falsities, Spotlight would not have remained in the Affiliate Program.

286.   Spotlight was injured as a direct and proximate result of StubHub and Awin's fraudulent scheme.

287.   In particular, Spotlight received reduced commissions, has incurred expenses discovering the fraud, has lost market share, and has seen its business relationships deteriorate.

288.   The ascertainable damages will be established at trial.   These damages were the foreseeable and direct result of the false representations, submissions, and omissions.

## FIFTH CAUSE OF ACTION

### (Breach of Contract)

289.   Spotlight incorporates all other paragraphs as if fully set forth herein.

290.   StubHub offers any entity the ability to become a member of the Affiliate Program.

291.   To become a member, an entity just needs to submit an application to be approved by StubHub and the application, presumably, is reviewed for approval.

292.   Spotlight received such approval.

293.   Spotlight is a member of the Affiliate Program.

294.   Under StubHub's Affiliate Program, StubHub must pay an affiliate a commission for all ticket sales that the affiliate directs to StubHub.

295.   Over the course of Spotlight's affiliation with StubHub, Spotlight has directed over $84 million in ticket sales to StubHub.

296.   Spotlight has not received all of the commissions that StubHub owes because affiliate sales and commission are not properly or fully tracked.

297.   These improper accouting methods resulted in StubHub and/or other affiliates retaining or receiving commissions owed to Spotlight.

298.   StubHub has breached its Affiliate Program contract with Spotlight to provide the commissions owed to Spotlight for directing sales to StubHub.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

299.   The result of these breaches has caused Spotlight damages in an amount in to be determined at trial.

## SIXTH CAUSE OF ACTION

(Breach of Implied Covenant of Good Faith and Fair Dealing)

300.   Spotlight incorporates all other paragraphs as if fully set forth herein.

301.   Throughout the relevant time period, Spotlight contracted to direct sales to StubHub pursuant to the Affiliate Program's terms and conditions.

302.   Spotlight's Affiliate Program contract with StubHub had an implied covenant that the parties would act in good faith and deal fairly with each other.

303.   StubHub's parent company, eBay, also expressly made such representations.

304.   Neither party was to do anything that would have the effect of destroying or injuring the right of the other party to receive the benefits of the contract.

305.   StubHub and Awin unfairly interfered with Spotlight's right to receive the benefits of the Affiliate Program contract by, unbeknownst to Spotlight, manipulating its tracking data to decrease the number of sales attributable to Spotlight.

306.   By intentionally and falsely decreasing the number of sales directed to StubHub that were attributable to Spotlight, and by failing to inform Spotlight that they were doing so, StubHub and Awin breached their implied duty of good faith and fair dealing and prevented Spotlight from receiving the full benefit of its contract.

307.   Specifically, by not attributing all StubHub sales originated by Spotlight resulted in Spotlight not receiving all of the commissions it was entitled to and losing market share to StubHub and/or its competitors.

308.   Spotlight was directly and proximately harmed by StubHub and Awin's actions since Spotlight was impoverished by not receiving all the commissions it was due absent StubHub and Awin's manipulation of the tracking data and absent their breach of the implied covenant of good faith and fair dealing.

309.   In addition, StubHub and/or Awin were enriched by the retention of Spotlight's commissions.

## SEVENTH CAUSE OF ACTION

### (Unjust Enrichment)

310.   Spotlight incorporates all other paragraphs as if fully set forth herein.

311.   In the alternative to the foregoing remedies at law, through manipulating the affiliate sales tracking data, StubHub and Awin knowingly acted in an unconscionable, unfair, and oppressive manner toward Spotlight, violating fundamental principles of justice, equity and good conscience.

312.   StubHub and/or Awin received ticket sales money that was payable to Spotlight in the form of commissions, and acted with conscious disregard for Spotlight's rights.

313.   StubHub and/or Awin retains commissions owed to Spotlight for directing sales to StubHub either through fraud or failure to pay pursuant to a quasi-contract.

314.   StubHub and Awin's fraud has been detailed above.  If this court finds that Spotlight did not have an express contract with Defendants, in the alternative, there would be a quasi-contract between the parties.

315.   Spotlight at all times acted pursuant to the terms and conditions of the Affiliate Program and directed sales to StubHub.

316.   Indeed, StubHub has paid some, but not all, commissions owed to Spotlight.  Therefore, it would be inequitable for StubHub and/or Awin to be permitted to retain the commissions owed to Spotlight.

317.   StubHub and Awin's enrichment resulted directly and proximately from the alleged conduct.

318.   If Spotlight has no adequate remedy at law, the Court can and should compel StubHub and Awin to disgorge all inequitable proceeds.

COMPLAINT: DEMAND FOR JURY TRIAL

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## EIGHTH CAUSE OF ACTION

### (Quantum Meruit)

319.  All of the above allegations are hereby incorporated as if fully set forth herein.

320.  StubHub, with Awin's assistance, has not paid all commissions due to Spotlight.

321.  StubHub, with Awin's assistance, states that an entity can become its business partner by joining the Affiliate Program.

322.  All the entity has to do to become an a business partner in the Affiliate Program is submit an application and be approved by StubHub.

323.  Pursuant to the Affiliate Program's terms and conditions, affiliates receive a commission for every sale that it directs to StubHub, subject to certain limited restrictions.

