CROWELL & MORING LLP
Gabriel M. Ramsey (SBN 209218)
GRamsey@crowell.com
Kayvan M. Ghaffari (SBN 299152)
kghaffari@crowell.com
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Telephone: 415.986.2800
Facsimile: 415.986.2827

CROWELL & MORING LLP
Emily T. Kuwahara (SBN 252411)
EKuwahara@crowell.com
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: 213.622.4750
Facsimile: 213.622.2690

*Attorneys for Defendant*
StubHub, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SPOTLIGHT TICKET MANAGEMENT, INC., a Delaware corporation,<br><br>             Plaintiff,<br><br>        v.<br><br>STUBHUB, INC., a Delaware corporation; AWIN, INC. d/b/a AWIN GLOBAL AFFILIATE NETWORK, a Delaware corporation<br><br>             Defendants. | Case No. 2:19-cv-10791-PA-JC<br><br>**DEFENDANT STUBHUB, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF SPOTLIGHT TICKET MANAGEMENT, INC.'S COMPLAINT;**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:  March 23, 2020<br>Hearing Time: 1:30 P.M.<br>Courtroom:      9A<br><br>Action Filed:  December 20, 2019 |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on March 23, 2020 at 1:30 p.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Percy Anderson, located in First Street Courthouse, 350 W. 1st Street, Courtroom 9A, 9th Floor, Los Angeles, California 90012, Defendant StubHub, Inc. ("StubHub") will and hereby does move this Court to dismiss Plaintiff's Spotlight Ticket Management, Inc. ("Spotlight") Complaint in its entirety for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and on such other and further matters as the Court may accept at the hearing on this motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on Tuesday, February 11, 2020.

Dated:    February 18, 2020          CROWELL & MORING LLP


                                     _/s/  Gabriel M. Ramsey_
                                     Gabriel M. Ramsey
                                     Emily T. Kuwahara
                                     Kayvan M. Ghaffari

                                     Attorneys for Defendant
                                     StubHub, Inc.

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................ 1

II.  ALLEGATIONS IN THE COMPLAINT ................................................ 3

III. LEGAL STANDARD .............................................................................. 4

IV. ARGUMENT ............................................................................................ 5

    A.   Spotlight Fails To State A Claim For RICO Under 18 U.S.C § 1962(C) ........................................................................................ 5

        1.   Spotlight Does Not Adequately Allege StubHub's Participation In Enterprise Conduct, As Opposed To Individual Conduct ........................................................... 5

        2.   Spotlight Fails To Allege A RICO Enterprise ........................... 6

            a.   Spotlight has not and cannot allege that the members of the purported enterprise shared a common purpose ......................................................... 6

            b.   Spotlight fails to distinguish the roles of each Defendant ........................................................................ 8

            c.   Spotlight fails to plead a pattern of racketeering activity .............................................................................. 9

        3.   Spotlight Fails To State A Claim For Mail And Wire Fraud ...................................................................................... 10

            a.   Spotlight's mail and wire fraud claims should be dismissed for lack of particularity under Rule 9(b) ....... 10

            b.   Spotlight fails to allege an actionable material misrepresentation or omission ........................................ 11

            c.   Spotlight fails to allege specific intent ............................ 13

        4.   Spotlight Fails to Allege Harm ............................................... 14

    B.   Spotlight's Fraud Claim Fails For Lack of Particularity and Lack of Reliance ..................................................................................... 15

        1.   Spotlight's Fraud Claim Fails To Plead Fraud With Particularity Under Rule 9(B) ............................................... 15

        2.   Spotlight Fails To Allege Reliance On Any Misrepresentation That Resulted In Its Detriment ................. 16

        3.   The Fraud Claim is Barred by the Economic Loss Rule .......... 17

    C.   Spotlight Fails to State a California Unfair Competition Law Claim ....................................................................................... 18

        1.   Spotlight's UCL "Fraud" Claim Fails Because It Does Not Plead It With Particularity ............................................... 18

        2.   Spotlight's UCL "Unfair" Claim Fails Because It Fails To Allege An Anticompetitive Act .............................................. 18

        3.   Spotlight's UCL "Unlawful" Claim Fails Because It Rises And Falls With Its RICO Claim ............................................ 19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

D.  Spotlight's Tortious Interference Claim Fails Because It Is Too Vague To Meet The Pleading Standards And Fails To Adequately Allege Actual Breach Or Interference .............................. 19

E.  Spotlight's Claims For Breach Of Contract And Breach Of Implied Covenant Of Good Faith And Fair Dealing Fails Because Spotlight Fails To Alleges A Contract Between Spotlight And StubHub, Nor Its Terms ................................. 21

F.  Spotlight's Quantum Meruit Claim Fails Because The Relationship Between Spotlight And StubHub Is Based Upon Its Alleged Entry Into A Written Contract ................................. 23

G.  Spotlight's Promissory Estoppel Claim Fails Because Spotlight Fails To Allege A Clear And Unambiguous Promise And Injury By Reliance ........................................................................ 24

H.  Spotlight's Unjust Enrichment Claim Fails Because California Law Does Not Recognize Unjust Enrichment As A Cause Of Action ................................................................................ 25

V.  CONCLUSION ......................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Abarca v. Franklin Cnty. Water Dist.*,
  No. 1:07-cv-0388 OWW DLB, 2009 WL 1393508 (E.D. Cal. May
  18, 2009)...................................................................................................13

*Ackerman v. NW. Mut. Life Ins. Co.*,
  172 F.3d 467 (7th Cir. 1999)......................................................................11

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) ...................................................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................2, 4, 6

*Baytree Cap. Assocs., LLC v. Quan*,
  2008 WL 4447647 (C.D. Cal. Sept. 29, 2008).............................................8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................2, 4, 6, 7

*Berkla v. Corel Corp.*,
  302 F.3d 909 (9th Cir. 2002)......................................................................23

*Blantz v. Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care
  Servs.*,
  727 F.3d 917 (9th Cir. 2013)......................................................................20

*Body Jewelz, Inc. v. Valley Forge Ins. Co.*,
  241 F. Supp. 3d 1084, 1091 (C.D. Cal 2017)............................................16

*Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*,
  818 F.2d 1466 (9th Cir. 1987)....................................................................12

*In Re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*,
  No. 2:11-ML-02265, 2012 WL 10731957 (C.D. Cal June 29, 2012)...................8

*Eclectic Props. East, LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014)........................................................................5

*Edwards v. Marin Park, Inc.*,
  356 F.3d 1058 (9th Cir. 2004) ..................................................................... 5, 16

*In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*,
  No. MDL 08-1934 PSG (AGRx), 2009 WL 1703285 (C.D. Cal
  June 17, 2009) .................................................................................................... 12

*Garcia v. Sony Computer Entm't Am., LLC*,
  859 F. Supp. 2d 1056 (N.D. Cal. 2012) ........................................................ 18

*In re Glenfed Inc. Sec. Litig.*,
  42 F.3d 1541 (9th Cir. 1994) (en banc) ......................................................... 11

*Gomez v. Gunthy-Renker, LLC*,
  No. EDCV 14-01425 JGB (KKx), 2015 WL 4270042 (C.D. Cal.
  July 13, 2015) ................................................................................................. 7, 8

*Hemi Grp., LLC v. City of N.Y.*,
  559 U.S. 1 (2010) ............................................................................................ 14

*Hokama v. E.F. Hutton & Co.*,
  566 F. Supp. 636 (C.D. Cal. 1983) .................................................................. 8

*Howard v. America Online, Inc.*,
  208 F.3d 741 (9th Cir. 2000) ........................................................................... 5

*Iezza v. Saxon Mortg. Services, Inc.*,
  No. 10-03634 DDP(JCGx), 2010 WL 3834041 (C.D. Cal. Sept. 28,
  2010) ................................................................................................................ 25

