1  CROWELL & MORING LLP
   Gabriel M. Ramsey (SBN 209218)
2  GRamsey@crowell.com
   Kayvan M. Ghaffari (SBN 299152)
3  kghaffari@crowell.com
   3 Embarcadero Center, 26th Floor
4  San Francisco, CA 94111
   Telephone: 415.986.2800
5  Facsimile: 415.986.2827

6  CROWELL & MORING LLP
   Emily T. Kuwahara (SBN 252411)
7  EKuwahara@crowell.com
   515 South Flower St., 40th Floor
8  Los Angeles, CA 90071
   Telephone: 213.622.4750
9  Facsimile: 213.622.2690

10 *Attorneys for Defendant*
   StubHub, Inc.

11

12

13              UNITED STATES DISTRICT COURT

14            CENTRAL DISTRICT OF CALIFORNIA

15                   WESTERN DIVISION

16 SPOTLIGHT TICKET                  Case No. 2:19-cv-10791-PA-JC
   MANAGEMENT, INC., a Delaware
17 corporation,                      **DEFENDANT STUBHUB, INC.'S
                                     NOTICE OF MOTION AND
18          Plaintiff,               MOTION TO DISMISS PLAINTIFF
                                     SPOTLIGHT TICKET
19       v.                          MANAGEMENT, INC.'S AMENDED
                                     COMPLAINT;**
20 STUBHUB, INC., a Delaware
   corporation; AWIN, INC. d/b/a     **MEMORANDUM OF POINTS AND
21 AWIN GLOBAL AFFILIATE             AUTHORITIES IN SUPPORT
   NETWORK, a Delaware corporation   THEREOF**
22
            Defendants.              Hearing Date:  May 11, 2020
23                                   Hearing Time:  1:30 P.M.
                                     Courtroom:     9A
24

25                                   Action Filed:  December 20, 2019

26

27

28

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on May 11, 2020 at 1:30 p.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Percy Anderson, located in First Street Courthouse, 350 W. 1st Street, Courtroom 9A, 9th Floor, Los Angeles, California 90012, Defendant StubHub, Inc. ("StubHub") will and hereby does move this Court to dismiss Plaintiff Spotlight Ticket Management, Inc.'s ("Spotlight") Amended Complaint in its entirety for failure to state a claim under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and on such other and further matters as the Court may accept at the hearing on this motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on April 1, 2020.

Dated:    April 10, 2020              CROWELL & MORING LLP


                                      */s/  Gabriel M. Ramsey*
                                      Gabriel M. Ramsey
                                      Emily T. Kuwahara
                                      Kayvan M. Ghaffari

                                      Attorneys for Defendant
                                      StubHub, Inc.

STUBHUB'S MOTION TO DISMISS
CASE NO. 2:19-CV-10791

# **<u>TABLE OF CONTENTS</u>**

**Page(s)**

MEMORANDUM OF POINTS AND AUTHORITIES............................................ 1

I.     INTRODUCTION................................................................................ 1

II.    ALLEGATIONS IN THE COMPLAINT........................................... 3

III.   LEGAL STANDARD ......................................................................... 4

IV.   SPOTLIGHT FAILS TO ALLEGE ITS ONLY FEDERAL CLAIM........... 4

     A.    Spotlight Lacks Standing to Assert a RICO Claim ............... 5

     B.    Spotlight Fails To Allege A RICO Enterprise ....................... 7

          1.    Spotlight has not and cannot allege that the members of the purported enterprise shared a common purpose ................. 8

          2.    Spotlight fails to distinguish the roles of each defendant, and impermissibly lumps them together..................................... 9

          3.    Spotlight fails to plead a pattern of racketeering activity......... 10

     C.    Spotlight Does Not Adequately Allege StubHub's Participation In Enterprise Conduct, As Opposed To Individual Conduct ............. 11

     D.    Spotlight Fails To State A Claim For Mail And Wire Fraud ............. 12

          1.    Spotlight's mail and wire fraud claims should be dismissed for lack of particularity under Rule 9(b)................. 12

          2.    Spotlight fails to allege an actionable material misrepresentation or omission .................................................... 13

          3.    Spotlight fails to allege specific intent ..................................... 15

     E.    Spotlight Fails To Plead Conspiracy Under 18 U.S.C. § 1962(d)...... 16

V.    SPOTLIGHT'S ONLY FEDERAL CLAIM SHOULD BE DISMISSED WITH PREJUDICE AND SPOTLIGHT'S REMAINING STATE LAW CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION ............................ 17

VI.   SHOULD THE COURT REACH THEM, SPOTLIGHT ALSO FAILS TO ALLEGE ITS STATE LAW CLAIMS ........................................ 18

     A.    Spotlight's Fraud Claim Fails For Lack of Particularity and Lack of Reliance, and Further Fails Under the Economic Loss Rule ......... 18

          1.    Spotlight's Fraud Claim Fails To Plead Fraud With Particularity Under Rule 9(B)................................................... 18

          2.    Spotlight Fails To Allege Reliance On Any Misrepresentation That Resulted In Its Detriment .................. 18

          3.    The Fraud Claim is Barred by the Economic Loss Rule ........... 19

     B.    Spotlight Fails to State an Unfair Competition Law Claim................ 20

          1.    Spotlight's UCL "Fraud" Claim Fails Because It Alleges No Harm to the Public and Fails to Plead with Particularity.......................................................................... 20

2.  Spotlight's UCL "Unfair" Claim Fails Because It Fails To Allege an Unfair Act .......................................................... 20

3.  Spotlight's UCL "Unlawful" Claim Fails Because It Rises And Falls With Its Other Unsupported Claims ..................... 22

C.  Spotlight's Has Not Alleged Facts Plausibly Suggesting That StubHub Has Tortiously Interfered With Its Business Interests ......... 22

D.  Spotlight's Claims For Breach Of Contract And Breach Of Implied Covenant Of Good Faith And Fair Dealing Fail Because Spotlight Fails To Allege A Contract Between Spotlight And StubHub, Nor Its Terms ............................................................. 23

E.  Spotlight's Quantum Meruit Claim Fails Because The Relationship Between Spotlight And StubHub Is Based Upon Its Alleged Entry Into A Written Contract ...................................... 24

F.  Spotlight's Promissory Estoppel Claim Fails Because Spotlight Fails To Allege A Clear And Unambiguous Promise And Injury By Reliance ............................................................................... 25

G.  Spotlight's Unjust Enrichment Claim Fails Because California Does Not Recognize Unjust Enrichment As A Cause Of Action ...... 25

VII.  CONCLUSION ............................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ackerman v. NW. Mut. Life Ins. Co.*,
  172 F.3d 467 (7th Cir. 1999) ................................................................. 13

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) ............................................................................ 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................. 3, 4, 17

*Baytree Cap. Assocs., LLC v. Quan*,
  2008 WL 4447647 (C.D. Cal. Sept. 29, 2008) ................................... 10

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................ 3, 17

*Bhatti v. Goldman*,
  2014 WL 12585769 (C.D. Cal. Dec. 2, 2014) ................................... 17

*Body Jewelz, Inc. v. Valley Forge Ins. Co.*,
  241 F. Supp. 3d 1084 (C.D. Cal 2017) .............................................. 18

*Brown v. Bettinger*,
  2015 WL 4162505 (D. Nev. July 8, 2015) ............................................ 6

*Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*,
  818 F.2d 1466 (9th Cir. 1987) ........................................................... 15

*U.S. v. Christensen*,
  828 F.3d 763 (9th Cir. 2015) .......................................................... 8, 9

*Comwest, Inc. v. Am. Operator Servs., Inc.*,
  765 F. Supp. 1467 (C.D. Cal. 1991) .................................................. 14

*In Re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*,
  2012 WL 10731957 (C.D. Cal June 29, 2012) ..................................... 8

*Davis v. Mortgage Elec. Registration Sys, Inc.*,
  2012 WL 13009142 (C.D. Cal. Feb. 13, 2012) (Anderson, J.) ........... 12

*Eclectic Props. East, LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ....................................................................... 4

*Edwards v. Marin Park, Inc.*,
   356 F.3d 1058 (9th Cir. 2004) ............................................................... 4, 18

*Eller v. EquiTrust Life Ins. Co.*,
   778 F.3d 1089 (9th Cir. 2015) .................................................................. 15

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*,
   525 F.3d 822 (9th Cir. 2008) ..................................................................... 22

*Giuliana v. Fulton*,
   399 F.3d 381 (1st Cir. 2005) ............................................................... 14, 16

*In re Glenfed Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994) (en banc) .................................................... 14

*Gomez v. Gunthy-Renker, LLC*,
   2015 WL 4270042 (C.D. Cal. July 13, 2015) ............................................. 8

