UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10791 PA (JCx) | Date | May 22, 2020 |
|---|---|---|---|
| Title | Spotlight Ticket Management, Inc. v. StubHub, Inc. et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| T. Jackson | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| None | | None |

**Proceedings:**     IN CHAMBERS – COURT ORDER

Before the Court is a (1) Motion to Dismiss Amended Complaint filed by defendant Awin, Inc. ("Awin"), and (2) Motion to Dismiss Amended Complaint filed by defendant StubHub, Inc. ("StubHub"). (Dkts. 50 and 52.) Plaintiff Spotlight Ticket Management, Inc. ("Spotlight") has filed Oppositions to each Motion, (Dkts. 53 and 54), and Defendants have filed their respective Reply Briefs, (Dkts. 55 and 56). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearings calendared for May 11, 2020, have been vacated, and the matters taken off calendar.

**I.     Background**

Spotlight brings this action against Defendants for RICO violations as to StubHub and eight other state law claims that include unfair competition and breach of contract. The main allegations of Spotlight's lengthy First Amended Complaint ("FAC") are summarized briefly here. Spotlight provides a software system that agents use to search for and purchase tickets. Certain ticket transactions made through Spotlight's system are processed and completed on a third-party ticket provider's website, such as StubHub. In 2011, Spotlight signed up for StubHub's U.S. Affiliate Program to receive commissions on "eligible sales" that Amex carries out because Spotlight has directed it to StubHub's website. (Dkt. 46 ("FAC") ¶17.) Spotlight had a contractual right to "nearly all" commissions on Amex transactions made in the Spotlight ticketing system, including the purchase of StubHub tickets. (Id. at ¶21.)

StubHub has represented that it accurately tracks transactional data to pay commissions to affiliates. However, in March 2016, Spotlight discovered that StubHub was not paying all of the commissions due to Spotlight. Spotlight alleges that a "large portion" of the improperly unpaid commissions were from Amex purchases. (Id. at ¶23.) StubHub admitted other affiliates had also been affected by the improper accounting and "assured Spotlight the problem would be fixed." (Id. at ¶24.) StubHub paid Spotlight $518,673 to account for the underpaid commissions. (Id. at ¶26.)

In November 2016, StubHub contracted with Awin for the purpose of "correctly and accurately tracking transactions under the Affiliate Program and to resolve existing problems with the underpayment of commissions." (Id. at ¶28.) However, Spotlight alleges that Awin perpetuated and supported StuHub's misrepresentations by intentionally underreporting and underpaying commissions to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10791 PA (JCx) | Date | May 22, 2020 |
|---|---|---|---|
| Title | Spotlight Ticket Management, Inc. v. StubHub, Inc. et al. | | |

affiliates. Spotlight informed Defendants of the continued issue of underpaid commissions, but StubHub allegedly retaliated by instructing Amex to stop providing Spotlight with Defendants' transactional data. Amex stopped providing transaction tracking data to Spotlight as of February 20, 2019. Spotlight also alleges that Defendants interfered with Spotlight's relationship with Amex so that Amex ended their contract.

Spotlight brought this action on December 20, 2019. Defendants initially filed a motion to dismiss the Complaint, (Dkts. 25 and 31) and Spotlight filed an FAC pursuant to Federal Rule 15(a)(1)(B), (Dkt. 46). The FAC alleges nine claims for relief: (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), 1962(d); (2) common law fraud; (3) tortious interference; (4) unfair competition; (5) breach of contract; (6) breach of the implied covenant of good faith and fair dealing; (7) unjust enrichment; (8) quantum meruit; and (9) promissory estoppel. Defendants have now filed Motions to Dismiss the FAC for failure to state a claim.[1]

**II.  Legal Standard**

For purposes of a Motion to Dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), plaintiffs in federal court are generally required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8(a)(2) is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e); see also Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) ("The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim.") (internal quotation omitted).