324.  In 2011, Spotlight became StubHub's business partner through the Affiliate Program.

325.  To date, Spotlight has directed over $84 million in sales to StubHub.

326.  Through StubHub and Awin's improper accounting of affiliate sales, StubHub has paid some but not all of the commissions owed to Spotlight for the sales that it directed to StubHub.

327.  As a result, Spotlight suffered damages to be fully determined at trial.

## NINTH CAUSE OF ACTION

### (Promissory Estoppel)

328.  All of the above allegations are hereby incorporated as if fully set forth herein.

329.  StubHub, with the assistance of Awin, publishes the terms and conditions of the Affiliate Program.

COMPLAINT: DEMAND FOR JURY TRIAL

330.   The Affiliate Program's terms and conditions make clear that once an entity is accepted by StubHub to be its business partner, StubHub promises to pay the affiliate a certain percentage of the sales that the affiliate directs to StubHub.

331.   The sale commission percentages are also published.

332.   In 2011, Spotlight became StubHub's business partner through the Affiliate Program.

333.   Prior to joining the Affiliate Program, Spotlight reviewed the published terms and conditions, including the commission percentages.

334.   Spotlight also engaged in other communications with StubHub relating to the terms and conditions of participation in the Affiliate Program, including directly with StubHub's former CEO, current CFO and over emails involving StubHub's current CEO.

335.   In March 2016, Spotlight discovered that StubHub was not paying all of the commissions owed to it.

336.   In an effort to reconcile with StubHub, Spotlight provided copious amounts of data to prove that more commission money needs to be paid.

337.   Eventually, StubHub paid Spotlight $518,673 in outstanding commissions. This amount, however, still lacked much of what was owed to Spotlight.

338.   StubHub also promised Spotlight that the affiliate sales underreporting would be resolved going forward.

339.   StubHub also told Spotlight that Awin was brought into the enterprise to ensure that there were no further issues.

340.   Because of these additional promises by StubHub, Spotlight remained an affiliate, expecting that it would receive proper commission payments.

341.   In May 2017, however, Spotlight again discovered that StubHub was not paying the correct amount of commissions because affiliate sales were still being improperly tracked in the same manner as previously discovered.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

342.   Based on StubHub's promises, Spotlight has directed over $84 million in sales to StubHub.

343.   Spotlight has not received all of the commission payments owed to it because of StubHub and Awin's improper affiliate sales accounting practices.

344.   As a result, Spotlight suffered damages to be fully determined at trial.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff Spotlight requests judgment against StubHub as follows:

A.   Enter joint and several judgments against Defendants in favor of Plaintiff;

B.   Award Plaintiff damages in an amount to be determined at trial for breach of contract;

C.   Award Plaintiff damages in an amount to be determined at trial for breach of the implied covenant of good faith and fair dealing;

D.   Award Plaintiff damages in an amount to be determined at trial for tortious interference with Plaintiff's contract with Amex;

E.   Enjoin and restrain StubHub, Awin and their agents from interfering with Plaintiff's business relationships, including its contract with Amex;

F.   Award Plaintiff restitution in an amount to be determined at trial for Defendants' violation of California's Business and Professions Code Section 17200 *et seq.*;

G.   Enjoin and restrain Defendants from further such violations of California's Business and Professions Code Section 17200 *et seq.*;

H.   Award Plaintiff damages in an amount to be determined at trial for Defendants' fraudulent acts;

I.   Enjoin and restrain Defendants from further such fraudulent acts;

J.   Award Plaintiff damages in an amount to be determined at trial to the maximum extent allowed under Federal RICO (18 U.S.C. § 1961 *et seq.*) and enter

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

judgment in favor of Plaintiff against Defendants, with the judgment being for joint and several liability, in an amount to be trebled to the extent such law permits;

K.     That StubHub and Awin account for, hold in constructive trust, pay over to Spotlight and otherwise disgorge profits derived from StubHub's and/or Awin's unjust enrichment;

L.     That Plaintiff be awarded a recovery in restitution equal to any unjust enrichment enjoyed by Defendants;

M.     That Plaintiff be awarded a recovery pursuant to the equitable theory of quantum meruit;

N.     That Plaintiff be awarded a recovery pursuant to the theory of promissory estoppel;

O.     Award Plaintiff punitive damages as appropriate under applicable law;

P.     Award Plaintiff its attorneys' fees, litigation expenses, and costs, as provided by law, including Federal RICO;

Q.     That Spotlight be awarded pre- and post-judgment interest as allowed by law, with such interest to be awarded at the highest legal rate; and

R.     That the Court grant all such other and further relief as the Court may deem just and proper.


Dated:  December 20, 2019              **HUNTON ANDREWS KURTH LLP**


                                       By: ___/s/ Ann Marie Mortimer___
                                           Ann Marie Mortimer
                                           Jason J. Kim
                                           Attorneys for Plaintiff Spotlight
                                           Ticket Management, Inc.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues triable to a jury.


Dated:  December 20, 2019                    **HUNTON ANDREWS KURTH LLP**


By:  _____/s/ Ann Marie Mortimer_____
          Ann Marie Mortimer
          Jason J. Kim
          Attorneys for Plaintiff Spotlight
          Ticket Management, Inc.

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

121880.0000002 EMF_US 77951410v1

COMPLAINT: DEMAND FOR JURY TRIAL