*In re Jamster Mktg. Litig.*,
  No. 05cv0819 JM (CAB), 2009 WL 1456632 (S.D. Cal. May 22,
  2009) .................................................................................................................. 8

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ........................................................................ 18

*Kwan v. SanMedica Int'l*
  854 F.3d 1088 (9th Cir. 2017) ........................................................................ 13

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
  940 F.2d 397 (9th Cir. 1991) ............................................................................ 9

*Martinez v. The Welk Grp., Inc.*,
   No. 09 CV 2883, 2011 WL 90313 (S.D. Cal. Jan. 11, 2011) ...................... 18, 19

*Mazur v. eBay Inc.*,
   2008 U.S. Dist. LEXIS 57105 (N.D. Cal. July 23, 2008) ................................... 9

*McHenry v. Renne*,
   84 F.3d 1172 (9th Cir. 1996) ....................................................................... 20

*Miller v. Rykoff-Sexton, Inc.*,
   845 F.2d 209 (9th Cir. 1988) ......................................................................... 5

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) ......................................................................... 4

*Multifamily Captive Group, LLC v. Assurance Risk Managers, Inc.*,
   629 F. Supp. 2d 1135 (E.D. Cal. 2009) ....................................................... 17

*N. Cnty. Commc'ns Corp. v. Verizon Global Networks, Inc.*,
   685 F. Supp. 2d 1112 (S.D. Cal. 2010) ....................................................... 22

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
   795 F.3d 1124 (9th Cir. 2015) ..................................................................... 21

*Neder v. U.S.*,
   527 U.S. 1 (1999) ........................................................................................ 11

*Nova Designs, Inc. v. Scuba Retailers Ass'n*,
   114 F.3d 1195 (9th Cir. 1997) ....................................................................... 8

*Nugget Hydroelectric, L.P. v. Pac. Gas and Elec. Co.*,
   981 F.2d 429 (9th Cir. 1992) ....................................................................... 15

*Oracle USA, Inc. v. XL Glob. Servs., Inc.*,
   No. C09-00537 MHP, 2009 WL 2084154 (N.D. Cal. July 13, 2009) ............... 17

*Oscar v. Univ. Students Co-Operative Assn.*,
   965 F.2d 783 (9th Cir. 1992) ...............................................................................

*Owens v. Kaiser Found. Health Plan, Inc.*,
   244 F.3d 708 (9th Cir. 2001) ......................................................................... 4

*Paracor Fin. v. Gen. Elec. Cap. Corp.*,
   96 F.3d 1151 (9th Cir. 1996) ....................................................................... 23

*Quach v. Cross*,
  No. CV0309627 GAFRZX, 2004 WL 2860346 (C.D. Cal. June 10,
  2004), *aff'd*, 252 F.App'x 775 (9th Cir. 2007)......................................15

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) ......................................................................................6

*Rothman v. Vedder Park Mgmt.*,
  912 F.3d 315 (9th Cir. 1990) ......................................................................10

*Samet v. Procter & Gamble Co.*,
  No. 5:12-cv-01891-PSG, 2013 WL 6491143 (N.D. Cal. Dec. 10,
  2013)............................................................................................................18

*Saniefar v. Moore*,
  No.1:17-cv-00823, 2017 WL 5972747 (E.D. Cal. Dec. 1, 2017)., .....................14

*Scales v. First Horizon Home Loans*,
  No. 2:11-CV-02505-GEB, 2012 WL 531022 (E.D. Cal. Feb. 17,
  2012)............................................................................................................24

*Sever v. Alaska Pulp Corp.*,
  978 F.2d 1529 (9th Cir. 1992) ....................................................................10

*Slack v. Int'l Union of Operating Eng'rs*,
  No. C-13-5001 EMC, 2014 WL 4090383 (N.D. Cal. Aug. 19, 2014)................6

*Sound Appraisal & Savage Appraisal Servs. v. Wells Fargo Bank*,
  2009 WL 3353057 (N.D. Cal. Oct. 15, 2009) ..............................................10

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) ....................................................................21

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
  992 F. Supp. 2d 962 (C.D. Cal. 2014) .........................................................12

*Toimicia F. Davis v. Mortgage Electronic Registration Systems, Inc.*,
  Case No. 11-8594 PA (C.D. Cal. Feb. 13, 2012) (Anderson, J.) .................10

*Total Coverage, Inc. v. Cendant Settlement Servs. Group, Inc.*,
  252 Fed. Appx. 123 (9th Cir. 2007) .............................................................23

*In Re Toyota Motor Copr. Unintended Acceleration Mktg, Sales Practice, and Prod. Liab. Litig.*,
    826 F. Supp. 2d 1180 (C.D. Cal. 2011)..................................................9

*United Food & Com. Workers Cent. Pa. Reg'l Health and Welfare Fund v. Amgen, Inc.*,
    400 F. App'x 255 (9th Cir. 2010)..............................................12, 13

*United States v. Christensen*,
    828 F.3d 763 (9th Cir. 2015).........................................................6

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003).................................................10, 16

*Wagh v. Metris Direct Servs., Inc.*,
    348 F.3d 1102 (9th Cir. 2003).......................................................15

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
    865 F. Supp. 2d 1002 (C.D. Cal. 2011)..........................................5

*U.S. v. Wright*,
    625 F.3d 583 (9th Cir. 2010).......................................................13

**State Cases**

*Cel-Tech Commc'ns, Inc. v. L.A Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999).........................................................18, 19

*E.J. Franks Constr., Inc. v. Sahota*,
    226 Cal. App. 4th 1123 (2014)....................................................23

*First Com. Mortg. Co. v. Reece*,
    89 Cal. App. 4th 731 (2001).......................................................22

*Hauter v. Zogarts*,
    14 Cal.3d 104, 112 (1975).........................................................16

*Hedging Concepts, Inc. v. First All. Mortg. Co.*,
    41 Cal. App. 4th 1410 (1996)....................................................23

*Jogani v. Super. Ct.*,
    165 Cal. App. 4th 901 (2008)....................................................25

*McKell v. Wash. Mut., Inc.*,
  142 Cal. App. 4th 1457 (2006) .......................................................................... 22

*Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*,
  11 Cal. App. 4th 1026 (1992) ........................................................................... 23

*Reeves v. Hanlon*,
  33 Cal. 4th 1140 (2004) ..................................................................................... 20

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ....................................................................................... 18

*Toscano v. Greene Music*,
  124 Cal. App. 4th 685 (2004) ........................................................................... 25

*U.S. Ecology, Inc. v. State of Cal.*,
  129 Cal. App. 4th 887 (2005) ........................................................................... 24

**Federal Statutes**

18 U.S.C. § 1341 ..................................................................................................... 10

18 U.S.C. § 1343 ............................................................................................... 10, 13

18 U.S.C. § 1961(5) ................................................................................................... 9

18 U.S.C. § 1962(a) ............................................................................................ 14, 15

18 U.S.C. § 1962(c) .............................................................................................. 5, 6

Fed. R. Civ. P. 8 ................................................................................................. 19, 20

Fed. R. Civ. P. 9 .............................................................................................. *passim*

Fed. R. Civ. P. 15(a)(2) ............................................................................................. 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant StubHub, Inc. ("StubHub") respectfully moves to dismiss the Complaint, which contorts a straightforward business dispute into a sprawling 344 paragraphs including unsupported claims under the RICO statute.  This case is fundamentally a contract dispute about whether particular ticketing transactions carried out on StubHub's website are eligible for commissions payable to Spotlight Ticket Management, Inc. ("Spotlight"), under StubHub's affiliate agreement. StubHub is one of the largest ticket-exchange companies in the world and a leader in helping fans buy and sell tickets for sports, concerts, theater and other events.  As one of the world's largest ticket marketplaces, StubHub launched an affiliate program that enables third party affiliates to generate revenue by sending those affiliates' customers to purchase tickets from StubHub.  Under the terms of the affiliate program, StubHub will only pay an affiliate a commission on certain eligible ticket sales.  In 2011, Spotlight joined StubHub's affiliate program and began directing traffic to StubHub's website.  Spotlight alleges that it did not receive commissions on certain ticket sales, resulting in the instant lawsuit.