*Hellenic Petrol. LLC v. Mansfield Oil Co.*,
   2020 WL 433084 (E.D. Cal. Jan. 28, 2020) ................................................ 6

*Hemi Group, LLC v. City of N.Y.*,
   559 U.S. 1 (2010) ..................................................................................... 5, 6

*Hollander v. Flash Dancers Topless Club*,
   340 F. Supp. 2d 453 (S.D.N.Y. 2004) ........................................................ 7

*Howard v. America Online, Inc.*,
   208 F.3d 741 (9th Cir. 2000) ............................................................... 4, 16

*Iezza v. Saxon Mortg. Servs., Inc.*,
   2010 WL 3834041, at *2 (C.D. Cal. Sept. 28, 2010). ............................... 25

*Imagineering, Inc. v. Kiewit Pac. Co.*,
   976 F.2d 1303 (9th Cir. 1992) .................................................................... 7

*Jackson v. Carey*,
   353 F.3d 750 (9th Cir. 2003) ..................................................................... 17

*Jepson, Inc. v. Makita Corp.*,
   34 F.3d 1321 (7th Cir. 1994) ..................................................................... 16

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ....................................................................... 21

*The Knit With v. Knitting Fever, Inc.*,
  2012 WL 2938992 (E.D. Pa. July 19, 2012) ..................................................... 7

*Kwan v. SanMedica Int'l*,
  854 F.3d 1088 (9th Cir. 2017) ....................................................................... 16

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
  940 F.2d 397 (9th Cir. 1991) ......................................................................... 10

*Lent v. JP Morgan Chase Bank, N.A.*,
  2011 WL 5971190, at *2 (C.D. Cal. Nov. 29, 2011) ........................................ 23

*Linde LLC v. Valley Protein LLC*,
  2019 WL 3035551 (E.D. Cal. July 11, 2019) ................................................... 20

*Mazur v. eBay Inc.*,
  2008 U.S. Dist. LEXIS 57105 (N.D. Cal. July 23, 2008) ................................. 10

*Miller v. Yokohama Tire Corp.*,
  358 F.3d 616 (9th Cir. 2004) .................................................................... 14, 16

*Moore v. Kayport Package Exp., Inc.*,
  885 F.2d 531 (9th Cir. 1989) ......................................................................... 14

*Mostowfi v. i2 Telecom Intern., Inc.*,
  269 F. App'x 621 (9th Cir. 2008) ................................................................... 12

*Multifamily Captive Grp., LLC v. Assurance Risk Managers, Inc.*,
  629 F. Supp. 2d 1135 (E.D. Cal. 2009) ........................................................... 19

*N. Cnty. Commc'ns Corp. v. Verizon Global Networks, Inc.*,
  685 F. Supp. 2d 1112 (S.D. Cal. 2010) ........................................................... 24

*Name.space, Inc. v. ICANN*,
  2013 WL 2151478 (C.D. Cal. Mar. 4, 2013) ................................................... 23

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
  795 F.3d 1124 (9th Cir. 2015) ....................................................................... 23

*Neder v. U.S.*,
  527 U.S. 1 (1999) .......................................................................................... 14

*Nova Designs, Inc. v. Scuba Retailers Ass'n,*
   114 F.3d 1195 (9th Cir. 1997) ............................................................................ 8

*Oracle USA, Inc. v. XL Glob. Servs., Inc.,*
   2009 WL 2084154 (N.D. Cal. July 13, 2009) ..................................................... 19

*Oscar v. Univ. Students Co-Operative Ass'n.,*
   965 F.2d 783 (9th Cir. 1992) .......................................................................... 5, 7

*Osgood v. Main Streat Mktg., LLC,*
   2017 WL 131829 (S.D. Cal. Jan. 13, 2017) ......................................................... 5

*Ozeran v. Jacobs,*
   798 F. App'x 120, 122 (9th Cir. Feb. 18, 2020) .................................................... 5

*Paracor Fin. v. Gen. Elec. Cap. Corp.,*
   96 F.3d 1151 (9th Cir. 1996) ............................................................................ 24

*Proven Methods Seminars v. Am. Grants & Affordable Hous. Inst.,*
   2008 WL 269080, at *7 (E.D. Cal. Jan. 29, 2008) ................................................ 7

*Reddy v. Litton Indus.,*
   912 F.2d 291 (9th Cir. 1990) ............................................................................ 17

*Resolution Trust Corp. v. Keating,*
   186 F.3d 1110 (9th Cir. 1999) ............................................................................ 5

*Reves v. Ernst & Young,*
   507 U.S. 170 (1993) ........................................................................................ 11

*Rothman v. Vedder Park Mgmt.,*
   912 F.2d 315 (9th Cir. 1990) ............................................................................ 12

*Royce Int'l Broad. Corp. v. Field,*
   2000 WL 236434 (N.D. Cal. Feb. 22, 2000) ..................................................... 7, 8

*Salmon Spawning & Recovery Alliance v. Gutierrez,*
   545 F.3d 1220 (9th Cir. 2008) ............................................................................ 6

*Scales v. First Horizon Home Loans,*
   2012 WL 531022 (E.D. Cal. Feb. 17, 2012) ....................................................... 25

*Sever v. Alaska Pulp Corp.,*
   978 F.2d 1529 (9th Cir. 1992) .......................................................................... 11

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010) ........................................................................ 22

*Slack v. Int'l Union of Operating Eng'rs*,
   2014 WL 4090383 (N.D. Cal. Aug. 19, 2014) ............................................ 12, 17

*Sound Apprais. & Savage Apprais. Servs. v. Wells Fargo Bnk*,
   2009 WL 3353057 (N.D. Cal. Oct. 15, 2009) ................................................ 12

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) ........................................................................ 20

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
   992 F. Supp. 2d 962 (C.D. Cal. 2014) ............................................................ 13

*Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*,
   252 F. App'x 123 (9th Cir. 2007) ................................................................... 24

*In Re Toyota Motor Corp. Unintended Acceleration Mktg, Sales*
   *Practice, and Prod. Liab. Litig.*,
   826 F. Supp. 2d 1180 (C.D. Cal. 2011) .......................................................... 10

*Triggs v. Ward*,
   2010 WL 11549714 (C.D. Cal. Nov. 29, 2010) (Anderson, J.) ....................... 18

*Turner v. Cook*,
   362 F.3d 1219 (9th Cir. 2004) .......................................................................... 4

*United Food & Com. Workers Cent. Pa. Reg'l Health and Welfare*
   *Fund v. Amgen, Inc.*,
   400 F. App'x 255 (9th Cir. 2010) ................................................................... 15

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .................................................................. 12, 18

*Wagh v. Metris Direct Servs., Inc.*,
   348 F.3d 1102 (9th Cir. 2003) .......................................................................... 4

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
   865 F. Supp. 2d 1002 (C.D. Cal. 2011) .......................................................... 11

*Zanze v. Snelling Servs., LLC*,
   412 F. App'x 994 (9th Cir. 2011) ................................................................... 24

1

**State Cases**

2

3
*Beck v. Am. Health Grp., Int'l, Inc.*,
    211 Cal. App. 3d 1555 (1989) ........................................................................22

4

5
*Careau & Co. v. Sec. Pacific Bus. Credit, Inc.*,
    222 Cal.App.3d 1371 (1990) ..........................................................................24

6

7
*Cel-Tech Commc'ns, Inc. v. L.A Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ...................................................................................21

8

9
*First Com. Mortg. Co. v. Reece*,
    89 Cal. App. 4th 731 (2001) ...........................................................................23

10

11
*Graham v. Bank of Am., NA*,
    226 Cal. App. 4th 594 (2014) .........................................................................21

12
*Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*,
    11 Cal. App. 4th 1026 (1992) .........................................................................24

13

14
*U.S. Ecology, Inc. v. State of Cal.*,
    129 Cal. App. 4th 887 (2005) .........................................................................25

15

**Federal Statutes**

16
28 U.S.C. § 1331 ..................................................................................................17

17

18
28 U.S.C. § 1332 ..................................................................................................17

19
18 U.S.C. § 1341 ..................................................................................................12

20
18 U.S.C. § 1343 ..................................................................................................12

21
18 U.S.C. § 1961(5) ..............................................................................................10

22
18 U.S.C. § 1962(c) .....................................................................................11, 17

23
18 U.S.C. § 1962(d) ................................................................................2, 16, 17

24

25
18 U.S.C. § 1964(c) ...............................................................................................6

26
Fed. R. Civ. P. 9(b) .....................................................................................*passim*

27

28

1       **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.      INTRODUCTION**

3           Defendant StubHub, Inc. ("StubHub") respectfully moves to dismiss the First

4  Amended Complaint ("FAC"), which contorts a disagreement about commissions

5  into a sprawling 419 paragraphs including unsupported RICO claims. This case is

6  fundamentally a dispute about whether particular ticketing transactions carried out

7  on StubHub's website are eligible for commissions payable to Spotlight Ticket

8  Management, Inc. ("Spotlight"). StubHub is one of the largest ticket marketplaces

9  in the world and a leader in helping fans buy and sell tickets for sports, concerts,

10 and other live events. StubHub launched an affiliate program enabling third party

11 affiliates to generate revenue by sending customers to purchase tickets on StubHub.