In Twombly, however, the Supreme Court rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Twombly, 550 U.S. at 561 (internal quotation omitted). Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." Id. at 556. For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (alteration in original)); Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002) ("'All

---

[1]  StubHub has also asked the Court to take judicial notice of Awin's official website, which appears when accessing: www.awin1.com. (Dkt. 57 at 2.) The Court did not rely on this content in reaching its decision and therefore denies Defendant's Request for Judicial Notice as moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10791 PA (JCx) | Date | May 22, 2020 |
|---|---|---|---|
| Title | Spotlight Ticket Management, Inc. v. StubHub, Inc. et al. | | |

allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'") (quoting Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted). In construing the Twombly standard, the Supreme Court has advised that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

**III.    Analysis**

    **A.    RICO Claim under 18 U.S.C. § 1962(c)**

To prevail on a civil RICO claim, Plaintiff must prove that Defendants engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and (5) Defendants caused injury to plaintiff's business or property. Chaset v. Fleer/Skybox Int'l, LP, 300 F.3d 1083, 1086 (9th Cir. 2002). Courts "should [] strive to flush out frivolous RICO allegations at an early stage of the litigation." Wagh v. Metris Direct Servs., Inc., 348 F.3d 1102, 1108 (9th Cir. 2003) (quotations omitted), overruled on other grounds, Odom v. Microsoft Corp., 486 F.3d 541, 551 (9th Cir. 2007). For the reasons discussed below, Plaintiff is unable to state a viable RICO claim upon which relief could be granted.

    **1.    Plaintiff has not established an "enterprise"**

"[A]n associated-in-fact enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct." Odom, 486 F.3d at 552 (citation and quotations omitted). To show the existence of an association-in-fact enterprise, Plaintiff must provide evidence of an ongoing organization, formal or informal, and evidence that the various associates function as a continuing unit. Id. The Ninth Circuit has held that "an associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise." Id. at 551.

Spotlight believes that StubHub and Awin, through the U.S. Affiliate Program, have formed an association-in-fact enterprise. (FAC ¶285.) The "enterprise was a continuing unit" that shared a common purpose of "divert[ing] commissions owed to StubHub affiliates back to StubHub and Awin through fraudulent acts and omissions for the benefit of the enterprise and the individual defendants." (Id. at ¶291.) Spotlight contends that the enterprise has an ascertainable structure and Defendants still exist separate and distinct from the enterprise. (Id. at ¶¶287-88.)

Courts have overwhelmingly rejected attempts to characterize routine commercial relationships—in which the parties transact to provide services—as RICO enterprises. See, e.g., Gomez v. Gunthy-Renker, LLC, 2015 U.S. Dist. LEXIS 90725, at *22-23 (C.D. Cal. July 13, 2015) ("[V]ery

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10791 PA (JCx) | Date | May 22, 2020 |
|---|---|---|---|
| Title | Spotlight Ticket Management, Inc. v. StubHub, Inc. et al. | | |

few Courts have been willing to . . . treat allegations of routine commercial relationships as sufficient to support a RICO claim") (collecting cases); Woodell v. Expedia Inc., 2019 U.S. Dist. LEXIS 121633, at *21 (W.D. Wash July 22, 2019) ("Allegations that are consistent with ordinary business activities or purposes are insufficient when pleading an association-in-fact RICO enterprise."); In re Jamster Mktg. Litig., 2009 U.S. Dist. LEXIS 43592, at *15-16 (S.D. Cal. May 22, 2009) ("Plaintiffs cannot meet their particularized pleading burden by artfully inserting modifiers such as 'unauthorized charges' or 'fraudulently collecting monies' in an attempt to show a common purpose. . . . the allegations allege conduct consistent with ordinary business conduct and an ordinary business purpose.").

When the Court sets aside Spotlight's various legal conclusions, all that remains is a routine contract for services between Defendants. StubHub contracted with Awin to more accurately track transactions under the Affiliate Program and resolve the problem of underpaid commissions. This constitutes a business relationship in which StubHub has hired Awin to perform certain services. Spotlight contends that an enterprise existed because Awin allegedly perpetuated StubHub's misrepresentations by underreporting and underpaying commissions to affiliates. (FAC at ¶¶29, 235, 264.) But Spotlight fails to plausibly allege that Defendants actually committed acts in furtherance of this common purpose. Instead, the facts illustrate that Defendants were aware of the tracking and payment errors, and were working towards remedying them. (See, e.g., id. at ¶¶24, 122 (StubHub "assured Spotlight that the problem would be fixed" and it had engaged Awin "to provide 'double verification' and correct the issues"); id. at ¶138 (Defendants represented that "they were investigating the matter in earnest and would reconcile the improper commission payment"); id. at ¶140 (StubHub's data and technical teams "were continuing to dig into the problem" and StubHub was "currently working on a resolution.").) In light of these facts, Spotlight's enterprise allegations have not risen "from the realm of the possible to the plausible." Shaw v. Nissan North America, Inc., 220 F. Supp. 3d 1046, 1057 (C.D. Cal. 2016) (dismissing RICO claim without leave to amend).