Spotlight attempts to spin this simple fact pattern into wild allegations of fraud, unfair competition, tortious interference, and other common law claims. Spotlight even goes so far as to cast the Defendants' routine commercial relationship as some sort of purported racketeering "Enterprise" in an attempt to allege a RICO cause of action.  Because RICO claims are often used to create the suggestion of criminal matters and pose a serious risk of unfairly stigmatizing the named defendants to the public, the Ninth Circuit has determined that flawed RICO claims, such as those at issue here, should be "flushed out" at the early stages of litigation.  Accordingly, this Complaint's flawed attempt to create a convoluted RICO claim out of a basic contract dispute should be "flushed out" with prejudice, as any amendment would be futile.

Indeed all of Spotlight's inflammatory and conclusory allegations fail to meet any applicable pleading requirement for any claim:

**First**, Spotlight fails to plead any of the elements of RICO, including:

- o that StubHub participated in conducting the enterprise's affairs, as opposed to engaging in conduct in its ordinary business interests;
- o a properly pled RICO enterprise, which requires a common purpose, specific allegations against each defendant, and a *pattern* of racketeering activity rather than one ongoing act;
- o that StubHub made any actionable material misrepresentation or omission, or had specific intent; all of which must be alleged with particularity;
- o that StubHub engaged in mail and wire fraud by using *interstate* wires to conduct the purported fraud; and
- o that StubHub's conduct actually and proximately harmed it.

**Second**, Spotlight fails to plead its fraud claim with any particularity under Rule 9(b) or even the more liberal notice standard under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  The claim also fails under the economic loss rule because the allegations and alleged underpayment flow from a contract claim.

**Third,** Spotlight fails to plead any of the three prongs of Spotlight's California Unfair Competition Law ("UCL") claim, as it fails to meet the requirements for pleading "fraud," fails to allege any "unfair" anticompetitive conduct, and fails to allege the predicate RICO claim to support its "unlawful" claim.

**Fourth**, Spotlight fails to allege a coherent tortious interference claim and fails to allege any contract between it and any third party, which StubHub purportedly interfered with.

**Fifth**, even in its contract claim—which appears to be the crux of its

1  claims—Spotlight fails to adequately allege any contract for which it is entitled to

2  receive commissions from ticket sales.

3       **Sixth**, the related contract claims for breach of implied covenant of good

4  faith and fair dealing, quantum meruit, and promissory estoppel fail because

5  Spotlight neither alleges a contract nor any other basis for these alternative claims.

6       **Finally,** Spotlight's unjust enrichment claim is not a cognizable cause of

7  action under California law.

8       StubHub respectfully requests the dismissal of the Complaint in its entirety.

9  **II.   ALLEGATIONS IN THE COMPLAINT**

10       StubHub operates one of the world's largest online ticket-exchange

11  marketplaces, allowing consumers to purchase tickets for virtually every live event.

12  Dkt. 1, Complaint ("Compl.") ¶ 51.  StubHub launched an affiliate program

13  designed to increase consumer traffic to StubHub's online marketplace.  Compl. ¶

14  57.  The affiliate program rewards affiliates that direct consumers to StubHub's

15  marketplace by paying the affiliates a commission on ticket sales made as a result

16  of consumer traffic that the affiliate has driven to StubHub.  Compl. ¶ 58.  StubHub

17  pays a commission only "on *eligible* sales" that affiliates direct to StubHub's

18  website.  Compl. ¶ 11 (emphasis added).

19       In 2016, StubHub partnered with defendant Awin to manage the affiliate

20  program and track eligible transactions.  Compl. ¶¶ 42, 69, 243.  Awin tracks the

21  source of an eligible transaction by requiring affiliates to implement a unique URL,

22  specific to the affiliate, in the affiliate's platform.  Compl. ¶ 69.  If the affiliate

23  properly implements the unique URL, then Awin can track the source of a ticket

24  transaction and identify precisely how that consumer reached StubHub's website.

25  Compl. ¶¶ 69-71.

26       Spotlight submitted an application to join StubHub's affiliate program and

27  became an affiliate in 2011.  Compl. ¶¶ 10, 55, 292.  Spotlight alleges that, as early

28  as 2016, StubHub underreported the number of transactions that originated from

Spotlight.  Compl. ¶ 119.  Spotlight further alleges StubHub purportedly knew its tracking methods were inaccurate, withheld this information from Spotlight, and continues to operate in this manner.  Compl. ¶¶ 127-28, 136, 259.  According to Spotlight, StubHub then purportedly conspired with Awin to knowingly perpetuate the improper accounting and give Spotlight the "proverbial run around" to avoid fixing the alleged improper tracking.  Compl. ¶¶ 147-48, 263, 273.  In addition and without reference to a contract, Spotlight alleges that StubHub's scheme with Awin interfered with Spotlight's contractual relationship with American Express ("Amex") where it offered Amex's customers access to ticketed events.  Compl. ¶¶ 6, 29.  StubHub's supposed nefarious goal was to divert Amex's business away from Spotlight.  Compl. ¶ 29.  StubHub's and Awin's alleged purpose of this entire purported scheme was to "induce the reliance of Spotlight to stay in the Affiliate Program and accept the commission payments as remitted."  Compl. ¶ 281.

## III.    LEGAL STANDARD

A complaint must "state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Thus, the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

In addition, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (citation and internal quotation marks omitted).

"Courts are free to grant a party leave to amend whenever 'justice so requires.'"  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (citation omitted) (quoting Fed. R. Civ. P. 15(a)(2) and *Owens v. Kaiser Found. Health*

*Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)).  Leave to amend is not warranted, however, where there is "no set of facts [that] can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

## IV.   ARGUMENT

### A.   Spotlight Fails To State A Claim For RICO Under 18 U.S.C. § 1962(C).

Spotlight's RICO claim suffers from numerous pleading deficiencies, each of which requires dismissal.  To properly allege a civil RICO claim, Spotlight must allege that StubHub participated: in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity, which (5) proximately harmed the victim.  *Howard v. America Online, Inc.*, 208 F.3d 741, 746 (9th Cir. 2000).  Spotlight's complaint falters with each element, and specifically fails to allege participation in an enterprise, fails to allege the enterprise itself, fails to allege the predicate acts of mail and wire fraud that Spotlight claims constitutes racketeering activity, and fails to allege harm.

Spotlight also fails to plead these elements with particularity pursuant to Rule 9(b).  *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004).  Where, as here, the alleged members of the enterprise carry on legitimate business, and "otherwise act as routine participants in American commerce, a significant level of factual specificity is required to allow a court to infer reasonably that such conduct is plausibly part of a fraudulent scheme." *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997-98 (9th Cir. 2014).

#### 1.   Spotlight Does Not Adequately Allege StubHub's Participation In Enterprise Conduct, As Opposed To Individual Conduct.

To survive this motion to dismiss, Spotlight must have alleged evidentiary facts showing that StubHub participated in conduct in furtherance of the purported enterprise, as opposed to its own commercial interests.  *See In re WellPoint, Inc.*

*Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1034-35 (C.D. Cal. 2011) ("the existence of a business relationship … without more does not show that [defendant] conducted the enterprise"). In *Reves v. Ernst & Young*, 507 U.S. 170 (1993), the Supreme Court held that the phrase "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs" as used in the RICO statute, 18 U.S.C. § 1962(c), means that "one must participate in the operation or management of the enterprise itself." *Id.* at 185. Thus to impose RICO liability, StubHub must (1) have had "some part in directing the enterprise's affairs," *id.* at 179; and (2) have "conducted or participated in the conduct of the '*enterprise's affairs*,' not just their *own* affairs," *id.* at 185.