12 Under the program terms, StubHub pays commissions on only certain *eligible* ticket

13 sales. Spotlight is an affiliate and alleges it did not receive commissions on certain

14 sales.

15         Spotlight attempts to spin these facts into unsupported allegations of

16 conspiracy, going so far as to cast the Defendants' routine commercial relationship

17 as a purported racketeering RICO "enterprise." Spotlight further sprinkles its faulty

18 RICO claim with irrelevant and scurrilous third-party reviews of StubHub's

19 program on Internet blog websites. Because RICO claims are often misused to

20 create the false suggestion of criminality and pose a serious risk of unfairly

21 stigmatizing defendants, the Ninth Circuit has determined that flawed RICO claims,

22 such as those here, should be "flushed out" at the early stages of litigation.

23 Accordingly, this FAC's flawed attempt to manufacture a RICO claim out of a

24 commissions dispute should be "flushed out" with prejudice, as any amendment

25 would be futile. Further, because the RICO claim provides the only basis for federal

26 jurisdiction here, the Court should dismiss Spotlight's remaining claims for lack of

27 subject matter jurisdiction.

28         But should the Court continue its analysis of Spotlight's FAC, it will find that

all of Spotlight's conclusory allegations fail to meet applicable pleading requirements for any claim:

First, Spotlight's RICO claim fails to allege a RICO enterprise, including a common purpose, specific allegations against each defendant, and a pattern of racketeering activity. The claim also does not allege that StubHub participated in conducting the *enterprise's* affairs, rather than its ordinary business interests; that StubHub made any actionable statement or omission, or had specific intent, all of which must be pled with particularity; nor that Spotlight was proximately harmed.

Second, Spotlight fails to allege that StubHub *agreed* to commit any acts of racketeering as required under 18 U.S.C. § 1962(d).

Third, Spotlight fails to plead its fraud claim with particularity under Rule 9(b) and under the economic loss rule because it flows from a contract claim.

Fourth, Spotlight fails to plead any of the prongs for its California Unfair Competition Law ("UCL") claim, as it fails to meet the requirements for pleading "fraud," fails to allege any "unfair" anticompetitive or anti-consumer conduct, and fails to allege any predicate claim to support its "unlawful" claim.

Fifth, Spotlight fails to allege a coherent tortious interference claim and fails to allege any third-party contract that StubHub purportedly interfered with.

Sixth, Spotlight's contract claim, which appears to be the crux of its claims, fails to specifically identify any contract or to allege any relevant contractual terms.

Seventh, the related contract-based claims for breach of implied covenant of good faith and fair dealing, quantum meruit, and promissory estoppel fail because Spotlight neither alleges a contract nor any other basis for these alternative claims.

Finally, the unjust enrichment claim is not cognizable under California law.

Spotlight had a chance to cure these deficiencies. It did not and cannot do so. StubHub respectfully requests that the Court dismiss the FAC with prejudice.

## II.   ALLEGATIONS IN THE COMPLAINT

StubHub operates one of the world's largest ticket marketplaces, allowing

consumers to purchase tickets for live events. Dkt. 46, FAC ¶ 64. StubHub launched an affiliate program designed to increase consumer traffic to StubHub's online marketplace. *Id*. ¶ 70. The affiliate program rewards affiliates by paying them a commission on certain ticket sales resulting from consumer traffic they drive to StubHub. *Id*. ¶ 71. StubHub pays a commission only "on *eligible* sales." that affiliates direct to StubHub's website. *Id*. ¶ 17 (emphasis added). In late 2016, StubHub partnered with co-defendant Awin to manage the affiliate program and track eligible transactions. *Id*. ¶¶ 27-28.

Spotlight submitted an application to join the affiliate program in 2011. *Id*. ¶¶ 365-67. Spotlight alleges that, as early as 2016, StubHub underreported certain transactions originating from Spotlight. *Id*. ¶ 23. Spotlight further alleges StubHub knew its tracking methods were inaccurate, withheld this information from Spotlight, and continues to operate in this manner. *Id*. ¶¶ 120, 150. StubHub then purportedly conspired with Awin to knowingly perpetuate the improper accounting and give Spotlight the "proverbial run around" to avoid fixing the alleged improper tracking. *Id*. ¶ 235, 264, 306. In addition, Spotlight alleges StubHub's scheme with Awin interfered with Spotlight's relationship with American Express ("Amex") by which Amex offered its customers access to ticketed events. *Id*. ¶ 237. StubHub's alleged goal was to divert Amex's business away from Spotlight. *Id*. ¶ 39. Spotlight argues a StubHub employee informed Amex "that it was no longer able to work with Spotlight." *Id*. ¶ 191. StubHub's and Awin's alleged purpose of this purported scheme was to "induce the reliance of Spotlight to stay in the Affiliate Program and accept the commission payments as remitted." *Id*. ¶ 349.

## III.   LEGAL STANDARD

A complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, the FAC must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

1   (2009). This standard "asks for more than a sheer possibility that a defendant has

2   acted unlawfully." *Id.* This Court is "not bound to accept as true a legal conclusion

3   couched as a factual allegation." *Id*. "Nor does a complaint suffice if it tenders

4   naked assertion[s] devoid of further factual enhancement." *Id*. (citations omitted).

5   ## IV.   SPOTLIGHT FAILS TO ALLEGE ITS ONLY FEDERAL CLAIM

6          A civil RICO plaintiff has a significant burden at the pleading stage,

7   especially where, as here, its RICO claims is premised on wire and mail fraud. To

8   properly allege a civil RICO claim, Spotlight must allege StubHub participated: in

9   (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a

10  pattern (4) of racketeering activity,[1] which (5) proximately harmed the victim.

11  *Howard v. America Online, Inc.*, 208 F.3d 741, 746 (9th Cir. 2000). Spotlight's

12  FAC falters on each. It fails to allege causation necessary for standing, participation

13  in an enterprise with Awin (not named in the RICO cause of action), the enterprise

14  itself, and predicate acts of mail or wire fraud.

15         Spotlight also fails to plead these elements with particularity under Rule 9(b).

16  *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004). Where,

17  as here, the alleged members of the enterprise carry on legitimate business, and

18  "otherwise act as routine participants in American commerce, a significant level of

19  factual specificity is required to allow a court to infer reasonably that such conduct

20  is plausibly part of a fraudulent scheme." *Eclectic Props. East, LLC v. Marcus &*

21  *Millichap Co.*, 751 F.3d 990, 997-98 (9th Cir. 2014).

22         Because of the criminal nature of civil RICO and the "stigmatizing effect on

23  defendants," "[c]ourts should [] 'strive to flush out frivolous RICO allegations at an

24  early stage of the litigation.'" *Wagh v. Metris Direct Servs., Inc.*, 348 F.3d 1102,

25  1108-09 (9th Cir. 2003), *overruled on other grounds*, *Odom v. Microsoft Corp.*, 486

26  F.3d 541, 551 (9th Cir. 2007). "RICO was intended to combat organized crime, not

27

28  ---
[1] Racketeering activity is any "predicate act" indictable under the several provisions of Title 18 of the U.S. Code. *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004).

to provide a federal cause of action and treble damages" to every plaintiff. *Oscar v. Univ. Students Co-Operative Assn.*, 965 F.2d 783, 786 (9th Cir. 1992), *abrogated on other grounds by Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2006).

### A.   Spotlight Lacks Standing to Assert a RICO Claim

Spotlight's civil RICO claim must be dismissed because Spotlight does not have standing to assert it. To have standing, Spotlight must show injury and that "a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'" *Hemi Group, LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010) (citations omitted). Spotlight's allegations fail to plead the requisite proximate causation. Spotlight makes only threadbare, conclusory allegations of harm that recite the statutory elements of RICO. Spotlight alleges, as it did in its original Complaint:

> 358. Spotlight was injured as a direct and proximate result of StubHub and Awin's fraudulent scheme. […]
>
> 360. In particular, Spotlight received reduced commissions, has incurred expenses discovering the fraud, has lost market share, and has seen its business relationships deteriorate.