In addition, Defendants were pursuing their individual economic interests, rather than a shared purpose. "Parties that enter commercial relationships 'for their own gain or benefit' do not constitute an 'enterprise.'" In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig., 2012 U.S. Dist. LEXIS 184429, at *29 (C.D. Cal. June 29, 2012) (collecting cases); In re WellPoint, Inc. Out–of–Network UCR Rates Litig., 865 F. Supp. 2d 1002, 1034-35 (C.D. Cal. 2011) (same). Defendants entered into a business relationship for their own individual benefit: Awin would be compensated for performing services for StubHub, and StubHub would benefit from Awin fixing the commission tracking and payment errors. And Spotlight's allegations illustrate that Defendants were operating independently and in furtherance of their own interests. (See, e.g., FAC ¶148 ("StubHub continued to direct Spotlight to Awin for a resolution, and in response, Awin would direct Spotlight to StubHub for a resolution"); ¶144 ("StubHub was evasive and instructed Spotlight to address the issue with Awin, despite the fact that Spotlight had already been attempting to resolve the ongoing issues with Awin as well").) "Simply characterizing routine commercial dealing as a RICO enterprise is not enough. . . More facts are required to plausibly allege an existence of a RICO enterprise." Gardner v. StarKist Co., 418 F. Supp. 3d 443, 461-62 (N.D. Cal. 2019) (dismissing RICO claim).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10791 PA (JCx) | Date | May 22, 2020 |
|---|---|---|---|
| Title | Spotlight Ticket Management, Inc. v. StubHub, Inc. et al. | | |

Plaintiff has failed to sufficiently plead that Defendants formed a RICO enterprise. It is clear that "Plaintiff's pleading strategy is an attempt to transform a standard fraud claim into a RICO claim. . . . Plaintiff's argument proves too much and would entail an expansion of RICO far beyond Congress's intent." Gomez, 2015 U.S. Dist. LEXIS 90725, at *12-18. On this basis, Plaintiff has failed to state a viable RICO claim upon which relief may be granted.

### 2. Plaintiff has not established "racketeering activity"

Racketeering activity is any "predicate act" indictable under the several provisions of Title 18 of the U.S. Code. Turner v. Cook, 362 F.3d 1219, 1229 (9th Cir. 2004). Here, Spotlight alleges that both Defendants committed mail fraud and wire fraud, as defined under 18 U.S.C. §§ 1341 and 1343. (FAC at ¶301.) The mail and wire fraud statutes are identical except for the particular method used to disseminate the fraud, and contain three elements: (1) the formation of a scheme to defraud, (2) the use of the mails or wires in furtherance of that scheme, and (3) the specific intent to deceive or defraud. Sanford v. MemberWorks, Inc., 625 F.3d 550, 557-58 (9th Cir. 2010).

Because both mail fraud and wire fraud are fraud-based crimes, these predicate acts are subject to Federal Rule 9(b)'s heightened pleading standard of "specificity." Edwards v. Marin Park. Inc., 356 F.3d 1058, 1065-66 (9th Cir. 2004); Odom, 486 F.3d at 553. "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Id. at 558 (quoting Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009)). "Any averments which do not meet that standard should be 'disregarded,' or 'stripped' from the claim for failure to satisfy Rule 9(b)." Id. (quoting Kearns, 567 F.3d at 1124). Accordingly, "[t]o avoid dismissal for inadequacy under Rule 9(b), [the] complaint would need to state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Id. (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)).

Importantly, Spotlight's "fraud theory requires [it] to show more than a business deal gone bad for economic and non-fraudulent reasons." Eclectic Props. East, LLC v. Marcus & Millichap Co., 751 F.3d 990, 997 (9th Cir. 2014) (affirming dismissal of RICO claim under Federal Rule 8(a) and 9(b) for failure to support a plausible inference that defendants had the required specific intent to defraud). Spotlight "must establish that Defendants had the specific intent to defraud, and Plaintiff[] may establish that intent by showing the existence of a plausible fraudulent scheme." Id. Because Defendants' U.S. Affiliate Program is "facially legitimate," and Defendants "operate legitimate businesses" and "otherwise act as routine participants in American commerce, a significant level of factual specificity is required to allow a court to infer reasonably that such conduct is plausibly part of a fraudulent scheme." Id. at 997-98 (emphasis added).