But, here, Spotlight's sole allegation regarding conduct of the purported enterprise's affairs is the conclusory paragraph 237: "While StubHub and Awin participated in the Affiliate Program Enterprise, each also has an existence separate and distinct from the enterprise." Because it is entirely devoid of *any* evidentiary support, this conclusory statement is insufficient to satisfy *Iqbal* and *Twombly*, and no enterprise conduct has been alleged. *Slack v. Int'l Union of Operating Eng'rs*, No. C-13-5001 EMC, 2014 WL 4090383, at *22 (N.D. Cal. Aug. 19, 2014).

## 2. Spotlight Fails To Allege A RICO Enterprise.

Spotlight also fails to allege any elements of the RICO enterprise itself, which "has three elements: (1) a common purpose, (2) an ongoing organization, and (3) a continuing unit." *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015) ("Christensen II").

### a. Spotlight has not and cannot allege that the members of the purported enterprise shared a common purpose.

Spotlight does not properly allege a "common purpose" shared by StubHub and Awin, which is predicated solely on Spotlight's mail and wire fraud claims.

First, Spotlight fails to plausibly allege that the RICO enterprise members shared a common purpose to carry out the fraud. *See Christensen II*, 828 F.3d at

780 (enterprise members must understand the nature of the RICO enterprise to satisfy the *mens rea* requirements).  The linchpin of Spotlight's predicate claims is StubHub's and Awin's alleged separate statements or omissions that purportedly underreport the number of transactions that should be attributed to Spotlight.  For example, Spotlight alleges that Awin perpetuated the fraudulent scheme by "submitting tracking report data that under attributed sales to affiliates" that would allow StubHub to reap the benefits of otherwise commissionable transactions. Compl. ¶ 258.  But none of these facts suggest any *mens rea*, namely that StubHub was aware of Awin's conduct or *any* of the alleged misrepresentations or omissions.

Second, Spotlight's claim fails for a related reason:  Spotlight alleges no facts to support its theory of a common purpose, compelling dismissal.  *See Twombly*, 550 U.S. at 555-57.  Spotlight alleges the Enterprise engaged in a fraudulent common purpose to "perpetuat[e] … improper accounting methods" and "retain commissions owed to StubHub affiliates through fraudulent acts and omissions for the benefit of the enterprise and the individual Defendants."  Compl. ¶¶ 240-41. But, the Complaint's allegations demonstrate nothing more than a routine business relationship between parties performing routine services that they would have performed for any other client, including, for example:

- StubHub operates one of the world's largest online ticket marketplaces and does numerous dealings through an affiliate program. Compl. ¶¶ 51, 53.
- Awin provides a platform that can track affiliate transactions. *Id*. ¶¶ 69, 71.
- StubHub hired Awin to manage the affiliate tracking program and provide tracking reports on commissionable transactions.  *Id*. ¶¶ 67, 243.
- StubHub would direct Spotlight, and other affiliates, to discuss disputes over a particular transaction with Awin, who manages the program.  *Id*. ¶ 274.

This Court should reject Spotlight's attempt to characterize such a routine commercial relationship as a RICO enterprise. *See Gomez v. Gunthy-Renker, LLC*, No. EDCV 14-01425 JGB (KKx), 2015 WL 4270042, at *5-11 (C.D. Cal. July 13,

2015) (repudiating the pleading strategy of attempting to transform business disputes into a RICO claim).  Conduct "consistent with a legitimate business purpose" does not support an inference of conspiracy.  *Nova Designs, Inc. v. Scuba Retailers Ass'n*, 114 F.3d 1195 (9th Cir. 1997).  Where the "alleged association-in-fact is merely a routine contract for services, because the entities are actually pursuing their individual economic interests, rather than any shared purpose," the common purpose element is not met.  *Gomez*, 2015 WL 4270042, at *9; *see also In Re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, No. 2:11-ML-02265, 2012 WL 10731957, at *8 (C.D. Cal June 29, 2012) (As a matter of law, "[p]arties that enter commercial relationships for their own gain or benefit do not constitute a[] [RICO] enterprise."); *In re Jamster Mktg. Litig.*, No. 05cv0819 JM (CAB), 2009 WL 1456632, at *4-5 (S.D. Cal. May 22, 2009) (stripped of conclusory adjectives, the complaint alleged only "ordinary business conduct and an ordinary business purpose" that was not an actionable "common purpose" under RICO).  Moreover, Spotlight's allegations are facially inconsistent with any "common purpose," in that Awin certainly would not have any incentive or purpose to reduce transactions tracked through its platform, for which it is paid.  In sum, Spotlight's "common purpose" allegations simply make no sense.

### b.   Spotlight fails to distinguish the roles of each defendant.

Spotlight's RICO claim also fails because it must, and does not, specifically allege the basis for liability of *each* defendant.  *See, e.g.*, *Baytree Cap. Assocs., LLC v. Quan*, 2008 WL 4447647, at *8 (C.D. Cal. Sept. 29, 2008) (finding RICO insufficiently pled where plaintiff "failed to allege the misconduct and basis of liability of each individual defendant"); *Hokama v. E.F. Hutton & Co.*, 566 F. Supp. 636, 645-46 (C.D. Cal. 1983) (it is insufficient to merely "specif[y] the general relationships among the defendants with respect to the overall … enterprise").  For RICO claims, Federal Rules of Civil Procedure 9(b) requires that

1   Plaintiffs allege "the role of each defendant in each scheme." *Lancaster Cmty.*
2   *Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991).

3   Spotlight lacks allegations identifying the individual roles of StubHub and
4   Awin.  The majority of the allegations as to StubHub and Awin merely lump the
5   two entities together.  *See e.g.*, Compl. ¶ 273 ("StubHub and Awin both participated
6   in giving Spotlight the proverbial run around after Spotlight discovered Awin was
7   perpetuating the Affiliate Program Enterprise's scheme"); ¶ 278 ("Both StubHub
8   and Awin used multiple interstate wires in furtherance of the fraudulent scheme.").
9   Such allegations are insufficient to satisfy Rule 9(b) and warrant dismissal.  *See*
10  *e.g.*, *In Re Toyota Motor Copr. Unintended Acceleration Mktg, Sales Practice, and*
11  *Prod. Liab. Litig.*, 826 F. Supp. 2d 1180, 1201 (C.D. Cal. 2011) (dismissing RICO
12  claims where plaintiff failed to specify the role of each defendant in the fraud).

c.  **Spotlight fails to plead a pattern of racketeering activity.**

13
14  Pleading a RICO claim requires a plaintiff to allege a "pattern of racketeering
15  activity," which "requires at least two acts of racketeering activity" within a ten
16  year period.  *Mazur v. eBay Inc.*, 2008 U.S. Dist. LEXIS 57105, at *12 (N.D. Cal.
17  July 23, 2008) (citing 18 U.S.C. § 1961(5)).  At most, Spotlight alleges only a
18  single ongoing predicate act based on statements and omissions StubHub
19  purportedly made to Spotlight concerning its affiliate sales transactions.  Although
20  Spotlight makes the conclusory allegation that StubHub engaged in two predicate
21  acts of mail and wire fraud (Compl. ¶ 253), the only specific statements Spotlight
22  identifies all relate to a *single* ongoing alleged transaction to "induc[e] Spotlight to
23  remain in the Affiliate Program and accept lesser commissions in reliance on the[ ]
24  material misrepresentations and omissions."  Compl. ¶ 284.  A single instance of
25  wire fraud does not establish a RICO pattern, even where multiple wire
26  communications are used to perpetrate the alleged fraud.  Even under the most
27  generous reading possible, Spotlight's allegations point only to "a single episode
28

-9-

with a single purpose which happened to involve more than one act taken to achieve that purpose," which cannot satisfy RICO's pattern element. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992).