FAC. While Spotlight uses the RICO claim to paint an unflattering picture of StubHub, its allegations fail entirely to connect any alleged RICO predicate act to any injury. These threadbare recitals of general injury and the statutory elements are the very types of allegations that courts routinely hold are insufficient to state a RICO claim. *Osgood v. Main Street Mktg., LLC*, 2017 WL 131829, at *8 (S.D. Cal. Jan. 13, 2017) (concluding, on similar allegations, the allegations were insufficient to support that "racketeering activity proximately caused the loss").

Instead, a RICO injury must flow directly from the predicate acts, and does not extend to any and all injuries suffered by a plaintiff. *See Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1117 (9th Cir. 1999). Proximate cause, thus, requires facts establishing there is "'some *direct* relation between the injury asserted and the injurious conduct alleged.'" *Ozeran v. Jacobs*, 798 F. App'x. 120, 122 (9th Cir. Feb. 18, 2020), *quoting Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006)

1   (emphasis added). Spotlight alleges none of these.

2       Spotlight makes its claims without alleging any *facts* to identify *what*

3   commissions it purportedly did not receive, *what* market share it purportedly lost,

4   and *whether* the Amex relationship actually changed as a direct and proximate

5   result of the actions alleged. Thus, Spotlight's allegations of harm fail generally.

6   *See e.g. Hellenic Petrol. LLC v. Mansfield Oil Co.*, 2020 WL 433084, at *5 (E.D.

7   Cal. Jan. 28, 2020) ("reliance 'on an attenuated chain of conjecture' is insufficient

8   to support proximate causation under § 1964(c))'"), *quoting Salmon Spawning &*

9   *Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1228 (9th Cir. 2008).

10      Most critically, none of the categories of alleged injury have any causal

11  nexus to alleged "racketeering activity"—i.e. mail or wire fraud. Indeed, the only

12  alleged predicate acts are the alleged communication or lack thereof of commission

13  tracking data (i.e. the purported "fraudulent submissions, fraudulent representations

14  and fraudulent omissions") and Awin's interstate payment of commissions by wire.

15  FAC ¶¶ 283-362. Spotlight does not allege facts evidencing the purported

16  "racketeering activity" *caused* any of the alleged injury—i.e. alleged "reduced

17  commissions," alleged "lost market share" or alleged "business relationships

18  deteriorate[d]." *Id*. ¶ 360. The RICO claim fails because the purported

19  misstatements on alleged underpayment and the alleged Awin wire transfers

20  remitting the payments are neither the "but for" or proximate cause of any

21  underpayment itself. *Hemi Group, LLC* 559 U.S. at 9; *see also Brown v. Bettinger*,

22  2015 WL 4162505, at *4 (D. Nev. July 8, 2015) ("Although Plaintiff alleges that

23  Defendant failed to pay him as retaliation for objecting to the fraudulent business

24  practices, this fails to create a direct causal connection because the Defendant's

25  failure to pay Plaintiff could have resulted from numerous factors other than the

26  Defendant's alleged wire fraud.").

27      Moreover, courts have repeatedly found that indirect claimed damages

28  resulting from intervening decisions—here Spotlight's alleged "expenses

-6-                                STUBHUB'S MPA ISO MOTION TO DISMISS
                                   CASE NO. 2:19-CV-10791

discovering the fraud"—fail as they are not proximately caused by alleged RICO violations. *See e.g. Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1312 (9th Cir. 1992) (dismissing RICO claim where there was an intervening direct cause of alleged injuries); *Proven Methods Seminars v. Am. Grants & Affordable Hous. Inst.*, 2008 WL 269080, at *7 (E.D. Cal. Jan. 29, 2008) (RICO claim failed where "subsequent intervening decision" not to purchase products caused injury, not "the alleged RICO violation (defrauding the consumers)").[2]

At best, all Spotlight alleges is that it was purportedly underpaid, under some as-yet-unidentified contractual terms. Spotlight repeatedly concedes the basis of its complaint is purported "errors" in commission payments. FAC ¶¶ 4, 8. In other words, stripped of rhetoric, the gravamen of the dispute is that, because of alleged "errors," Spotlight was not paid enough. *Id.* ¶¶ 133-154. Beyond that, the only remaining allegations are that Amex stopped passing along transaction reports that StubHub had provided to Amex, and, on one occasion, a StubHub employee allegedly told Amex that "it was no longer able to work with Spotlight." *Id.* ¶¶ 191-194; *see also id.* ¶¶ 109-110, 132, 176, 182-183, 247. On its face, such conduct in the course of a regular commercial relationship cannot be a predicate act of "racketeering." Indeed, these allegations establish that, at most, this is a garden variety "contractual dispute" and such "are not the types of activities that RICO was intended to eliminate. Any other interpretation would indefinitely expand the reach of RICO by permitting all allegations of 'broken promises' in failed business transactions to constitute 'racketeering activity.'" *Royce Int'l Broad. Corp. v. Field*, 2000 WL 236434, at *4 (N.D. Cal. Feb. 22, 2000).

### B.   Spotlight Fails To Allege A RICO Enterprise.

---

[2] Courts routinely find no proximate cause "where the plaintiff's injuries are caused not by the RICO violations themselves, but by the exposure of those acts." *Hollander v. Flash Dancers Topless Club*, 340 F. Supp. 2d 453, 459-60 (S.D.N.Y. 2004); *The Knit With v. Knitting Fever, Inc.*, 2012 WL 2938992, at *6-9 (E.D. Pa. July 19, 2012) (costs incurred to investigate and mitigate conduct not compensable injury under RICO). Spotlight's allegations of reputational harm (FAC ¶¶ 43-44) are not actionable under RICO. *Oscar*, 965 F.2d at 785.

Spotlight fails to allege the enterprise itself, which "has three elements: (1) a common purpose, (2) an ongoing organization, and (3) a continuing unit." *U.S. v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015) ("Christensen II").

### 1. Spotlight has not and cannot allege that the members of the purported enterprise shared a common purpose.

Spotlight's "common purpose" theory is a dressed up routine commercial relationship between StubHub and Awin that is insufficient under RICO and should be rejected. *See Gomez v. Gunthy-Renker, LLC*, 2015 WL 4270042, at *5-11 (C.D. Cal. July 13, 2015) (repudiating the pleading strategy of transforming business disputes into a RICO claim). Conduct "consistent with a legitimate business purpose" does not support an inference of conspiracy. *Nova Designs, Inc. v. Scuba Retailers Ass'n*, 114 F.3d 1195 (9th Cir. 1997). Where the "alleged association-in-fact is merely a routine contract for services, because the entities are actually pursuing their individual economic interests, rather than any shared purpose," common purpose is not met. *Gomez*, 2015 WL 4270042, at *9; *see also In Re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 2012 WL 10731957, at *8 (C.D. Cal June 29, 2012) ("[p]arties that enter commercial relationships 'for their own gain or benefit' do not constitute a[] [RICO] 'enterprise'").

First, Spotlight fails to plausibly allege the RICO enterprise members shared a common purpose to carry out the fraud. The linchpin of Spotlight's predicate claims is StubHub's and Awin's alleged separate statements or omissions that purportedly underreport the number of transactions attributable to Spotlight. For example, Spotlight alleges Awin perpetuated the fraudulent scheme by submitting tracking report data that under-attributed sales to affiliates, which would allow StubHub to reap the benefits of otherwise commissionable transactions, and that Awin submitted commissions payments for less than Spotlight believes was due. FAC ¶¶ 264, 306. But these facts do not evidence any *mens rea*, such that StubHub was aware of Awin's conduct or *any* of the alleged misrepresentations or omissions.

STUBHUB'S MPA ISO MOTION TO DISMISS
CASE NO. 2:19-CV-10791

1    *See Christensen II*, 828 F.3d at 780 (enterprise members must understand the nature

2    of the RICO enterprise to satisfy the *mens rea* requirements).

3         Spotlight desperately tries to plead around this deficiency by claiming

4    StubHub, its previous parent company, eBay, and current parent company,

5    Viagogo, were "keenly aware" that Awin was perpetuating StubHub's earlier

6    alleged fraud. FAC ¶¶ 311-315. Stripped of conclusory allegations, the FAC offers

7    no facts showing StubHub's former or current parent knew what representations or

8    conduct—fraudulent or otherwise—Awin made to Spotlight at any time.