Spotlight alleges that Defendants' racketeering activity "falls into three categories of conduct: fraudulent submissions, fraudulent representations, and fraudulent omissions." (FAC at ¶302.) StubHub fraudulently submitted affiliate tracking report data each month and fraudulently paid Spotlight an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10791 PA (JCx) | Date | May 22, 2020 |
|---|---|---|---|
| Title | Spotlight Ticket Management, Inc. v. StubHub, Inc. et al. | | |

inadequate amount of commissions using wires. (Id. at ¶303.) Once Spotlight discovered this scheme, StubHub "engaged Awin in an attempt to insulate itself from having to provide an explanation for the diverted commissions." (Id. at ¶304.) Awin then "knowingly perpetuated the scheme" by providing the data that StubHub relied on to divert affiliate commissions. (Id. at ¶306.) All the while, Spotlight alleges that StubHub fraudulently represented that it would remedy the tracking and reporting errors. (Id. at ¶308.) But Spotlight contends that defendants did no such thing and instead knowingly failed to disclose information to Spotlight about these issues. (Id. at ¶¶316, 318, 321.)

Spotlight alleges some of the communications that it has had with Defendants over the past several years, as well as the payments it has received demonstrate a scheme to defraud. However, Spotlight fails to show with sufficient specificity that the underpaid commissions does indeed rise to the level of fraud. It may be the case that Defendants failed to pay Spotlight for certain eligible commissions, and Spotlight missed out on potential profits. But it is wholly possible that the underpayment issue was actually the result of non-intentional, non-fraudulent tracking errors that Defendants were unable to remedy. (See, e.g., id. at ¶29 ("Awin was purportedly engaged to remedy the errors in tracking and reporting commissionable transactions"); ¶261 ("StubHub and Awin represented to Spotlight that they were investigating the extent of the supposed data tracking errors that had been leading to a diversion in commissions.").) Another explanation is that certain purchases were not actually eligible for sale commissions. (Id. at ¶17 ("Pursuant to the Affiliate Program's terms and conditions, affiliates, such as Spotlight, receive a commission on eligible sales that they direct to StubHub.") (emphasis added).) "When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." In re Century Aluminum Co. Secs. Litig., 729 F.3d 1104, 1108 (9th Cir. 2013). Spotlight has made no such showing here.

The Court finds that Spotlight's allegations illustrate a private business dispute that does not rise to the level of a viable RICO claim. See Manos v. MTC Fin., Inc., 2018 U.S. Dist. LEXIS 226227, at *17 (C.D. Cal. Apr. 2, 2018) (dismissing RICO claim where "[p]laintiffs' allegations, at most, indicate that Defendants charged impermissible fees and failed to disclose that those fees were unauthorized. A plaintiff cannot state a claim under the Civil RICO statute 'by simply artfully pleading what is essentially a breach of contract claim.'"). Spotlight appears to have been given the run-around for several years in its pursuit to secure commission payments it believes it is entitled to. These issues may very well support viable claims for breach of contract and fraud, but are insufficient to establish a plausible scheme to defraud. See Bhatti v. Goldman, 2014 U.S. Dist. LEXIS 167699, at *5 (C.D. Cal. Dec. 2, 2014) (dismissing RICO claim and finding "[t]here is no question that a dispute exists between the parties, but it is a run-of-the-mill business dispute involving fraud, and the case squarely belongs in state court.").

The Court is not inclined to "expand the reach of the RICO statute by permitting all allegations of 'broken promises' in failed business transactions to constitute 'racketeering activity'"—especially in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10791 PA (JCx) | Date | May 22, 2020 |
|---|---|---|---|
| Title | Spotlight Ticket Management, Inc. v. StubHub, Inc. et al. | | |

light of the civil treble damages remedy available under the RICO statute. Royce Int'l Broad. Corp. v. Field, 2000 U.S. Dist. LEXIS 2369, at *12 (N.D. Cal. Feb. 22, 2000). Plaintiff has failed to plead the existence of a plausible scheme to defraud, and therefore failed to state a viable RICO claim.[2/]