### 3. Spotlight Fails To State A Claim For Mail And Wire Fraud.

Spotlight's RICO house of cards rests entirely on predicate acts of mail and wire fraud, and must fall. ¶¶ 253, 275. To plead mail and wire fraud, Spotlight must establish: (1) a scheme or artifice to defraud; (2) use of the US mail or wire in furtherance of that scheme; and (3) the specific intent to defraud. 18 U.S.C. §§ 1341, 1343; *Rothman v. Vedder Park Mgmt.*, 912 F.3d 315, 31-17 (9th Cir. 1990). Spotlight's complaint falls short of (1) establishing any instance of fraud by interstate or foreign wire communication, as required to sustain a claim under § 1343; (2) pleading any actionable material misrepresentation or omission with particularity; and (3) pleading any specific intent.

#### a. Spotlight's mail and wire fraud claims should be dismissed for lack of particularity under Rule 9(b).

Spotlight fails to articulate with any particularity the purportedly fraudulent misrepresentations and omissions. For the same reasons set forth below with respect to Spotlight's fraud claims—i.e., Spotlight's blatant failure to provide specific statements and any details concerning "who, what, when, where, and how"—so, too, does Spotlight's RICO claims fail.[1] *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Toimicia F. Davis v. Mortgage*

---

[1] Although Spotlight makes conclusory allegations that StubHub similarly and knowingly deceived and defrauded other affiliates and that the threat of future mail and wire fraud by StubHub is ongoing, these statements "do not allege particularized facts necessary to state claims of a scheme to defraud using the mail or wires" and thus cannot support a RICO claim under Rule 9. *E.g.*, *Sound Appraisal & Savage Appraisal Servs. v. Wells Fargo Bank*, 2009 WL 3353057, at *4 (N.D. Cal. Oct. 15, 2009). In fact, given the complete and absolute absence of evidence of any issues at all regarding other affiliates, these allegations step over, or at least tread perilously close to, the ethical and legal lines regarding having factual bases for assertions in signed pleadings.

*Electronic Registration Systems, Inc.*, Case No. 11-8594 PA (C.D. Cal. Feb. 13, 2012) (Anderson, J.) (dismissing RICO claim where fraud claim did not identify "time, place and specific content" of the allegedly false representations).  Spotlight generally alleges StubHub "fraudulently represented it was going to fix its affiliate sales accounting methods and pay the correct amount of commissions to affiliates."  Compl. ¶ 260.  But nowhere are there any allegations about who spoke to whom, when those communications were made, and exactly what was communicated.

### b.   Spotlight fails to allege an actionable material misrepresentation or omission.

Spotlight also fails to plead with sufficient particularity any affirmative misrepresentation by any Defendant (let alone any *material* misrepresentation), and cannot sustain its omission claims because it fails to and cannot plead that Defendants were under any duty to disclose.  To satisfy Rule 9(b), Spotlight must plead with particularity why any alleged misrepresentation was *false when made*. This rule "requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate."  *Ackerman v. NW. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999); *In re Glenfed Inc. Sec. Litig.*, 42 F.3d 1541, 1548 n.7 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir.2011) (complaint "must adequately specify the statements it claims were false").  Moreover, any alleged misrepresentations or omissions must be material.  *Neder v. U.S.*, 527 U.S. 1, 25 (1999).

In connection with its mail and wire fraud claims, Spotlight vaguely alleges three sets of purported misrepresentations:  (1) StubHub writes on its website that it is Affiliate Friendly (Compl. ¶ 85); (2) "[f]rom at least January 2016 to present day, StubHub fraudulently submitted affiliate tracking report data each month and fraudulently paid Spotlight an inadequate amount of commissions using wires" (Compl. ¶ 255); and (3) "StubHub fraudulently represented that it was going to fix

its affiliate sales accounting methods and pay the correct amount of commissions to affiliates." Compl. ¶ 260. Spotlight provides nothing more than these high-level, bare-bones and vague alleged statements. Spotlight does not even allege any facts explaining *why* any of the alleged misrepresentations were false when made. Spotlight's claim should be dismissed because it utterly fails to attribute any specific misrepresentation allegedly made by StubHub in connection with its mail and wire fraud claims. *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 977 (C.D. Cal. 2014) (holding that plaintiff's claim for fraud fails because plaintiff failed to identify any specific statements or omissions attributable to defendant).

Spotlight next alleges StubHub fraudulently failed to disclose information to Spotlight, or fraud by omission. Spotlight alleges that StubHub did not disclose that it "was knowingly submitting inaccurate affiliate sales tracking data." Compl. ¶ 268. In addition, Spotlight boldly asserts that "StubHub and Awin failed to disclose to Spotlight that they were continuing a pattern of inaccurate submissions once Awin was involved." Compl. ¶ 269.

Ninth Circuit law is crystal clear that "[a]bsent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a fraudulent scheme" under the federal mail or wire fraud statutes. *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987). Accordingly, to state a claim under RICO based on an omission under mail or wire fraud, a plaintiff must allege facts establishing a duty to disclose. *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, No. MDL 08-1934 PSG (AGRx), 2009 WL 1703285, at *6 (C.D. Cal June 17, 2009), *aff'd*, *United Food & Com. Workers Cent. Pa. Reg'l Health and Welfare Fund v. Amgen, Inc.*, 400 F. App'x 255 (9th Cir. 2010).

The Complaint does not even contain bare allegations of any duty to disclose, let alone plead facts regarding such a duty with particularity. The closest Spotlight

gets is in its conclusory statement that StubHub and Awin had a duty to speak because of their "superior knowledge" and "secretive aspect[s] of manipulation." Compl. ¶ 271.  This is insufficient to raise any hint of an independent duty to speak. *See, e.g.*, *United Food*, 400 F. App'x at 257  (affirming dismissal of RICO claim predicated on alleged mail and wire fraud because plaintiff failed to identify "material omissions in derogation of an independent statutory or fiduciary duty to disclose"); *Abarca v. Franklin Cnty. Water Dist.*, No. 1:07-cv-0388 OWW DLB, 2009 WL 1393508, at *8 (E.D. Cal. May 18, 2009) ("[i]n conjunction with Rule 9(b), Plaintiffs must allege the existence of a duty to disclose with particularity").

### c.      Spotlight fails to allege specific intent.

The Complaint further fails to allege that StubHub had any specific intent to commit RICO violations.  Spotlight's conclusory boilerplate allegation that StubHub "acted for the intended, unlawful purpose of inducing Spotlight to remain in the Affiliate Program and accept lesser commissions in reliance on these material misrepresentations and omissions" (Compl. ¶ 284) is insufficient to state a claim. "[C]onclusory allegations of law and unwarranted inferences . . . are insufficient to avoid dismissal." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (internal quotations omitted).[2]

---

[2] Spotlight's wire fraud claim also fails because Spotlight does not allege an interstate wire communication. Section 1343 on its face covers only transmissions "by means of wire, radio, or television communication *in interstate or foreign commerce*." 18 U.S.C. § 1343 (emphasis added).  Purely intrastate wire communications are thus beyond the reach of § 1343.  *U.S. v. Wright*, 625 F.3d 583, 594 (9th Cir. 2010) ("[O]ur precedent indicates that criminal statutes punishing the transmission of the relevant material 'in interstate or foreign commerce' require the material itself to cross state lines.").  Spotlight, which has its principal place of business in California (Compl. ¶ 35), alleges three instances where StubHub, a California corporation (¶ 40) used interstate wires: (1) to further the fraudulent scheme of making purportedly false submissions of affiliate sales to Spotlight (Compl. ¶ 278); (2) to discuss with Spotlight whether tracking information was correct and/or accurate (*id.*); and (3) to issue Spotlight purposely low commission payments. *Id.* at ¶ 280.  Nowhere in the Complaint does Spotlight allege *where* any of the purported misrepresentations (or omissions) occurred via email (or other (Continued…)

### 4.   Spotlight Fails to Allege Harm.

Spotlight's threadbare, conclusory allegation of harm that merely recite the statutory elements of a §1962(a) claim further warrants dismissal.  "[U]nder civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'"  *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010).  Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged … [a] link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient."  *Id.*  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).   Spotlight alleges none of those things.