9         Second, Spotlight's claim fails for a related reason: Spotlight alleges no facts

10   to support its theory of a common purpose. Spotlight alleges the alleged

11   "enterprise" engaged in a fraudulent common purpose "to divert commissions owed

12   to StubHub affiliates back to StubHub and Awin through fraudulent acts and

13   omissions…." *Id*. ¶ 291. But, the FAC's allegation demonstrates nothing more than

14   a routine business relationship between parties performing routine services they

15   would have performed for any other client, including, for example:

16   - StubHub operates one of the world's largest online ticket marketplaces and
     does numerous dealings through an affiliate program. *Id*. ¶¶ 64, 66.
17   - Awin provides a platform that can track affiliate transactions. *Id*. ¶¶ 49, 73.
18   - StubHub hired Awin to administer and manage the affiliate tracking program
     and provide tracking reports on commissionable transactions.  *Id*. ¶¶ 73, 292.
19   - StubHub would direct Spotlight, and other affiliates, to discuss disputes over
20     a particular transaction with Awin, who manages the program.  *Id*. ¶ 267.

21   Spotlight's allegations are facially inconsistent with any "common purpose," in that

22   Awin would have no incentive or purpose to reduce transactions tracked through its

23   platform. In sum, Spotlight's "common purpose" allegations make no sense.

24             **2.    Spotlight fails to distinguish the roles of each defendant, and
                       impermissibly lumps them together.**
25        Spotlight's RICO claim fails because it must, and does not, specifically

26   allege the basis for liability of *each* defendant. *Baytree Cap. Assocs., LLC v. Quan*,

27   2008 WL 4447647, at *8 (C.D. Cal. Sept. 29, 2008) (RICO claim "failed to allege

28

the misconduct and basis of liability of each individual defendant"). Rule 9(b) requires plaintiffs to allege "the role of each defendant in each scheme." *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991).

Spotlight lacks allegations identifying the individual roles of StubHub and Awin. The majority of the allegations as to StubHub and Awin merely lump the two entities together. *See e.g.*, FAC ¶ 138 ("Spotlight [ ] relying upon the affirmative representations of Defendants that they were investigating the matter in earnest and would reconcile the improper commission payment"); ¶ 316 ("StubHub and Awin [ ] fraudulently and knowingly failed to disclose information to Spotlight"); ¶ 323 ("Defendants' extensive affirmative misrepresentations misled Spotlight by indicating Defendants were fixing the reporting inaccuracies and that the commission reporting and payments were and/or would be accurate, when this was not true."); ¶ 334 ("Awin and/or StubHub would sometimes fail to make the payments monthly as scheduled and would have to make multiple payments at a later time to "make up" for the failure to make payments as scheduled"). Such allegations are insufficient under Rule 9(b) and warrant dismissal. *See e.g.*, *In Re Toyota Motor Corp. Unintended Acceleration Mktg, Sales Practice, and Prod. Liab. Litig.*, 826 F. Supp. 2d 1180, 1201 (C.D. Cal. 2011) (dismissing RICO claims where plaintiff failed to specify the role of each defendant in the fraud).

### 3.   Spotlight fails to plead a pattern of racketeering activity.

RICO requires a plaintiff to allege a "pattern of racketeering activity," which "requires at least two acts of racketeering activity" within a ten-year period. *Mazur v. eBay Inc.*, 2008 U.S. Dist. LEXIS 57105, at *12 (N.D. Cal. July 23, 2008). At most, Spotlight alleges one ongoing predicate act. Although Spotlight includes a single conclusory allegation that StubHub engaged in two predicate acts of mail and wire fraud (FAC ¶ 329), the only specific statements Spotlight identifies all relate to a *single* ongoing alleged transaction to "induc[e] Spotlight to remain in the Affiliate Program and accept lesser commissions in reliance on the[ ] material

misrepresentations and omissions." *Id.* ¶ 352. A single instance of fraud does not establish a RICO pattern, even where multiple wire communications are used to perpetrate the alleged fraud. Under any generous reading, Spotlight's allegations point only to "a single episode with a single purpose which happened to involve more than one act taken to achieve that purpose," which cannot satisfy RICO's pattern element. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992).

### C.   Spotlight Does Not Adequately Allege StubHub's Participation In Enterprise Conduct, As Opposed To Individual Conduct.

RICO prohibits a person from "conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" 18 U.S.C. § 1962(c). The Supreme Court held that this means "one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). Thus, Spotlight must allege that StubHub (1) had "some part in directing the enterprise's affairs," and (2) "conducted or participated in the conduct of the '*enterprise's affairs*,' not just their *own* affairs." *Id.* at 179, 185; *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1034-35 (C.D. Cal. 2011) ("existence of a business relationship … without more does not show [defendant] conducted the enterprise").

But, here, Spotlight does not allege that StubHub had any measure of control over Awin's conduct or over the enterprise's affairs. Nor is there an allegation that StubHub or Awin performed any acts beyond what each contracted to do. Spotlight's only allegation regarding conduct of the purported enterprise's affairs are entirely conclusory: (1) "While StubHub and Awin participated in the Affiliate Program Enterprise, each also has an existence separate and distinct from the enterprise" (FAC ¶ 287); and (2) "Defendants conducted and participated in the conduct of enterprise through a pattern of racketeering activity as defined by federal law." FAC ¶ 300. Because Spotlight's conclusory claims are entirely devoid of *any* evidentiary support, no enterprise conduct has been alleged. *Slack v. Int'l Union of*

1    *Operating Eng'rs*, 2014 WL 4090383, at *22 (N.D. Cal. Aug. 19, 2014).

2           **D.**       **Spotlight Fails To State A Claim For Mail And Wire Fraud.**

3          Spotlight's RICO case rests entirely on faulty predicate acts of mail and wire

4    fraud. To plead mail and wire fraud, Spotlight must establish: (1) the formation of a

5    scheme or artifice to defraud; (2) use of US mail or wire in furtherance of that

6    scheme; and (3) specific intent to defraud. 18 U.S.C. §§ 1341, 1343; *Rothman v.*

7    *Vedder Park Mgmt.*, 912 F.2d 315, 316-17 (9th Cir. 1990). Where fraud is alleged

8    as a predicate act, the complaint must comply with Rule 9(b)'s heightened pleading

9    standard. *Davis v. Mortgage Elec. Registration Sys, Inc.*, 2012 WL 13009142, at *4

10   (C.D. Cal. Feb. 13, 2012) (Anderson, J.) (dismissing RICO claim). Spotlight's

11   claim fails because it does not allege any predicate acts with particularity under

12   Rule 9(b), that StubHub formed a scheme to defraud, or that StubHub had specific

13   intent to defraud.

14              **1.**     **Spotlight's mail and wire fraud claims should be dismissed**
15                       **for lack of particularity under Rule 9(b).**

16         Spotlight does not plead the "who, what, where, and how" in any of the

17   roughly 100 paragraphs contained in the RICO claim. *See Vess v. Ciba-Geigy Corp.*

18   *USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)*; see also Mostowfi v. i2 Telecom Intern.,*

19   *Inc.*, 269 F. Appx. 621, 625 (9th Cir. 2008) (affirming dismissal of RICO claim

20   because complaint lacked "cognitive organization" to allow the court or defendant

21   to determine factual basis of RICO predicate acts"). The FAC only provides dates

22   (the when) in paragraph 344, which relates to electronic wires *Awin* sent, not

23   StubHub.[3] FAC ¶ 344. Nor does Spotlight allege who sent them or whether

24   StubHub knew about these payments or was in any way involved in the issuance of

25   the payments.

26         Spotlight's failure to plead with particularity is further exacerbated because

27

28   ───────────────
     [3] Spotlight's allegations that StubHub provide four false checks is immaterial
     because those purportedly false checks were issued before the purported RICO
     enterprise was established. FAC ¶ 342.

the allegations are incomprehensible, lump together the defendants, and fail to put StubHub on notice of its role in the purported misconduct. *See e.g.*, FAC ¶ 323 ("Defendants' extensive affirmative misrepresentations misled Spotlight by indicating Defendants were fixing the reporting inaccuracies and that the commission reporting and payments were and/or would be accurate, when this was not true); ¶ 331 ("More specifically, the interstate wires included the payment of commissions to Spotlight via electronic wire transfers from Maryland-based Awin that originated in Rhode Island and were sent across state lines to California; StubHub and/or Awin's false submissions of affiliate sales."); ¶ 334 ("In addition, Awin and/or StubHub would sometimes fail to make the payments monthly as scheduled and would have to make multiple payments at a later time to "make up" for the failure to make payments as scheduled"). Such allegations are insufficient under Rule 9(b). *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 977 (C.D. Cal. 2014) (holding plaintiff's claim for fraud fails because plaintiff failed to identify any specific statements or omissions attributable to defendant).