### B. Conspiracy to Violate RICO Claim under 18 U.S.C. § 1962(d)

Spotlight claims that Defendants are also guilty of conspiracy to violate RICO. (FAC ¶361 ("StubHub has violated 18 U.S.C. § 1962(c) and, via its agreement to violate the provisions of the RICO statute set forth in Section 1962(c), StubHub has also violated 18 U.S.C. § 1962(d).").) A violation of Section 1962(d), which makes it "unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section," is predicated on the same requisite substantive elements of a civil RICO claim. Turner, 362 F.3d at 1231 n.17. "Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO." Howard v. America Online, 208 F.3d 741, 751 (9th Cir. 2000). Because Plaintiffs have failed to state a claim for a violation of RICO under § 1962(c), and because there were no independent allegations in support of a conspiracy claim, the Court concludes that the conspiracy claim must also fail. Compare Shaw, 220 F. Supp. 3d at 1058 (dismissing RICO claim and conspiracy to violate RICO claim without leave to amend); Sanford, 625 F.3d at 559 ("Because we conclude that the section 1962(c) claim cannot be saved by amendment, it follows that the section 1962(d) claim also cannot be saved.").

### C. State Law Claims

Because the Court dismisses Plaintiff's RICO claims and Plaintiff does not allege any other federal claims in the FAC, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Here, "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which federal law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." Reynolds v. Cnty. of San Diego, 84 F.3d 1162, 1171 (9th Cir. 1996) (quotations and citation omitted), overruled on other grounds by Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000-01 (9th Cir. 1997) ("The Supreme Court has stated, and we have often repeated, that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.") (quotations and citation

---

[2/] Regarding Spotlight's allegation that "StubHub and Awin also fraudulently and knowingly failed to disclose information to Spotlight," (FAC ¶¶316, 322), the Court notes that "[a] nondisclosure . . . can support a fraud charge only when there exists an independent duty that has been breached by the person so charged. Absent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a [RICO] fraudulent scheme." Eller v. EquiTrust Life Ins. Co., 778 F.3d 1089, 1092 (9th Cir. 2015) (citations omitted). Spotlight has failed to sufficiently establish that Defendants owed it an independent duty to disclose, and therefore failed to state a viable RICO claim on this basis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10791 PA (JCx) | Date | May 22, 2020 |
|---|---|---|---|
| Title | Spotlight Ticket Management, Inc. v. StubHub, Inc. et al. | | |

omitted); see also De La Torre v. CashCall, Inc., 2019 U.S. Dist. LEXIS 18624, at *12 (N.D. Cal. Feb. 5, 2019) ("The elimination of federal claims does not automatically deprive district courts of subject matter jurisdiction over any supplemental state law claims. . . . However, [c]omity and precedent in this circuit strongly disfavors exercising supplemental jurisdiction.") (quotations and citations omitted). For these reasons, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and dismisses them without prejudice. [3/]Compare Gomez, 2015 U.S. Dist. LEXIS 90725, at *33 (dismissing RICO claim and declining to exercise supplemental jurisdiction over remaining state law claims). Plaintiff is now free to pursue its remaining state claims in state court.

### D.     Leave to Amend

"Although a district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations, '[d]ismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment.'" Zixiang Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013) (quoting Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1051 (9th Cir. 2008)); see also Steckman v. Hart Brewing, 143 F.3d 1293, 1298 (9th Cir. 1998) ("Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility or where the amended complaint would also be subject to dismissal.") (citations omitted). A district court's discretion to deny leave to amend is "particularly broad" where the plaintiff has previously amended. Salameh v. Tarsadia Hotel, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation omitted)). The Court finds that leave to amend would be futile here. Plaintiff's legal arguments are unsupported by the existing case law. And Plaintiff's allegations regarding Defendants' RICO enterprise and scheme to defraud are insufficient to establish a viable claim for relief under RICO. Moreover, Plaintiff has already had one opportunity to amend its complaint and respond to Defendants' RICO-specific arguments—which were previously raised in the first set of Motions to Dismiss. Further specificity will not cure the defects in the First Amended Complaint. Therefore, the Court denies Plaintiff leave to amend.

### Conclusion

The Court GRANTS in part and denies in part Defendants' Motions to Dismiss. The Court hereby dismisses Plaintiff's RICO claim without leave to amend and declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Plaintiff's state claims are therefore dismissed without prejudice. The Court will issue a judgment consistent with this order.

IT IS SO ORDERED.

---

[3/]     Pursuant to 28 U.S.C. § 1367(d) this order acts to toll the statute of limitations on the state law claims for a period of thirty (30) days, unless state law provides for a longer tolling period.