While Spotlight attempts to use the RICO claim to paint a grim picture of StubHub as a criminal mastermind that snubbed Spotlight from enormous commissions, lost market share, and severed its business relationship with American Express, its factual allegations far fall short.  Spotlight alleges:

> 286. Spotlight was injured as a direct and proximate result of StubHub and Awin's fraudulent scheme.
>
> 287. In particular, Spotlight received reduced commissions, has incurred expenses discovering the fraud, has lost market share, and has seen its business relationships deteriorate.

Compl. ¶¶ 286-87.

In other words, Spotlight recites the statutory elements of a §1962(a) claim

---

form of wire transmission).  In addition, Spotlight fails to allege the locations of any purported conversations with Awin.  Spotlight's Complaint leaves StubHub in the dark as to whether any of the purported communications occurred *across state lines*. Accordingly, Spotlight's wire fraud claim is insufficiently plead and must be dismissed.  *See, e.g.*, *Saniefar v. Moore*, No.1:17-cv-00823, 2017 WL 5972747, at *11 (E.D. Cal. Dec. 1, 2017) ("General allegations regarding use of the mails are too vague to satisfy the dictates of Rule 9(b)" (*quoting Timberline Northwest, Inc. v. Hill*, 141 F.3d 1179 (9th Cir. 1998).)

without alleging any *facts* to identify *what* commissions it purportedly did not receive, *what* market share it purportedly lost, and *whether* the Amex relationship actually changed as a direct and proximate result of this scheme.  These threadbare recitals of the statutory elements are the very types of allegations that the Ninth Circuit held are insufficient to state RICO Act violation under §1962(a).  *Nugget Hydroelectric, L.P. v. Pac. Gas and Elec. Co.*, 981 F.2d 429, 437 (9th Cir. 1992) (Plaintiff's allegations that reinvestment of racketeering income caused its injury dismissed with prejudice because they were "general, conclusory, and vague").

Spotlight fails to meet the high bar required to plead a RICO claim, and thus the RICO claim must be dismissed. "RICO was intended to combat organized crime, not to provide a federal cause of action and treble damages" to every plaintiff. *Oscar v. Univ. Students Co-Operative Assn.*, 965 F.2d 783, 786 (9th Cir. 1992), *abrogated on other grounds by Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2006). Because of the criminal nature of civil RICO claims and the "stigmatizing effect on those named as defendants," "[c]ourts should [] 'strive to flush out frivolous RICO allegations at an early stage of the litigation.'" *Wagh v. Metris Direct Servs., Inc.*, 348 F.3d 1102, 1108-09 (9th Cir. 2003), *overruled on other grounds*, *Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007); *see also Quach v. Cross*, No. CV0309627 GAFRZX, 2004 WL 2860346, at *4-5 (C.D. Cal. June 10, 2004), *aff'd*, 252 F.App'x 775 (9th Cir. 2007) (dismissing RICO claim).

**B.**  **Spotlight's Fraud Claim Fails For Lack of Particularity and Lack of Reliance, and Further Fails Under the Economic Loss Rule.**

**1.**  **Spotlight's Fraud Claim Fails To Plead Fraud With Particularity Under Rule 9(B).**

Spotlight's fraud claim fails because it lacks particularity required under Rule 9(b): in all averments of fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. Proc. 9(b).  To survive dismissal, Spotlight's Complaint must state the time, place, and specific content of the false representations and the identities of the parties to the misrepresentation.

1   *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004).

2         The Complaint does not allege a single specific instance of any

3   misrepresentation by StubHub.  This alone requires dismissal.  Spotlight may

4   attempt to argue its allegations that "StubHub defrauded Spotlight when it issued

5   commission checks based on the Internal Team's improper accounting methods"

6   (Compl. ¶ 164) or that "StubHub defrauded Spotlight when it stated that it would

7   properly track, and later rectify the supposed problems with, the manner in which it

8   tracked and collected Affiliate Program sales data to award commissions" (Compl.

9   ¶ 168) are sufficient.[3]  However, even a generous reading of these allegations still

10   fails to fill the gaps of "who, what, when, where, and how" necessary to survive a

11   motion to dismiss.  *See Vess*, 317 F.3d at 1106.  For example, Spotlight does not

12   identify *who* at StubHub made the statement or the time or the place of the

13   purported misrepresentations.  *See* Compl. ¶¶ 168, 170 (identifying only

14   "StubHub," and without time or place).

15         Accordingly, the fraud claim is insufficiently plead and must be dismissed.[4]

16   **2.   Spotlight Fails To Allege Reliance On Any Misrepresentation That Resulted In Its Detriment.**

17

18         Spotlight's fraud claim also fails because it does not allege any justifiable

19   reliance on the misrepresentation that resulted in its detriment.  *See Body Jewelz,*

20   *Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084, 1091 (C.D. Cal 2017)

21   (California fraud claim includes elements of "justifiable reliance" and "resulting

22

23   [3] Spotlight also alleges that StubHub knowingly misrepresented affiliate sales to
*other* affiliates.  *See e.g.*, Compl. ¶ 174.  Spotlight has absolutely no basis—let

24   alone standing—to make these inflammatory allegations.  Instead, it is clear
Spotlight inappropriately included these allegations for the specific purpose of

25   attempting to inflict harm to StubHub's reputation in the industry.

26   [4] To the extent their allegations are based on forward-looking alleged
misrepresentations (*see e.g.*, Compl. ¶ 168), those allegations fail as a matter of

27   law. *See also Hauter v. Zogarts* 14 Cal.3d 104, 112 (1975) (sales talk is generally
considered opinion, unless it involves a representation of product safety).

28

STUBHUB'S MPA ISO MOTION TO DISMISS;
CASE NO. 2:19-CV-10791

damage."). Spotlight alleges it relied on StubHub's statements that the accounting issues would be resolved and remained an affiliate (Compl. ¶ 180), but identifies no change in position or reliance to Spotlight's detriment on account of StubHub's alleged false statement. For example, Spotlight never alleges it relied on StubHub's statements to the detriment of pursuing an affiliate program with *another* ticket-exchange marketplace.

In addition, Spotlight has not shown any damage resulting from a particular *misrepresentation*. Spotlight cry fouls that it was underpaid. This supposed damage, however, is only assessed by determining whether StubHub accurately tracked a particular transaction was *eligible* for a commission. Any statement— whether fraudulent or not—has no bearing whatsoever on whether StubHub properly accounted for a commissionable transaction. For example, even assuming *arguendo* StubHub made material misrepresentations, which StubHub denies, Spotlight would be hard-pressed to prove any harm from those misrepresentations if StubHub properly paid a commission on all eligible transactions.

### 3. The Fraud Claim is Barred by the Economic Loss Rule.

Spotlight's attempt to wrap a contract claim into a fraud claim is barred by the economic loss rule.[5] The economic loss rule bars fraud claims where "the damages plaintiffs seek are the same economic losses arising from the alleged breach of contract." *Multifamily Captive Group, LLC v. Assurance Risk Managers, Inc.*, 629 F. Supp. 2d 1135, 1146 (E.D. Cal. 2009); *see also, e.g., Oracle USA, Inc. v. XL Glob. Servs., Inc.*, No. C09-00537 MHP, 2009 WL 2084154, at *4 (N.D. Cal. July 13, 2009) (economic loss rule barred seller from bringing fraud claim against purchaser who requested extension of contract and promised to pay outstanding invoices but ultimately refused to pay). Spotlight's alleged reliance on a statement

---

[5]As argued below, Spotlight also fails to identify the contract at issue and the relevant terms that it claims were breached, and thus fails to make out a breach of contract claim. *See* Sec. C.

that commissions would be properly paid did not cause the underpayment here; rather, any alleged damages flow from the purported contractual relationship that would define any alleged underpayment.