## 2. Spotlight fails to allege an actionable material misrepresentation or omission.

Spotlight fails to plead with particularity any affirmative misrepresentation by any Defendant, and cannot sustain its omission claims because it fails to and cannot plead that Defendants were under any duty to disclose. Spotlight must plead under Rule 9(b) with particularity why any alleged misrepresentation was *false when made*. This "requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure [] the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman v. NW. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999); *In re Glenfed Inc. Sec. Litig.*, 42 F.3d 1541, 1548 n.7 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 2011) (complaint "must adequately specify the statements it claims were false"). Moreover, any alleged misrepresentations or omissions must be material. *Neder v. U.S.*, 527 U.S. 1, 25 (1999).

In connection with its mail and wire fraud claims, Spotlight vaguely alleges two sets of purported affirmative statements: (1) "submissions"—i.e. "[f]rom at least January 2016 to present day, StubHub fraudulently submitted affiliate tracking report data each month … and fraudulently paid Spotlight an inadequate amount of commissions using wires" (FAC ¶¶ 303-307)[4] and (2) "representations"—StubHub purportedly fraudulently represented that it was going to reevaluate commissions payments, remedy any issues and pay any correct amount of commissions owed to affiliates. FAC ¶¶ 308-315.[5] But Spotlight does not allege any facts explaining *why* the alleged misrepresentations were false *when made*. In fact, Spotlight's allegations indicate StubHub *did* reevaluate commission payments. *Id*. Further, Spotlight fails to identify any specific allegedly incorrect transaction. *Id*. At best, the alleged representations about fixing the tracking data were prospective statements of opinion, which are not actionable. *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620-22 (9th Cir. 2004); *Giuliana v. Fulton*, 399 F.3d 381, 389 (1st Cir. 2005) (fraud cannot be based on proposed or anticipated fraudulent conduct).

Spotlight next alleges StubHub fraudulently failed to disclose information to Spotlight, or fraud by omission. FAC ¶¶ 316-319. Spotlight asserts StubHub failed to disclose to Spotlight in 2011—when it submitted its application and *before* StubHub purportedly formed an enterprise with Awin—that StubHub was submitting inaccurate data (FAC ¶ 318) and that StubHub and Awin failed to disclose they were continuing to submit inaccurate data. FAC ¶ 319. But, Ninth

---

[4] Awin, not StubHub, provided commission payments after the purported enterprise was created. FAC ¶¶ 344-345. Spotlight alleges StubHub paid Spotlight false paper checks in 2016 and 2017 (predating the RICO enterprise). *Id*. ¶¶ 340-342. But, the FAC also states StubHub remediated those payments (*Id*. ¶ 343) and is "paying extensive affiliate commissions under the Affiliate Program" (*Id*. ¶ 346), defeating any claim StubHub's conduct is ongoing. *See Comwest, Inc. v. Am. Operator Servs., Inc.*, 765 F. Supp. 1467, 1471 (C.D. Cal. 1991) (reconciliation payments defeat claim defendant did not intend to pay commissions under the agreement).
[5] Spotlight alleges "upon information and belief" that StubHub's former or current parent companies are aware of the purported scheme. FAC ¶¶ 312-315. Fraud cannot be alleged on information and belief. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

Circuit law is clear: "[a]bsent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a fraudulent scheme" under the mail or wire fraud statutes. *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987). Thus, a RICO claim based on an omission must also allege an independent duty to disclose. *Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1093 (9th Cir. 2015).

The FAC does not even contain bare allegations of any statutory or fiduciary duty to disclose, let alone plead facts with particularity. The most Spotlight offers is a conclusory statement that StubHub and Awin had a duty to speak due to "superior knowledge" and "secretive aspect[s] of the manipulation." FAC ¶ 322. This is insufficient to raise any hint of an independent duty to speak. *See Cal. Architectural Bldg. Prods., Inc.*, 818 F.2d at 1472 ("Absent an independent duty . . ., failure to disclose cannot be the basis of a fraudulent scheme."); *accord United Food & Com. Workers Cent. Pa. Reg'l Health and Welfare Fund v. Amgen, Inc.*, 400 F. App'x 255, 257 (9th Cir. 2010) (affirming dismissal of RICO fraud predicates because plaintiff did not identify material omissions in derogation of any duty).

### 3.   Spotlight fails to allege specific intent.

The FAC fails to allege StubHub had specific intent to commit RICO violations. Spotlight's alleged fraudulent scheme consists of misrepresentations about whether StubHub and Awin would "investigate" and "remedy" purportedly incorrect tracking data. FAC ¶¶ 308, 354. Nowhere, however, does Spotlight allege facts explaining whether StubHub or Awin had any fraudulent intent when it made those representations, that StubHub or Awin formed or were engaged in a fraudulent scheme,[6] or that StubHub or Awin did not in fact investigate the purported tracking errors. *See e.g.*, *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321,

---

[6] Spotlight makes conclusory allegations that StubHub knowingly defrauded others and the threat is purportedly ongoing, but these unsupported statements regarding other parties do not allege *any* facts to support a scheme to defraud, fail under Rule 9(b) and cannot support a RICO claim. *See Sound Apprais. & Savage Apprais. Servs. v. Wells Fargo Bnk*, 2009 WL 3353057, at *4 (N.D. Cal. Oct. 15, 2009).

1328 (7th Cir. 1994) (affirming dismissal for failure to plead facts giving rise to an inference that defendants engaged in mail and wire fraud scheme with fraudulent intent).

Instead, Spotlight admits that its theories are predicated on purported "errors" in commission payments. FAC ¶¶ 4, 8. Errors are not "intentional" acts. Further, Spotlight alleges StubHub and Awin engaged in a scheme to defraud because Spotlight's later-in-time commissions "worsened." *Id.* ¶ 262, 304, 305. Spotlight's entire theory of a fraudulent scheme is based on flawed logic: because some unknown event in the future failed to occur (*e.g.*, lower than expected commissions), StubHub engaged in a scheme whereby any statement or action StubHub or Awin made in advance of that event must have been fraudulent and criminal. Such allegations are precisely why fraud claims cannot be based on statements of prospective opinion. *Miller*, 358 F.3d at 620-22; *see also Giuliana*, 399 F.3d at 389 (holding that a fraud scheme cannot be based on proposed or anticipated fraudulent conduct).

Moreover, Spotlight's conclusory allegation that StubHub "acted for the intended, unlawful purpose of inducing Spotlight to remain in the Affiliate Program and accept lesser commissions in reliance on these material misrepresentations and omissions" (FAC ¶ 352) is insufficient to state a claim. "[C]onclusory allegations of law and unwarranted inferences … are insufficient to avoid dismissal." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (quotations omitted).

**E.     Spotlight Fails To Plead Conspiracy Under 18 U.S.C. § 1962(d)**

Spotlight has not alleged any facts showing StubHub agreed to participate in conduct which, if completed, would constitute a RICO violation. *See Howard*, 208 F.3d at 775 (plaintiff must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit a violation of two predicate offenses). Spotlight only provides a conclusory allegation as to any "agreement," namely that "via its agreement to violate the provisions of the RICO statute set

-16-

1   forth in Section 1962(c), StubHub has also violated 18 U.S.C. § 1962(d)." FAC ¶
2   361. This conclusory statement is insufficient to satisfy *Iqbal* and *Twombly*, and no
3   conspiracy has been alleged. *Slack*, 2014 WL 4090383, at *22.

4   **V.   SPOTLIGHT'S ONLY FEDERAL CLAIM SHOULD BE DISMISSED**
    **WITH PREJUDICE AND THE STATE LAW CLAIMS SHOULD BE**
5   **DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION**

6         Spotlight's FAC fails to meet the high bar required to plead a RICO claim.
7   Where the plausibility standard has not been met and the deficiencies of the
8   complaint cannot, as here, be cured by amendment, dismissal with prejudice is
9   appropriate. *See Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003); *Reddy v.*
10  *Litton Indus.*, 912 F.2d 291, 297 (9th Cir. 1990) (noting that courts may deny leave
11  to amend when any proposed amendment would be "futile"). Spotlight has now
12  amended its RICO claim and still cannot plead RICO beyond its conclusory
13  allegations. Further amendment would be futile.

14        Without its RICO claim, no federal question exists under 28 U.S.C. § 1331,
15  and diversity jurisdiction does not apply because StubHub and Spotlight are both
16  citizens of California (FAC ¶¶ 46, 51). *See* 28 U.S.C. § 1332. A court can dismiss a
17  case for lack of subject-matter jurisdiction if the federal claim is "so insubstantial,
18  implausible ... or otherwise completely devoid of merit as not to involve a federal
19  controversy...." *Bhatti v. Goldman*, 2014 WL 12585769, at *1 (C.D. Cal. Dec. 2,
20  2014) (citation omitted). In *Bhatti*, the court dismissed a RICO and copyright
21  infringement complaint because the claims existed only "as an attempt to establish
22  federal subject-matter jurisdiction." There was "no question" the dispute in question
23  was a "run-of-the-mill business dispute" "squarely belong[ing] in state court." *Id.* at
24  *1-2. Similar to *Bhatti*, Spotlight's FAC attempts to turn a "run-of-the-mill"
25  business dispute into a fatally flawed RICO claim. Spotlight's remaining claims are
26  state claims that should be dismissed for lack of subject matter jurisdiction.