### C. Spotlight Fails to State a California Unfair Competition Law Claim.

#### 1. Spotlight's UCL "Fraud" Claim Fails Because It Does Not Plead It With Particularity.

A plaintiff bringing a "fraud" claim under the UCL must show that "'members of the public are likely to be deceived' by the challenged business acts or practices." *Garcia v. Sony Computer Entm't Am., LLC*, 859 F. Supp. 2d 1056, 1062 (N.D. Cal. 2012) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009)). In addition, Spotlight is required to, but fails, to plead its "fraud" claim under the UCL with particularity. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (dismissing "fraud" UCL claim where plaintiff did not specify (1) content of purportedly misleading sales materials, (2) when he was exposed to misrepresentations, and (3) which misrepresentations he found material and upon which he relied); *Samet v. Procter & Gamble Co.*, No. 5:12-cv-01891-PSG, 2013 WL 6491143, at *3 (N.D. Cal. Dec. 10, 2013) ("The Ninth Circuit made it clear that when pleading claims under the fraudulent conduct prong of the UCL, a plaintiff is required to meet Rule 9(b)'s heightened requirements."). For all the same reasons that Spotlight's First Cause of Action for fraud fails, the UCL fraud claim also fails.

#### 2. Spotlight's UCL "Unfair" Claim Fails Because It Fails To Allege An Anticompetitive Act.

Because Spotlight is claiming to have suffered injury from a competitor's allegedly "unfair" act, it is required to allege "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. L.A Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999); *see also Martinez v. The*

*Welk Grp., Inc.*, No. 09 CV 2883, 2011 WL 90313, *12 (S.D. Cal. Jan. 11, 2011) (observing that in competitor cases, unfair act must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition") (quoting *Cel-Tech*, 20 Cal. 4th at 186-87).[6]

Spotlight's boilerplate allegations fall flat in meeting this burden.  Spotlight's allegations are essentially that StubHub's practices are unfair because StubHub underpaid commissions.  Compl. ¶ 222-24.  There is no "legislatively declared policy or proof of some actual or threatened impact on competition"; rather this is again a dressed up breach of contract claim, not a claim tethered to antitrust policies that could be brought as a UCL "unfair" claim.  *Cel-Tech*, 20 Cal. 4th at 186-87.

### 3.      Spotlight's UCL "Unlawful" Claim Fails Because It Rises And Falls With Its RICO Claim.

Spotlight's allegations that StubHub's practices are unlawful are premised on its claim that "they are in violation of the federal RICO statute" as discussed in its Fourth Cause of Action.  Compl. ¶ 231.  As the RICO claim lacks any merit, the UCL unlawful claim must also be dismissed.  Accordingly, all three prongs of Spotlight's UCL claim fail, and the UCL claim must be dismissed.

### D.      Spotlight's Tortious Interference Claim Fails Because It Is Too Vague To Meet The Pleading Standards And Fails To Adequately Allege Actual Breach Or Interference.

Spotlight's tortious interference claim should be dismissed because it is so vague as to the circumstances of any alleged interference that it fails to meet Rule 8's notice pleading requirements and it fails to adequately allege actual breach or

---

[6] Spotlight also alleges "StubHub's practices are unfair because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to its affiliates" business by denying and/or retaining commissions that are owed."  Compl. ¶ 221.  But, as the unfair claim revolves around allegations StubHub "interfer[es] with affiliate business relationships," it is appropriately considered under the *Cel-Tech* test addressing competition rather than this amorphous standard of "immoral, unethical, oppressive, unscrupulous, or substantially injurious."  *See Cel-Tech*, 20 Cal. 4th at 184.

interference of a contractual relationship.  To state a claim for tortious interference with contract under California law, a plaintiff must prove "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148 (2004).

First, the allegations relating to StubHub's interference are so ambiguous that it does not meet even Rule 8's liberal pleading standards. *Blantz v. Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 927 (9th Cir. 2013) (affirming dismissal of allegations against defendant, observing that the "complaint does not contain any specific factual allegations regarding [defendant's] involvement in the actions giving rise to this lawsuit").  The Complaint alleges, in what StubHub surmises to be the heart of the interference claim:  "StubHub's persistent and improper contact with Amex, and its other interference, also has adversely impacted Spotlight's contract renegotiations with Amex."  Compl. ¶ 205. But what contact?  What interference?  While Spotlight alleges StubHub requested that Amex stopped providing certain information it received from *StubHub* (Compl. ¶ 198), Spotlight fails to allege whether Amex is required by contract to provide this information.  In fact, Spotlight points to no contractual provision—because, of course, this would require Spotlight to actually plead the contents of an alleged contract—that discusses *any* obligation by *any* party on what information can or cannot be shared.  Spotlight's complete failure to identify any third party contract or its terms leaves StubHub in the dark as to what precisely it allegedly did wrong. *See McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996) (holding the district court did not abuse its discretion in dismissing amended complaint with prejudice for violation of general pleading rules when "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough

1   detail to guide discovery").

2   Second, Spotlight fails to allege "actual breach or disruption" of its

3   contractual relationship with Amex.  *See Name.Space, Inc. v. Internet Corp. for*

4   *Assigned Names & Numbers*, 795 F.3d 1124, 1134 (9th Cir. 2015) (affirming

5   dismissal tortious interference with contract claim where the plaintiff "does not

6   allege any specific resultant disruption to contractual or economic relationships").

7   Spotlight alleges that it had a valid contract with Amex, and that StubHub

8   interfered with this contractual relationship by "inform[ing] Amex that StubHub . . .

9   was no longer able to work with Spotlight, leaving Amex the option to either end its

10  long-time relationship with Spotlight or no longer have access to StubHub's

11  inventory of tickets to fulfill its secondary market card member requests."  Compl.

12  ¶ 162.  However, Amex did not end its alleged contract with Spotlight.  In fact, the

13  renegotiation of the terms of the alleged contract between Spotlight and Amex

14  "remains unresolved."  (*Id.*)  Spotlight is still free to engage Amex to further

15  negotiate the contract.  Spotlight does not suggest that any actual breach or

16  disruption already occurred where "it lost a contract" or that the negotiation with

17  Amex failed.  *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th

18  Cir. 2008) (affirming dismissal of tortious interference claim that set forth only

19  general allegation of harm, as opposed to a lost contract or failed negotiation).

20  Finally, to the extent Spotlight is really complaining that StubHub was

21  underpaying Spotlight under its contract, such an assertion is not a tortious

22  interference claim, but rather merely a contract claim.

23      **E.    Spotlight's Claims For Breach Of Contract And Breach Of
            Implied Covenant Of Good Faith And Fair Dealing Fails Because
24          Spotlight Fails To Alleges A Contract Between Spotlight And
            StubHub, Nor Its Terms.**
25

26  Spotlight's fifth cause of action for breach of contract and sixth cause of

27  action for breach of implied covenant of good faith and fair dealing should be

28  dismissed because Spotlight fails to establish the basic facts regarding any contract

1   with StubHub on which it bases it claim.

2        A cause of action for damages for breach of contract necessarily requires a

3   plaintiff to allege the existence of a contract between the parties. *First Com. Mortg.*

4   *Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).  A party may plead a written

5   contract "either by its terms — set out verbatim in the complaint or a copy of the

6   contract attached to the complaint and incorporated therein by reference — or by its

7   legal effect." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1489 (2006).

8   "In order to plead a contract by its legal effect, plaintiff must allege the substance of

9   its relevant terms." *Id.* (internal quotation marks and citation omitted).