27

28

                                           CASE NO. 2:19-CV-10791

## VI. SHOULD THE COURT REACH THEM, SPOTLIGHT ALSO FAILS TO ALLEGE ITS STATE LAW CLAIMS

### A. Spotlight's Fraud Claim Fails For Lack of Particularity and Lack of Reliance, and Further Fails Under the Economic Loss Rule.

#### 1. Spotlight's Fraud Claim Fails To Plead Fraud With Particularity Under Rule 9(b).

Spotlight's fraud claim must be dismissed for lack of particularity under Rule 9(b). Spotlight's FAC must state the time, place, and specific content of the false representations and the identities of the parties to the misrepresentation. *Edwards*, 356 F.3d at 1066. Spotlight also may not lump multiple defendants together. *Triggs v. Ward*, 2010 WL 11549714, at *2 (C.D. Cal. Nov. 29, 2010) (Anderson, J.) (citations omitted).

Spotlight's fraud allegations fall short. It alleges two fraud theories: (1) Defendants allegedly misrepresented that they would fix the purported tracking errors (FAC ¶¶ 221, 223, 225) and (2) Defendants committed fraud each time they issued tracking data. *Id*. ¶¶ 222, 224. However, Spotlight does not "differentiate between the defendants such that each defendant is separately informed of his alleged participation in the fraud." *Triggs*, 2010 WL 11549714, at *2. Nor do these allegations identify *each* purported instance of misrepresentation or issuance of tracking data, *who* made *each* representation, *when* those representations were made, or *how*. *See Vess*, 317 F.3d at 1106. At most, Spotlight may attempt to point to a single November 2016 statement regarding "double verification" procedures. FAC ¶ 122. But Spotlight never alleges in its remaining 418 paragraphs of allegations that this statement is a misrepresentation. Nor does Spotlight identify with particularity under Rule 9(b) any other purported misrepresentations made by StubHub.

#### 2. Spotlight Fails To Allege Reliance On Any Misrepresentation That Resulted In Its Detriment.

Spotlight's fraud claim also fails because it does not allege any justifiable and detrimental reliance on the misrepresentation. *See Body Jewelz, Inc. v. Valley*

*Forge Ins. Co.*, 241 F.Supp.3d 1084, 1091 (C.D. Cal. 2017). Spotlight alleges it relied on StubHub's statements that the accounting issues would be resolved and remained an affiliate (FAC ¶ 138), but identifies no lost opportunity, or change in position or reliance to Spotlight's detriment on account of StubHub's alleged fraud. For example, Spotlight never alleges it relied on StubHub's statements to the detriment of pursuing an affiliate program with *another* ticket-exchange marketplace. Nor does Spotlight allege that it was in an "exclusive" contract with StubHub such that it could not leave the affiliate program.

In addition, Spotlight has not shown any damage resulting from a particular *misrepresentation*. Spotlight cries foul it was underpaid. This supposed damage, however, can only be assessed by determining whether StubHub tracked a transaction that was *eligible* for a commission under the affiliate program's terms. Any statement—whether fraudulent or not—has no bearing whatsoever on whether StubHub properly accounted for a commissionable transaction. For example, even assuming *arguendo* StubHub made material misrepresentations, which StubHub denies, Spotlight would be hard-pressed to prove any harm from those misrepresentations if StubHub paid a commission on all eligible transactions.

### 3.    The Fraud Claim is Barred by the Economic Loss Rule.

Spotlight's attempt to wrap a contract claim into a fraud claim is barred by the economic loss rule. The economic loss rule bars fraud claims where "the damages plaintiffs seek are the same economic losses arising from the alleged breach of contract." *Multifamily Captive Grp, LLC v. Assurance Risk Managers, Inc.*, 629 F. Supp. 2d 1135, 1146 (E.D. Cal. 2009); *see also, e.g., Oracle USA, Inc. v. XL Glob. Servs., Inc.*, 2009 WL 2084154, at *4 (N.D. Cal. July 13, 2009) (economic loss rule barred fraud claim against purchaser who requested extension of contract and promised to pay outstanding invoices but ultimately refused to pay). Spotlight's alleged reliance on a statement that commissions would be properly paid did not cause the underpayment here; rather, any alleged damages flow from

the purported contractual relationship that would define any alleged underpayment.

## B.   Spotlight Fails to State an Unfair Competition Law Claim.

### 1.   Spotlight's UCL "Fraud" Claim Fails Because It Alleges No Harm to the Public and Fails to Plead with Particularity.

A UCL "fraud" claim must show "'members of the public are likely to be deceived' by the challenged business acts or practices," which Spotlight fails to do. *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152-53 (9th Cir. 2008) (affirming dismissal of UCL claims where plaintiff did not plead that misrepresentations were likely to deceive the general public). Spotlight alleges no harm to any member of the public; indeed, the heart of the dispute is simply that Spotlight was purportedly underpaid by StubHub, an issue having no bearing on the public. Accordingly, Spotlight has not made out a UCL fraud claim. *See Linde LLC v. Valley Protein LLC*, 2019 WL 3035551, at *20-21 (E.D. Cal. July 11, 2019) (rejecting use of the "fraud" prong under the UCL to vindicate contractual rights).

At best, Spotlight sprinkles the FAC with random quotes from the Internet as a side show that some do not like to pay fees for StubHub's services. But Spotlight's FAC plainly demonstrates payment of commissions after subtracting fees is part of the affiliate program. Indeed, Spotlight admits that it (and others) are entitled only, "per StubHub's terms and conditions," to commissions on eligible ticket prices "without taxes and fees." FAC ¶¶ 17, 73. Thus, Spotlight's extended discussion of discontent regarding StubHub subtracting fees prior to calculating commissions is, under Spotlight's own allegations, what affiliates or users agree to. Spotlight's allegations establish that it and others are paid on ticket priced less an approximately 10% seller fee or less. *See Id.* ¶¶ 206-208 (asserting that commissions are paid on sales price less 10% seller fee); ¶¶ 210-215 (providing examples of commissions paid on sales prices less a seller fee lower than 10%).

But the percentage of fees is legally irrelevant, and the examples provided by Spotlight demonstrate StubHub discloses both the original seller price and the price

less seller fees upon which commissions are paid (at the bottom of the images reproduced in the FAC). *See Id.* ¶ 213, Fig. 4 (disclosing both the seller's desired $344.90 ticket price and the $320.75 ticket price less seller fee, upon which the commission is calculated), ¶ 215, Fig. 5 (disclosing both the seller's desired $249.00 ticket price and the $230.57 price less the seller fee, upon which the commission is calculated). In fact, in this way, Spotlight concedes in these allegations it understood perfectly well how the calculation of commissions works.

Moreover, Spotlight's UCL fraud claim fails for lack of particularity. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (dismissing "fraud" UCL claim for lack of specificity). Here, Spotlight makes no specific allegation about any representations that could be the basis of its UCL fraud claim.

## 2. Spotlight's UCL "Unfair" Claim Fails Because It Fails To Allege an Unfair Act.

Spotlight's theory that StubHub engages in "unfair" conduct fails under any definition of "unfair." To the extent Spotlight is alleging it competes with StubHub (FAC ¶ 270), it must allege unfair "conduct that threatens an incipient violation of an antitrust law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. L.A Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999).[7] Spotlight's allegations that StubHub's alleged failure to pay commission stymies competition falls short. *See* FAC ¶¶ 271-72. In addition to alleging unpaid commissions, Spotlight claims StubHub allegedly spoke to Amex while Spotlight was negotiating a contract with Amex. *Id.* ¶¶ 271-72, 278. Significantly, none of these allegations reflect an "unfair" practice against a consumer, but rather reflect a business dispute between Spotlight and StubHub. Spotlight otherwise fails to

---

[7] It appears Spotlight adopts in the alternative the definition of "unfair" practice meaning a practice "offend[ing] established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." To the extent Spotlight relies on this test, courts have rejected this test as too amorphous. *See e.g.*, *Graham v. Bank of Am.*, *NA*, 226 Cal. App. 4th 594, 612-13 (2014) (rejecting test in favor of one requiring unfair acts to be tethered to a violation of a constitutional, statutory or regulatory provision).