10       Here, Spotlight does none of those things.  Spotlight does not attach the

11  purported contract to the Complaint nor does it provide the language of the contract

12  nor does it otherwise sufficiently allege the substance of its terms.  Spotlight merely

13  identifies an application to become a member of the StubHub's Affiliate Program,

14  where "StubHub must pay an affiliate a commission for all ticket sales that the

15  affiliate directs to StubHub."  Compl. ¶¶ 290-294.  It is unclear whether Spotlight

16  alleges that the application to become a member of the Affiliate Program

17  constitutes a contract.  Even assuming it does, Spotlight fails to allege the essential

18  terms of the purported contract, including, the date on which the parties entered the

19  contract, the duration of the contract, when the payment of the commission was

20  due, what transactions are actually eligible for a commission, and the amount of the

21  commission owed to Spotlight.  *See N. Cnty. Commc'ns Corp. v. Verizon Global*

22  *Networks, Inc.*, 685 F. Supp. 2d 1112, 1122 (S.D. Cal. 2010) (finding failure to

23  plead existence of a contract by its legal effect where the claimant "has not

24  explained why it cannot plead, among other things, the nature of the contract, dates

25  pertinent to the contract, and other relevant terms that would put [defendant] on

26  notice of the basis of [the breach of contract claim]").  Because Spotlight fails to

27  adequately allege a contract with StubHub, Spotlight's fifth cause of action for

28  breach of contract should be dismissed.

1    Similarly, a good faith and fair dealing claim cannot stand absent an existing

2    contract.  *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th

3    1026, 1031 (1992).  As explained above, Spotlight fails to sufficiently allege the

4    existence of a contract between the parties.  Therefore, Spotlight's sixth cause of

5    action for breach of good faith and fair dealing should also be dismissed.

6    **F.    Spotlight's Quantum Meruit Claim Fails Because The**

7    **Relationship Between Spotlight And StubHub Is Based Upon Its Alleged Entry Into A Written Contract.**

8    Plaintiff's eight cause of action for quantum meruit should be dismissed

9    because no such claim exits where Spotlight alleges that a written agreement

10   governs the same subject.  Under California law, a claim for quasi-contract is

11   synonymous with a claim for quantum meruit.  *E.J. Franks Constr., Inc. v. Sahota*,

12   226 Cal. App. 4th 1123, 1127 (2014).  An action in quasi-contract "does not lie

13   when an enforceable, binding agreement exists defining the rights of the parties."

14   *Paracor Fin. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996); *Berkla*

15   *v. Corel Corp.*, 302 F.3d 909, 918 (9th Cir. 2002) ("There cannot be a valid,

16   express contract and an implied contract, each embracing the same subject matter,

17   existing at the same time.").

18   Here, the very same facts underlying Spotlight's breach of contract claim are

19   the basis for its quantum meruit claim.  Specifically, Spotlight alleges that StubHub

20   did not pay a portion of the commission owed to Spotlight "[p]ursuant to the

21   Affiliate Program's terms and conditions."  Compl. ¶ 323.  Thus, as alleged by

22   Spotlight itself, whether StubHub must pay Spotlight commissions is governed by

23   an express written contract, notwithstanding Spotlight's failure to properly allege a

24   breach of contract claim.  Allowing Spotlight to recover in quantum meruit "would

25   improperly redefine the parties' rights."  *Total Coverage, Inc. v. Cendant Settlement*

26   *Servs. Group, Inc.*, 252 Fed. Appx. 123, 126 (9th Cir. 2007); *see Hedging*

27   *Concepts, Inc. v. First All. Mortg. Co.*, 41 Cal. App. 4th 1410, 1420 (1996) ("When

28   parties have an actual contract covering a subject, a court cannot — not even under

STUBHUB'S MPA ISO MOTION TO DISMISS;
CASE NO. 2:19-CV-10791

1  the guise of equity jurisprudence — substitute the court's own concepts of fairness

2  regarding that subject in place of the parties' own contract.").

3      **G.      Spotlight's Promissory Estoppel Claim Fails Because Spotlight
            Fails To Allege A Clear And Unambiguous Promise And Injury
4            By Reliance.**

5          Spotlight's promissory estoppel claim should be dismissed because it fails to

6  adequately allege a clear and unambiguous promise and injury caused by

7  Spotlight's reliance on that promise.  "The elements of a promissory estoppel claim

8  are '(1) a promise clear and unambiguous in its terms; (2) reliance by the party to

9  whom the promise is made; (3) [the] reliance must be both reasonable and

10  foreseeable; and (4) the party asserting the estoppel must be injured by his

11  reliance.'" *U.S. Ecology, Inc. v. State of Cal.*, 129 Cal. App. 4th 887, 901 (2005)

12  (internal citation omitted).

13          Here, Spotlight fails to allege a clear and unambiguous promise upon which

14  it reasonably could have relied.  Spotlight alleges that "StubHub promises to pay

15  the affiliate a certain percentage of the sales that the affiliate directs to StubHub"

16  but does not specify how much StubHub promised to pay, what ticket transactions

17  are entitled to a commission, or when StubHub promised to pay it.  Compl. ¶¶ 330,

18  338.  Spotlight also alleges that "StubHub also promised Spotlight that the affiliate

19  sales underreporting would be resolved going forward" and that "Awin was brought

20  into the enterprise to ensure that there were no further issues."  Compl. ¶¶ 338-39.

21  Such allegations suffer the same flaw — none of these allegations constitute a

22  "clear and unambiguous" promise.

23          Even assuming Spotlight sufficiently alleges the existence of a promise,

24  which it does not, it is unclear what injury Spotlight suffered by relying on the

25  alleged promises.  Under California law, injury under promissory estoppel is

26  established where the claimant suffered an "irremediable change of position . . . in

27  reliance upon the [] promise." *Scales v. First Horizon Home Loans*, No. 2:11-CV-

28  02505-GEB, 2012 WL 531022, at *3 (E.D. Cal. Feb. 17, 2012) (citing *Wilson v.*

*Bailey*, 8 Cal. 2d 416, 424 (1937)).  This element encompasses "damages measured by the extent of the obligation assumed and not performed."  *Toscano v. Greene Music*, 124 Cal. App. 4th 685, 692 (2004) (citations omitted).  But, Spotlight fails to allege an irremediable change of position.  Quite to the contrary, Spotlight alleges that it "remained as an affiliate."  Compl. ¶ 340.  In other words, Spotlight fails to allege any damage caused by its reliance on StubHub's purported promises.  Therefore, Spotlight's cause of action for promissory estoppel should be dismissed.

### H.   Spotlight's Unjust Enrichment Claim Fails Because California Law Does Not Recognize Unjust Enrichment As A Cause Of Action.

Spotlight's unjust enrichment claim should be dismissed without leave for amend because California law does not recognize unjust enrichment as a cause of action.  *See, e.g., Iezza v. Saxon Mortg. Services, Inc.*, No. 10-03634 DDP(JCGx), 2010 WL 3834041, at *2 (C.D. Cal. Sept. 28, 2010) ("Under California law, a claim for unjust enrichment cannot stand alone as an independent claim for relief."); *Jogani v. Super. Ct.*, 165 Cal. App. 4th 901, 911 (2008) ("[U]njust enrichment is not a cause of action.  Rather, it is a general principle underlying various doctrines and remedies, including quasi-contract.") (internal citations omitted).  No possible amendment could salvage this claim, and thus it should be dismissed with prejudice.

## V.   CONCLUSION

For the forgoing reasons, this Court should grant Defendant StubHub's Motion to Dismiss in its entirety.

Dated:    February 18, 2020        CROWELL & MORING LLP


*/s/  Gabriel M. Ramsey*
Gabriel M. Ramsey

Attorneys for Defendant
StubHub, Inc.

STUBHUB'S MPA ISO MOTION TO DISMISS;
CASE NO. 2:19-CV-10791