STUBHUB'S MPA ISO MOTION TO DISMISS
CASE NO. 2:19-CV-10791

reference any constitutional or regulatory provision. Thus, the allegations fail to meet any consumer test for "unfair," and must be dismissed.

### 3. Spotlight's UCL "Unlawful" Claim Fails Because It Rises And Falls With Its Other Claims.

Because Spotlight's other causes of action fail, its "unlawful" UCL claims that are predicated upon those causes of action also must fail.[8]

### C. Spotlight Has Not Alleged Facts Plausibly Suggesting That StubHub Has Tortiously Interfered With Its Business Interests.

A tortious interference with contract claim requires (1) a defendant to know about a valid contract with a third party, (2) that defendant intentionally acted to induce breach or disruption of the contract, (3) actual breach or disruption, and (4) resulting damage. *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 825-26 (9th Cir. 2008). The essence of the claim is defendant intentionally acted to breach a contract. *Beck v. Am. Health Grp, Int'l, Inc.*, 211 Cal. App. 3d 1555, 1566-67 (1989).

Spotlight's tortious interference claim fails because Spotlight does not allege any actual breach or that StubHub intentionally acted to disrupt that contract. Spotlight alleges "Amex terminated the Ticketing System Contract," (FAC ¶ 255), but in the same breath states "StubHub's persistent and improper contact with Amex, and Defendants' other interference, adversely impacted Spotlight's contractual *renegotiations* and business relationships with Amex." *Id*. ¶ 254 (emphasis added). Neither of these allege an actual breach. Spotlight claims Amex "terminated" the agreement, but that does not amount to a "breach." Indeed, Spotlight's attempts to renegotiate suggests the contract was coming to its natural end. Without more, Spotlight's allegations fall short of alleging breach.

Even assuming Amex somehow "breached" the contract, Spotlight does not allege any intentional acts by StubHub "designed to induce breach" of the contract.

---

[8] Common law breach of contract is insufficient to allege an unlawful UCL claim. *Shroyer v. New Cingular Wireless Servs, Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010). Because Spotlight's common law claims are variations of a dressed-up breach of contract claim, Spotlight's "unlawful" claim fails.

1    Spotlight alleges StubHub contacted Amex numerous times (*Id*. ¶ 253) and

2    "with[held] data necessary for Amex to satisfy various reporting obligations *in*

3    *connection* with Amex's contract with Spotlight." *Id*. ¶ 251 (emphasis added). But

4    Spotlight does not explain how either of these acts were "designed to induce

5    breach."[9] *Name.space, Inc. v. ICANN*, 2013 WL 2151478, at *8 (C.D. Cal. Mar. 4,

6    2013), *aff'd*, 795 F.3d 1124 (9th Cir. 2015) (Anderson, J.) (dismissing tortious

7    interference claim where Complaint did not allege intentional acts designed to

8    induce breach of contracts or evidentiary facts of actual breach or disruption).[10]

9    ### D.   Spotlight's Claims For Breach Of Contract And Implied Covenant Of Good Faith And Fair Dealing Fail Because Spotlight Allege Neither A Contract, Nor Its Terms.

10

11   Spotlight's breach of contract and breach of implied covenant of good faith

12   and fair dealing should be dismissed because Spotlight fails to establish the basic

13   facts regarding any contract with StubHub. A cause of action for damages for

14   breach of contract necessarily requires a plaintiff to allege the existence of a

15   contract between the parties. *First Com. Mortg. Co. v. Reece*, 89 Cal. App. 4th 731,

16   745 (2001). "In order to plead a contract by its legal effect, plaintiff must allege the

17   substance of its relevant terms." *Lent v. JP Morgan Chase Bank, N.A.*, 2011 WL

18   5971190, at *2 (C.D. Cal. Nov. 29, 2011).

19   Here, Spotlight does none of those things. Spotlight does not sufficiently

20   identify a contract or allege any of the contract's terms. Nor does Spotlight attach a

21   contract to the FAC. Spotlight alleges StubHub breached some contract (FAC ¶

22   372), but the FAC does not plead any facts identifying this contract to put StubHub

23

24   [9] Spotlight's conclusory allegations that StubHub had "the intention of disrupting the economic relationship that was benefiting Spotlight" (FAC ¶248), and

25   "StubHub's actions intentionally harmed Spotlight's reputation" (*Id*. ¶252) are insufficient under any pleading standard.

26   [10] To the extent Spotlight alleges StubHub tortiously interfered with prospective economic advantage, that claim likewise fails. This tortious interference claim is similar, but also requires the defendant's conduct be "wrongful by some legal

27   measure other than the fact of interference itself." *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1133 (9th Cir. 2015)

28   (affirming Judge Anderson opinion). Spotlight pleads no facts showing any intentional act or that the conduct was wrong beyond the alleged interference.

on notice of its conduct that purportedly breached this unidentified contract. This problem is exacerbated by Spotlight's failure to allege any of this purported contract's essential terms, including, operative dates, duration, what transactions are actually eligible for a commission, and the amount of the commission owed to Spotlight. *See N. Cnty. Commc'ns Corp. v. Verizon Global Networks, Inc.*, 685 F. Supp. 2d 1112, 1122 (S.D. Cal. 2010) (failure to plead contract without alleging its material terms that would put [defendant] on notice of the basis of [the breach of contract claim]"). Without pleading any of these details, Spotlight's claim fails.

Spotlight's good faith and fair dealing claim cannot stand for two reasons. First, it cannot stand absent an existing contract. *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1031 (1992). Second, Spotlight does not and cannot adequately allege bad faith. A plaintiff asserting a bad faith claim bears the burden of showing "something beyond breach of the contractual duty itself." *Careau & Co. v. Sec. Pacific Bus. Credit, Inc.*, 222 Cal.App.3d 1371, 1394 (1990) (citations omitted). There must be a deliberate act that unfairly frustrates the purpose of the contract beyond simply alleging breach. *Id.* at 1395. Spotlight's "bad faith" theory hinges StubHub's alleged failure to "attribut[e] all StubHub sales originated by Spotlight." FAC ¶ 381. This claim is based entirely on the same acts underlying its contract claim and must be dismissed. *See Zanze v. Snelling Servs., LLC*, 412 F. App'x 994, 996 (9th Cir. 2011) (dismissing bad faith claim that was "based on the same underlying facts as the companion breach of contract claim").

### E.   Spotlight's Quantum Meruit Claim Fails Because It Is Not Co-Extensive With Spotlight's Breach Of Contract Claim

A quantum meruit claim "does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). Spotlight's quantum meruit claim fails because it relies on the same facts underlying its breach of contract claim. *See* FAC ¶ 397. Spotlight cannot have it both ways, as such an outcome "would improperly

redefine the part[ies'] rights." *Total Coverage, Inc. v. Cendant Settlement Servs. Grp, Inc.*, 252 F. App'x. 123, 126 (9th Cir. 2007).

**F.      Spotlight's Promissory Estoppel Claim Fails Because Spotlight Fails To Allege A Clear Promise And Injury By Reliance.**

Promissory estoppel requires a clear and unambiguous promise, reasonable and foreseeable reliance by the party to whom the promise is made, and actual injury. *U.S. Ecology, Inc. v. State of Cal.*, 129 Cal. App. 4th 887, 901 (2005) (internal citation omitted). Spotlight does not allege a clear and unambiguous promise. Spotlight alleges StubHub would pay Spotlight a percentage of ticket sales (FAC ¶ 404) and would "remedy" the purported underreporting. *Id*. ¶ 413. These promises are vague at best. Spotlight does not allege how much was promised, what transactions are entitled to a commission, or when StubHub promised to pay it.

A party must also establish an "irremediable change of position . . . in reliance upon the [] promise." *Scales v. First Horizon Home Loans*, 2012 WL 531022, at *3 (E.D. Cal. Feb. 17, 2012) (citations omitted). Spotlight does precisely the opposite:  it "remained [ ] an affiliate." *Id*. ¶ 415. Therefore, Spotlight's cause of action for promissory estoppel should be dismissed.

**G.      Spotlight's Unjust Enrichment Claim Fails Because California Law Does Not Recognize An Unjust Enrichment Cause Of Action.**

Spotlight's unjust enrichment claim is not a recognized cause of action and should be dismissed with prejudice. *See, e.g., Iezza v. Saxon Mortg. Servs., Inc.*, 2010 WL 3834041, at *2 (C.D. Cal. Sept. 28, 2010).

## VII.   CONCLUSION

For the foregoing reasons, this Court should grant Defendant StubHub's Motion to Dismiss in its entirety.

Dated:   April 10, 2020                  CROWELL & MORING LLP

                                         */s/  Gabriel M. Ramsey*
                                         Gabriel M. Ramsey
                                         Attorneys for Defendant
                                         StubHub, Inc.